**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|   |   |   |
|---|---|---|
| TAPRINA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1048 (RBW) |
| | ) | |
| CARLOS M. GUTIERREZ, Secretary | ) | |
| U.S. Department of Commerce, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendants, Carlos M. Gutierrez, Secretary of the United States Department of
Commerce, and Fred Fanning, Director of the Office of Administrative Services, by and
through undersigned counsel, respectfully move this Court for a dismissal of Plaintiff's
claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for a lack of
subject matter jurisdiction.  Specifically, plaintiff has failed to exhaust administrative
remedies with untimely claims.  In addition, defendant moves for dismissal of Mr.
Fanning as a defendant.   In the alternative, Defendants request an order granting
summary judgment on the grounds that there are no genuine issues in dispute and that
Defendants are entitled to judgment as a matter of law.  In support of Defendants'
Motion, this Court is respectfully referred to the accompanying Statement of Material
Facts Not in Dispute, Memorandum of Points and Authorities, and Exhibits.  A proposed
Order is also attached.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR,
D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS,
D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
WYNEVA JOHNSON,
D.C. Bar #278515
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., E-4106
Washington, D.C. 20530
(202) 514-7224


Of Counsel:
AIMEE R. FOX, Esq.
U.S. Department of Commerce
Office of General Counsel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
TAPRINA JACKSON,                          )
                                          )
        Plaintiff,                        )
                                          )
            v.                            )        Civil Action No. 08-1048 (RBW)
                                          )
CARLOS M. GUTIERREZ, Secretary            )
U.S. Department of Commerce, et al.       )
                                          )
        Defendants.                       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE**
**DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE,**
**FOR SUMMARY JUDGMENT**

Defendants, Carlos M. Gutierrez, Secretary of the United States Department of

Commerce, and Fred Fanning, Director of the Office of Administrative Services, by and

through undersigned counsel, respectfully submit this Memorandum of Points and

Authorities in Support of Defendants' Motion to Dismiss, or in the Alternative, for

Summary Judgment.

**I.    INTRODUCTION**

On June 18, 2008, Taprina Jackson ("Plaintiff") filed suit against Carlos M.

Gutierrez, Secretary of the U.S. Department of Commerce, and Fred Fanning, Director of

Office of Administrative Services ("Defendants"), alleging that the Defendants

discriminated against her on the basis of her sex (female) and race (African American) in

violation of Title VII of the Civil Rights Act.  *See* Complaint at ¶ 20.

Specifically, Plaintiff's allegations of hostile work environment harassment

include claims that Mr. Fanning singled her "out for disparate treatment by auditing her

time at work" and "created a hostile work environment for Plaintiff when he gave her deadlines and tasks it was impossible for her to meet." Complaint at ¶¶ 7-8. Plaintiff also contends that she was harassed because she took sick leave; was directed to work call-back overtime; was threatened with a reduction-in-force ("RIF"); and failed to have her work product improvement suggestions implemented. *See* Complaint at ¶¶ 7-10, 14.

Plaintiff alleges discrete acts of discrimination based upon her race and sex, claiming that she was reassigned, detailed, and received a fiscal-year 2006 performance rating of 61. *See* Complaint at ¶¶ 12-13. Plaintiff also claims that Mr. Fanning selected/promoted a Caucasian female to a position to which Plaintiff was entitled. *See* Complaint at ¶¶ 13-15. Plaintiff asserts that due to the alleged discrimination, she has sustained a loss of pay increases and loss of position and has suffered "mental and emotional distress, anxiety, and humiliation as a result of the hostile work environment created by the…Defendants." Complaint at ¶ 21.

Pursuant to the Federal Rules of Civil Procedure, the Defendants respectfully move to dismiss this action, or in the alternative, for summary judgment. As set forth below, Plaintiff's claims of reassignment, placed in a detail, and non-selection/non-promotion are untimely, as she has failed to exhaust her administrative remedies and contact an Equal Employment Opportunity ("EEO") Counselor within the requisite 45-day time period. *See* 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1); *see also Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003). Secondly, the Court lacks subject matter jurisdiction over the individual claims against Mr. Fanning, as Title VII explicitly preempts discrimination cases against individual federal employees and only

allows for such a cause of action against the head of an agency. *See* 42 U.S.C. § 2000e-16(c); *see also Wilkins v. Daley, et al.*, 49 F. Supp. 2d 1, 3 (D.C. Cir. 1999).

    With regard to Plaintiff's timely claims, she cannot establish a *prima facie* case of discrimination. First of all, Plaintiff has failed to specify how her performance rating has adversely affected any of the terms or conditions of her employment or how the score gives rise to an inference of discrimination. *See Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). Furthermore, Plaintiff has failed to offer any specific allegations concerning her claims that her work was audited, that she was harassed and instructed with regards to leave, and that her suggestions for work product improvement were not implemented, which would allow this Court to consider whether such events might be severe or pervasive enough to constitute actionable hostile work environment harassment. *See* Complaint at ¶¶ 7, 9, 14. Despite Plaintiff's claims of difficult work assignments and threats of overtime and an RIF, she has not shown that Defendant's conduct was severe and pervasive enough to create a hostile work environment. *See* Complaint at ¶¶ 7-10, 14; *see also Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 163 (D.C. Cir. 2007). Plaintiff, along with the entire IMD team, was tasked with inventorying Agency laptops. *See* Ex. A at 2-3; Ex. D at 2; Ex. E at 1; Ex. J. Even Plaintiff admits that the Defendants did not require her to work any call-back overtime, nor did it discipline her for failing to work these crucial hours. *See* Ex. A at 3. Although all of IMD was threatened with an RIF, such an action was never carried out. *See* Ex. A at 2; Ex. D at 3; Ex. E at 2; Ex. G at 2; Ex. O.

    Even if Plaintiff could succeed in establishing a *prima facie* case of discrimination, the Defendants have articulated legitimate, non-discriminatory reasons for

the actions in question, and Plaintiff has not shown that these reasons were pretextual. While Plaintiff's performance rating may have been lower than she expected, such a score was due to her attendance issues, which were addressed by her supervisor numerous times before she received her final rating for fiscal-year 2006. *See* Ex. Q at 11, 13-15; Ex. R; Ex. T. IMD was directed to work overtime in response to a Congressional inquiry after news reports indicated that over 1,000 Agency laptops were missing, lost, or stolen. *See* Ex. A at 2-3; Ex. D at 1-2; Ex. E at 1; Ex. G at 2; Ex. H; Ex. J; Ex. K; Ex. I. Furthermore, IMD was threatened with a RIF only after repeatedly failing to complete the necessary inventories. *See* Ex. D at 2-3; Ex. G at 3; Ex. M; Ex. N. Accordingly, the Defendants' Motion for Summary Judgment should be granted.

## II.    PROCEDURAL HISTORY

### A.    Administrative Proceedings

Plaintiff filed a formal complaint of discrimination with the Agency's Office of Civil Rights on or about November 17, 2006, alleging hostile work environment harassment based upon her race (African-American) and sex (female) and in reprisal for protected EEO activity. *See* Ex. X; Ex. Y at 1-2. Following investigation of the complaint by the Agency's Office of Civil Rights, Plaintiff requested a hearing before an Administrative Judge of the Equal Employment Opportunity Commission ("EEOC"). *See* Ex. Z. On or about January 14, 2008, Administrative Judge Kurt Hodges ("Judge Hodges") *sua sponte* issued a *Notice of Intent to Issue a Decision without a Hearing*. *See* Ex. AA. On February 7, 2008, Judge Hodges then granted summary judgment, determining that it was appropriate with respect to Plaintiff's claims because the record lacked evidence suggesting that the actions complained of were the result of unlawful

discrimination or retaliation. *See* Ex. BB at 1. In his decision, Judge Hodges found that the Agency had articulated legitimate, non-discriminatory reasons for its actions and that Plaintiff had not set forth any evidence that could demonstrate that those legitimate reasons were a pretext for illegal discrimination or retaliation. *See id*. at 4-6. Subsequently, on March 3, 2008, the Agency's Office of Civil Rights issued a "Notice of Final Order" fully implementing the decision of Judge Hodges. *See* CC.

## B.    District Court Complaint

On June 18, 2008, Plaintiff filed suit against Defendants, Carlos M. Gutierrez, Secretary of the United States Department of Commerce, and Fred Fanning, Director of the Office of Administrative Services. *See* Complaint. Plaintiff is seeking the following relief: (1) back pay for monies lost due to a job performance rating of 61; (2) restitution for benefits lost; (3) restraint and injunction of the Agency's discrimination against her; (4) an increase of her performance rating score for fiscal-year 2006 from 61 to 80; (5) promotion to a ZA-4 level; and (6) compensatory damages in the sum of $300,000. *See* Complaint at 6.

## III.    STATEMENT OF FACTS

**Defendants' Statement of Material Facts as to Which There is no Genuine Dispute is Incorporated Herein.**

## IV.    STANDARD OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

"The court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[.]" *Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d 84, 86 (D.C. Cir. 2007). On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, "[a] plaintiff bears the burden

of establishing by a preponderance of the evidence that the Court possesses jurisdiction."

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F.

Supp. 2d 101, 104 (D.C. Cir. 2007).  Accordingly, "federal courts are courts of limited

jurisdiction and the law presumes that a cause lies outside this limited jurisdiction."

*Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.C. Cir. 2007) (internal quotations

omitted).

A court may resolve a motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1) in two ways.  First, the court may determine the motion based solely

on the complaint.  *See Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C.

Cir. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look

beyond the allegations of the complaint, consider affidavits and other extrinsic

information, and ultimately weigh the conflicting evidence *without* converting the motion

to one for summary judgment.  *See id*.; *see also, e.g., Land v. Dollar*, 330 U.S. 731, 735

at n. 4 (1947) (finding that "when a question of the District Court's jurisdiction is

raised…the court may inquire by affidavits or otherwise, into the facts as they exist")

(emphasis added).[1]

---

[1] There exists some uncertainty within this District regarding whether a failure to properly exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a 12(b)(6) motion.  *Compare Mills v. Billington*, Civ. A. No 04-2205 (HHK), 2006 WL 1371683, at *2 (D.D.C. May 16, 2006) ("It is well-settled that a plaintiff's failure to exhaust her administrative remedies will deprive a district court of subject matter jurisdiction[.]"); *Williams v. Chertoff*, Civ. A. No. 05-0211 (RCL), 2005 WL 3200794, at *1 (D.D.C. Nov. 1, 2005) (same); *with Holmes v. PHI Serv. Co.,* 437 F. Supp. 2d. 110, 118-23 (D.D.C. 2006) (Walton, J.) (failure to timely exhaust is not a jurisdictional defect); *Walker v. Paulson*, Civ. A. No. 06-1115 (PLF), 2007 WL 1655879, at * 2 (D.D.C. June 7, 2007) (same); *see also Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (recognizing that prior D.C. Cir. decisions have reached conflicting answers as to whether a failure to exhaust is jurisdictional, but declining to decide the matter); *Mianegaz v. Hyatt Corp*., 319 F. Supp. 2d 13, 17 (D.D.C. 2004) (Urbina, J.) (same); *Marcelus v. Corr. Corp. of Am. / Corr. Treatment Facility*, 540 F. Supp. 2d 231, n.4 (D.D.C. Mar. 31, 2008) (Leon, J.) (noting that "courts in this district continue to grapple with the appropriate standard for failure to exhaust," noting inconsistencies among courts in the D.C. Circuit).  However, much like in *Rann*, the distinction for purposes of this Motion is academic as dismissal is appropriate under either Rule 12(b)(1) or Rule 12(b)(6). *See also Smith v. Jackson*, 539 F. Supp. 2d 116, 128 (D.D.C. Mar. 10, 2008) (Kollar-Kotelly, J.) ("the

### B.    Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate where, as here, the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. *See Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50. Furthermore, "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law'." *Celotex Corp.*, 477 U.S. at 323 (citations omitted).

---

Court agrees that it relates to Plaintiff's exhaustion of his administrative remedies and thus to the Court's jurisdiction to entertain Plaintiff's [Title VII] claims," analyzing exhaustion under Rule 12(b)(1)); *but see Hayes v. Chao*, 541 F. Supp. 2d 387, n.3 (D.D.C. Apr. 2, 2008) (Kollar-Kotelly, J.) ("Exhaustion is not a jurisdictional prerequisite to plaintiff's [Title VII] claims[.]").

Moreover, Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Further, the non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts" or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); s*ee also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

**B.    Title VII**

In *Fogg v. Gonzales*, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter alia*, that the 1991 amendments to Title VII codified two (2) alternative ways of establishing liability for intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that discrimination was the "sole" or "but for" reason for the challenged employment action; and (2) a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played a "motivating part" or was a "substantial factor" in the employment decision. *Id*. at 451. Under either theory, a plaintiff must demonstrate discrimination by a preponderance of the evidence[2] and may rely on direct or, as in this case, circumstantial evidence to meet that burden. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-102 (2003).

---

2 "Preponderance of the evidence" means such evidence as, when weighed against that opposing it, has the more convincing force that something is so. *Hopkins v. Price Waterhouse*, 737 F. Supp. 1202 (D.D.C. 1990), *aff'd* 920 F.2d 967 (D.C. Cir. 1990); *Metropolitan Stevedore Company v. Rambo*, 521 U.S. 121, 137 at n.9 (1997). "[W]hen the evidence is evenly balanced, the [party with the burden of persuasion] must lose." *Id.*

In the absence of direct evidence, a plaintiff may attempt to establish that he or she was the victim of intentional discrimination by relying on circumstantial evidence, as is the case with Plaintiff here, using the scheme first set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  Under that scheme, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  If the employee succeeds, the employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.  *See McDonnell Douglas*, 411 U.S. at 802.  Once it is established that both parties have met their respective burdens of production (*i.e.*, plaintiff by presenting a *prima facie* case and defendant by producing a non-discriminatory reason for its actions), the burden shifting scheme becomes irrelevant.  *See Hicks*, 509 U.S. at 510.  Then, the plaintiff must establish, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a motivating factor for any employment practice."  *Desert Palace*, 539 U.S. at 90, 101 (citing 42 U.S.C. § 2000e-2(m)).

Plaintiff can meet the ultimate burden by demonstrating that the defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but for" reason for the challenged employment action.  *See Hicks*, 509 U.S. at 515-518.  This a more difficult standard than the requirement under 42 U.S.C. § 2000e-2(m) to show that discrimination was a motivating factor.  In a single motive case, in *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions where summary judgment would be appropriate:

---

3  Reliance on the *McDonnell Douglas* scheme for testing the viability of plaintiff's circumstantial evidence is not limited to the "single-motive" theory of liability.  *See Fogg v. Gonzales*, 492 F.3d 447, 451.

"Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.  For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."

Under the D.C. Circuit's recent decision in *Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008), once the defendant has articulated a legitimate non-discriminatory reason for its actions, the court "need not - <u>and should not</u>" decide whether a plaintiff who suffered an adverse employment action established a *prima facie* case.  *Id*. at 494 (emphasis in original).  Instead, the court must focus on one central question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee."  *Short v. Chertoff*, 555 F. Supp. 2d 166, 172 (D.C. Cir. 2008) (citations omitted).

 "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown <u>both</u> that the reason was false, and that discrimination was the real reason."  *Hicks*, 509 U.S. at 502, 515 (emphasis in original).  "It is not enough, in other words, to disbelieve the employer, the fact finder must believe the plaintiff's explanation of intentional discrimination."  *Id*. at 519.  Plaintiff bears the ultimate burden of persuasion on the issue of whether she was intentionally discriminated against.  *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Whichever standard is employed, the Plaintiff here fails to meet her burden of coming forward with evidence to create a triable issue.  As demonstrated below, the

undisputed facts illustrate that Plaintiff cannot demonstrate that discrimination was a motivating factor, much less that it was the sole motivating factor, in the challenged decision.

## V.    LEGAL ARGUMENT

### A.    Many of Plaintiff's Claims are Untimely

Plaintiff has failed to exhaust her administrative remedies with respect to her claims that she was: (1) reassigned, (2) detailed, and (3) not selected/not promoted due to her race and sex because she failed to comply with the deadlines for contacting an EEO Counselor.  Prior to seeking relief in federal court under Title VII, a federal employee *must* timely exhaust all available administrative remedies.  *See* 42 U.S.C. § 2000e-16(c)); 29 C.F.R. § 1614.407; *Kizas v. Webster*, 707 F.2d 524, 544 at n. 99 (D.C. Cir. 1983); *see e.g., United Airlines v. Evans*, 431 U.S. 553, 555 (1977) (emphasis added).  EEOC regulations implemented pursuant to 42 U.S.C. § 2000e-16(b) require an aggrieved party to initiate contact with an EEO Counselor within 45 days of the date of the alleged discriminatory conduct or the effective date of an alleged discriminatory personnel action.  *See* 29 C.F.R. § 1614.105(a)(1); *see also Stewart*, 352 F.3d at 425.  Claims alleging discrete acts of discrimination occurring outside of the statutory 45 day time period are time-barred and not actionable, even if Plaintiff is able to prove that they are related to acts alleged in timely filed charges.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); 29 C.F.R. §§ 1614.107(a)(2), 1614.109(b).

These procedural requirements governing a plaintiff's right to bring a Title VII claim in court are critical.  Specifically, "[e]xhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that

the federal courts are burdened only when reasonably necessary." *See Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985).  Accordingly, courts have strictly enforced the time deadlines throughout the complaint process under Title VII.  *See Brown*, 777 F.2d at 13 (finding that "a plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience"); *Carter v. Rubin*, 14 F. Supp. 2d 22, 32 (D.C. Cir. 1998) (holding that federal employees may not file employment discrimination actions outside applicable time deadlines); *see also Bayer v. Dep't of Treasury*, 956 F.2d 330, 332-33 (D.C. Cir. 1992) (stating that although failure to comply with time limits is not a jurisdictional defect, a plaintiff bears the burden of pleading and proving sufficient reasons to excuse noncompliance).

In Plaintiff's District Court Complaint, she has alleged sex and race discrimination when she was reassigned on May 13, 2007; detailed to NOAA on January 7, 2008; and not selected/not promoted for the position of Chief of PPMD in OAO as of October 11, 2007.  *See* Complaint at ¶¶ 12-15; Ex. C at ¶¶ 9, 11-12.  At the latest, Plaintiff had until February 21, 2008, to contact an EEO Counselor regarding her detail assignment.  Yet Plaintiff failed to contact an EEO Counselor at any time concerning any of the aforementioned actions.  As such, these three (3) claims should be dismissed for failure to exhaust administrative remedies.

> **1.    Because Plaintiff's civil action is limited in scope to claims that are similar or reasonably related to those raised in her EEO complaint, her allegations of reassignment, detail, and non-selection/non-promotion should be dismissed.**

Plaintiff initially contacted an EEO Counselor on August 4, 2006, alleging sex discrimination after management failed to take corrective action concerning a co-worker's misconduct against her, directed her to work call-back overtime, and threatened

a RIF within IMD.  *See* Ex. DD.  After corresponding with the Agency's Office of Civil

Rights concerning the claims accepted for investigation, Plaintiff's final administrative

complaint contained allegations that due to her race and sex she was subjected to

harassment constituting a hostile work environment when: (1) she was "given tasks and

deadlines which are unreasonable to meet;" (2) "her duties have been assigned to another

co-worker;" and (3) management insisted "that she work call-back overtime even though

she cannot do so" and threatened her "with reduction-in-force to encourage her to do so."

Ex. Y at 1.  Plaintiff also alleged that in retaliation for her administrative complaint, "she

received a low performance rating score of 61 for FY 06."  *Id.*

   The claims in Plaintiff's Complaint that she was reassigned, detailed, and not

selected/not promoted are not reasonably related to the hostile work environment

allegations brought by Plaintiff in the EEO process.  This court has held that "[a] Title

VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or

reasonably related to the allegations of the charge and growing out of such allegations'."

*Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheeck v. Western

and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  In *Park*, the court held that

an administrative complaint, which primarily addressed a nonpromotion on the basis of

sex and national origin, could not be interpreted to encompass the later claim of hostile

work environment harassment on the basis of national origin brought forth for the first

time in the civil action.  *See id.*  Thus, the court found that the plaintiff failed to exhaust

her administrative remedies on the hostile work environment claim.  *See id.*

   As in *Park*, the Plaintiff's administrative complaint alleging hostile work

environment harassment and retaliation cannot be considered to encompass her current

13

claims of sex and race discrimination when she was reassigned, detailed, and not

selected/not promoted and should be dismissed.  Furthermore, even if Plaintiff could

prove that her new allegations are related to acts alleged in timely filed charges, claims

alleging discrete acts of discrimination occurring outside of the statutory 45 day time

period are time-barred and not actionable.  *See Morgan*, 536 U.S. at 113; 29 C.F.R. §§

1614.107(a)(2), 1614.109(b).

> **2.      The discrete acts of discrimination alleged in Plaintiff's
>         Complaint are distinct from her allegations of hostile work
>         environment harassment and retaliation raised in her EEO
>         complaint, required her to file timely administrative charges,
>         and must now be dismissed.**

Plaintiff's new claims allege three (3) discrete acts of discrimination, which she

failed to allege in her EEO complaint and which are distinct from the allegations of

hostile work environment harassment and retaliation that she raised during the

administrative process.  The distinction between discrete acts of discrimination and a

hostile work environment is well-established.  A discrete act of discrimination "is an act

that in itself 'constitutes a separate actionable unlawful employment practice' and that is

temporally distinct," such as "termination, failure to promote, denial of transfer, or

refusal to hire."  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.***,** 127 S. Ct. 2162, 2175

(May 29, 2007) (quoting *Morgan*, 536 U.S. at 114, 117) (internal quotations omitted).  A

hostile work environment, on the other hand, "typically comprises a succession of

harassing acts, each of which 'may not be actionable on its own.'  In addition, a hostile

work environment claim 'cannot be said to occur on any particular day'," as "the

actionable wrong is the environment, not the individual acts that, taken together, create the environment." *Id.* (quoting *Morgan* 536 U.S. at 115-16).

Each of the aforementioned actions alleged in Plaintiff's Complaint constitutes a discrete and identifiable "act" for which the Plaintiff, if she believed that she was being discriminated against, was required to file a timely charge. In order to comply with the administrative EEO deadlines, Plaintiff was required to contact an EEO Counselor within 45 days following each alleged reassignment, detail, and non-selection/non-promotion. The triggering standard that initiates the 45-day limitations period for EEO counselor contact is "reasonable suspicion." *Johnson v. Gonzales,* 479 F. Supp. 2d 55, 59 (D.C. Cir. 2007); *Paredes v. Nagle*, 1982 WL 319 (D.C. Cir. 1982); *see also Stewart,* 352 F.3d at 425. When a party "obtains information that gives him a reasonable suspicion that he has been the victim of discrimination," but before all the facts that support a charge of discrimination have become apparent, the limitations period begins to run. *Hyson v. Boorstin*, 1982 WL 155452 (D.C. Cir. 1982), at *2 (internal quotations omitted); *see also Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) (finding that "limitations periods normally commence when the employer's decision is made"). Therefore, "EEO procedures are time barred if the plaintiff knew, or should have known, about the alleged discriminatory action 45 days prior to his filing of" an administrative complaint. *Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.C. Cir. 2004).

Plaintiff's claims regarding reassignment, being detailed, and non-selection/non-promotion clearly fall within the "easy to identify" class of claims that are time-barred unless a timely charge is filed. Viewing circumstances in a light most favorable to Plaintiff, by February 2008 at the absolute latest, she possessed sufficient facts to form

what she might believe to be a reasonable suspicion of discrimination regarding the foregoing claims, as all of the discrete personnel acts had occurred by then. Yet Plaintiff never contacted an EEO Counselor regarding these events. Accordingly, Plaintiff's claims regarding discrete events on May 13, 2007, October 11, 2007, and January 7, 2008, are time-barred and should be dismissed.

**B.     Defendant's Rule 12(b)(1) Motion to Dismiss Should be Granted as This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Title VII Claims Against Mr. Fanning.**

Because Title VII explicitly preempts claims against individual supervisors in employment discrimination cases against the federal government, this Court lacks subject matter jurisdiction over Plaintiff's timely claims against Mr. Fanning. *See* 42 USC § 2000e-16(c). In her Complaint, Plaintiff names both Secretary Gutierrez and Mr. Fanning as Defendants, alleging one count of employment discrimination based upon her race and sex in violation of 42 USC § 2000e. *See* Complaint at ¶¶ 3-4, 18-20. However, the only proper defendant in a Title VII action for alleged federal employment discrimination is the head of the federal agency in which the claimed discriminatory acts occurred. *See* 42 USC § 2000e-16(c); *see also Wilkins*, 49 F. Supp. 2d at 1-3; *see also Hackley v. Roudebush*, 510 F.2d 108, 115 (D.C. Cir. 1975).

Accordingly, Plaintiff's attempt to sue Mr. Fanning on a theory of employment discrimination pursuant to Title VII is improper. Because Title VII prevents claims from being brought against individual supervisors in employment discrimination cases against the federal government, the Court should dismiss Plaintiff's claims against Mr. Fanning for failure to name a proper party defendant and substitute Secretary Gutierrez as the sole defendant in this matter.

16

**C.     Plaintiff Fails to Establish a *Prima Facie* Case of Discrimination With Respect to her Timely Claims.**

      **1.     Plaintiff cannot prove a *prima facie* case of race and sex discrimination.[4]**

An "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006); *see also Taylor v. FDIC*, 132 F.3d 753, 764 (D.C. Cir. 1997) (finding that in determining whether a particular employment action constitutes an adverse action, the trier of fact should focus on "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, and compensating."); *Crady v. Liberty Nat'l and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) (stating "a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience") (cited with approval in *Farce v. Tanoue*, 131 F. Supp. 2d 36, 40 (D.C. Cir. 2001)).  An adverse action has occurred only "when an employee experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Nichols v. Truscott*, 424 F. Supp. 2d 124, 135 (D.C. Cir. 2006) (quoting *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002)) (internal quotations omitted).  Furthermore, "a 'thick body of precedent…refutes the notion that formal criticism or poor performance evaluations are *necessarily* adverse

---

4  Although the D.C. Circuit in *Brady* stated that a Court should not determine whether a plaintiff has set forth a *prima facie* case when defendant has set forth legitimate, non-discriminatory reasons for its action, the Court made clear that plaintiff must still establish that she suffered an adverse employment action. *Brady*, 520 F.3d at 494.

17

actions,' especially when the evaluation does not affect a plaintiff's grade or salary."

*Kilby-Robb*, 522 F. Supp. 2d at 161 (quoting *Brown*, 199 F.3d at 458) (emphasis added).

> **2.      Plaintiff cannot establish a *prima facie* case of hostile work environment harassment.**

To establish a prima facie case of hostile work environment, a plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment occurred because of her race or disability; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent it." *Kilby-Robb*, 522 F. Supp. 2d at 163 (citing *Jones v. Billington*, 12 F.Supp. 2d 1, 11 (D.C. Cir. 1997). Specifically, "[a] workplace environment becomes 'hostile' for purposes of Title VII…and legal relief *only* when the offensive conduct permeates the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See id*. at 163 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 71 (1998)) (citations omitted) (emphasis added)

Furthermore, in order to determine whether a work environment is sufficiently hostile to be actionable under Title VII, "a court should consider: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonably interferes with the employee's performance." *See Kilby-Robb*, 522 F. Supp. 2d at 163. Moreover, because it must be clear that a hostile work environment was the result of discrimination based on a protected status, the Plaintiff here must produce evidence that she was discriminated against because of her race or gender. *See id*.

18

Plaintiff claims that she was subjected to harassment creating a hostile work environment when: (1) her time at work was audited; (2) she was given difficult tasks and deadlines; (3) she was harassed when she took sick leave and was instructed on proper procedures for use of sick leave; (4) she was directed to work call-back overtime; (5) she was threatened with a RIF; and (6) her suggestions for work product improvement were not implemented. *See* Complaint at ¶¶ 7-10, 14. However, Plaintiff cannot establish a *prima facie* case of a hostile work environment based upon the incidents she cites. The alleged events, individually or collectively, simply do not establish that offensive conduct "permeated [the workplace] with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kilby-Robb*, 522 F. Supp. 2d at 167 (citing *Oncale*, 523 U.S. at 81).

First of all, Plaintiff has failed to offer any specific allegations concerning her claims that her work was audited, that she was harassed and instructed with regards to leave, and that her suggestions for work product improvement were not implemented, which would allow this Court to consider whether such events might be severe or pervasive enough to constitute actionable hostile work environment harassment. *See* Complaint at ¶¶ 7, 9, 14. Secondly, Plaintiff alleges that she was given "tasks and deadlines it was impossible for her to meet" in connection with the one-time, three-day incident in which the entire IMD team was tasked with accounting for the missing laptop computers, specifically being directed to perform an inventory of laptops for the Office of the Secretary and the Agency and to provide Department Forms Reconciliation. *See* Complaint at ¶ 8; Ex. A at 2-3; Ex. D at 2; Ex. E at 1; Ex. J. Such a one-time assignment

19

cannot be considered sufficiently frequent, severe, threatening, offensive, or disruptive of Plaintiff's performance so as to trigger a violation of Title VII.

Furthermore, it is undisputed that Plaintiff was not required to work any call-back overtime nor was any adverse action taken against her for her failure to do so. *See* Ex. A at 3; Ex. D at 4; Ex. E at 3; Ex. G at 3. Plaintiff also admits that the threatened RIF was never carried out. *See* Complaint at ¶ 10; Ex. A at 2. Lastly, Plaintiff has produced no evidence that the alleged hostile work environment was solely the result of discrimination based upon her race and sex, that the harassment affected her employment in any way, or that the Agency knew of any alleged harassment but failed to prevent it. Because Plaintiff cannot establish a *prima facie* case of hostile work environment harassment, the Defendants' Motion for Summary Judgment should be granted.

**D.    Defendant has Offered a Legitimate, Non-Discrimination Explanation for its Actions, and Plaintiff has Failed to Establish Pretext.**

**1.    Defendant has Articulated Legitimate, Non-discriminatory Reasons for its Actions.**

In articulating a legitimate, non-discriminatory explanation, the employer's burden is one of production, not of proof, since the ultimate burden of persuading the court that the employer intentionally discriminated remains at all times with the employee. *See Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998); *Hicks*, 509 U.S. at 507. The employer's burden is satisfied if it simply explains what it has done or produces evidence of a legitimate, non-discriminatory explanation. *Hicks*, 509 U.S. at 509. Furthermore, the legitimate, non-discriminatory explanation need not be one with which the employee agrees. An employer may act for any reason, whether good or bad, so long as unlawful discrimination is not a motivating factor for the employer's

action. *See Burdine*, 450 U.S. at 259; *Simmons v. Bilington*, 1989 WL 222729, at *3 (D.D.C. 1989).

In Plaintiff's Second Quarterly Feedback for fiscal-year 2006, dated May 9, 2006, Mr. Williams addressed Plaintiff's attendance record, expressing his concern regarding instances of Plaintiff's tardiness, absences, and negative leave balances. *See* Ex. Q at 11. Furthermore, in Plaintiff's Third Quarterly Feedback for fiscal-year 2006, dated August 1, 2006, Mr. Williams acknowledged some improvement in Plaintiff's tardiness but reiterated his concern regarding her absences and negative leave balances. *See id.* at 13. Subsequently, on August 23, 2006, Plaintiff was placed on official leave restriction due to her continued attendance issues. *See* Ex. R. Thus, Plaintiff received a fiscal-year 2006 performance rating of 61 and was rated as "eligible with performance deficiencies" because her tardiness and unscheduled leave affected the accomplishment of the mission of OAS. *See* Complaint at ¶ 12; Ex. A at 4; Ex. Q at 14-15; Ex. T. While Plaintiff was given the full opportunity to challenge her 2006 performance rating, she failed to respond to Mr. Elznic's request for additional supporting information so that he was compelled to uphold the rating that had been submitted for Plaintiff. *See* Ex. F at 1; Ex. U; Ex. V. Although Plaintiff's performance evaluation may have been lower than she had hoped, her argument does not support a conclusion that it was the product of race or gender discrimination.

After news reports identified the Agency as one of many federal agencies with missing laptop computers and in response to a Congressional inquiry, the entire IMD team, Plaintiff included, was tasked with accounting for the missing laptop computers, specifically being directed to perform a 100% inventory of laptops for the Office of the

Secretary and the Agency and to provide Department Forms Reconciliation. *See* Ex. A at 2-3; Ex. D at 1-2; Ex. E at 1; Ex. H; Ex. J; Ex. I. Only after IMD failed to complete these tasks on three (3) different occasions, did Mr. Fanning direct the team to work one weekend of call-back overtime. *See* Complaint at ¶ 9; Ex. A at 2-3; Ex. D at 2; Ex. G at 2; Ex. J; Ex. K. After the IMD team once again failed to complete this urgent work, Mr. Fanning threatened to recommend that NOAA become the Executive Agent for personal property management within the Agency and that all of IMD undergo a RIF. *See* Complaint at ¶ 9; Ex. D at 2-3; Ex. G at 3; Ex. M; Ex. N. However, rather than proceeding with a RIF and in order to complete the inventories and reconciliation, Mr. Fanning created a four (4) person team called the "Tiger Team," consisting of Ms. Jessup (Caucasian female), Ms. Darden (African American female), Mr. Coleman (African American male), and Ms. Basurto-Bass (African American female) and then reassigned IMD's property management duties to that team. *See* Ex. A at 2; Ex. D at 3; Ex. E at 2; Ex. G at 2; Ex. O.

Plaintiff has also failed to allege a sufficient factual basis to even allow the Defendants to respond to her claims that she was subjected to harassment creating a hostile work environment when her time at work was audited; that she was harassed when she took sick leave and was instructed on proper procedures for use of sick leave; and that her suggestions for work product improvement were not implemented. *See* Complaint at ¶¶ 7-10, 14. However, Defendants have provided a thorough and legitimate explanation supporting the Plaintiff's 2006 performance evaluation, the call-back overtime required of the IMD team, and the threatened RIF, and Plaintiff cannot maintain that any unlawful discrimination was the motivating factor for Defendant's actions.

## 2.    The Plaintiff has Made no Showing of Pretext.

As set forth above, the Defendants have articulated a legitimate, non-discriminatory explanation regarding the actions taken.  *See Burdine*, 450 U.S. at 254-55.  Once a defendant articulates the reasons for its actions, he prevails unless the plaintiff "succeeds in discrediting the employer's explanation."  *Samii v. Billington*, 195 F.3d 1, 3 (D.C. Cir. 1999) (citing *Aka*, 156 F.3d at 1289).   In fact, the burden remains on the plaintiff to establish by a preponderance of the evidence that defendant's legitimate and non-discriminatory explanation is merely a pretext for discrimination.  Specifically, "[t]he issue is not the correctness or desirability of [the] reasons offered . . . [but] whether the employer honestly believes in the reasons it offers.  *Fischbach v. District of Columbia Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citation omitted).

Since the ultimate burden of persuasion in proving discrimination remains with the plaintiff, "summary judgment is appropriate where the employee is unable to satisfy this burden."  *Samii*, 195 F.3d at 3.  Moreover, simply casting doubt on the employer's proffered justification does not automatically enable the plaintiff to survive summary judgment.  *See Aka*, 156 F.3d at 1290-91.  Rather, the plaintiff must proffer evidence beyond mere speculations and allegations when refuting the defendant's legitimate, non-discriminatory reasons for its decisions.  *See Brown*, 199 F.3d at 458, 466.  Here, the Plaintiff has utterly failed to discredit the justifications for the Defendants' actions as cited above, so that summary judgment is appropriate.

First of all, the Plaintiff has produced no evidence discrediting the Agency's articulated consideration of the negative impact that her recurrent tardiness and unscheduled leave had upon the mission of OAS when she was given a fiscal-year 2006

23

performance rating of 61.  *See* Complaint at ¶ 12; Ex. A at 4; Ex. Q at 14-15; Ex. T.  In

fact, Plaintiff has failed to name even one comparator employee who received a higher

performance rating than she or to otherwise establish how her rating may have been

motivated by unlawful discrimination.

 Nor has the Plaintiff shown that the Agency's explanations for the laptop

inventories assigned to the entire IMD team; the necessity of the call-back overtime

which Plaintiff never completed; and the threatened RIF directed at all of IMD were

somehow pretext for discriminating against Plaintiff based upon her race and sex.  The

inventories were required in response to a Congressional inquiry and not only Plaintiff,

but all employees of IMD, including both sexes and various races, were directed to

complete these assignments.  *See* Ex. A at 2-3; Ex. D at 1-2; Ex. E at 1; Ex. H; Ex. J; Ex.

I.  Accordingly, every member of the IMD team, regardless of race or sex was

responsible to complete one weekend of call-back overtime to complete these inventories.

*See* Complaint at ¶ 9; Ex. A at 2-3; Ex. D at 2; Ex. G at 2; Ex. J; Ex. K.  Lastly, the

Plaintiff has not established how the threatened RIF of all of IMD based upon the team's

repeated failure to complete the urgent inventories was motivated by any unlawful

consideration of race or sex.  *See* Complaint at ¶ 9; Ex. D at 2-3; Ex. G at 3; Ex. M; Ex.

N.

 Thus, because Plaintiff has not established and cannot prove that the Defendants'

legitimate reasons for her 2006 performance evaluation, the call-back overtime required

of the entire IMD team, and the threatened RIF are untrue or mere pretext, summary

judgment should be granted in favor of Defendants.

## VI.    CONCLUSION

Based upon the foregoing, Defendants submit that this case should be dismissed, or alternatively, summary judgment entered in the Defendants' favor.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR,
D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS,
D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
WYNEVA JOHNSON,
D.C. Bar #278515
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., E-4106
Washington, D.C. 20530
(202) 514-7224


Of Counsel:
AIMEE R. FOX, Esq.
U.S. Department of Commerce
Office of General Counsel

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

TAPRINA JACKSON,                              )
                                              )
        Plaintiff,                            )
                                              )
        v.                                    )        Civil Action No. 08-1048 (RBW)
                                              )
CARLOS M. GUTIERREZ, Secretary                )
U.S. Department of Commerce, et al.           )
                                              )
        Defendants.                           )
_____)

**<u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>**

Pursuant to Local Rule 7(h), defendant submits the following statement of undisputed,

material facts:

1.     Plaintiff is an African American female.  *See* Complaint at ¶¶ 2, 20; Exhibit

       ("Ex.") A at 1.

2.     The U.S. Department of Commerce ("Agency") is part of the Executive Branch of

       the Federal Government, and is made up of a number of offices, including the

       Office of Administrative Services ("OAS") within the Office of the Secretary

       ("OS").  *See* http://www.osec.doc.gov/oas/.  The mission of OAS is to provide

       exceptional support services, enabling Agency Operating Units to focus on their

       core missions.  *See* http://www.osec.doc.gov/oas/service.htm.  Some of the

       primary services provided by OAS are offered under the auspice of the Office of

       Administrative Operations ("OAO"), including providing Agency policy,

       oversight, and strategic planning in the areas of travel management, publications

       and graphics, reference and research services, mail management, fleet

management, and copy services.  *See* http://www.osec.doc.gov/oas/oas-oao.htm. OAO also provides technical advice and assistance to Agency Operating Units in assigned personal property, policy, and program areas while offering conference support services.  *See id.*  Operational divisions of OAO include: Library Services Branch; Travel Management Division; Mail Services Division; Multimedia Division; Personal Property Division; and Information Management Division ("IMD").  *See id.*

3.    From March 20, 2005, to May 13, 2007, Plaintiff was employed by the Agency with OAS in OAO as a Program Management Specialist, ZA-301-III, for IMD. *See* Complaint at ¶ 5; Ex. B; Ex. C at ¶ 6.

4.    While employed with in OAO, Zackary Williams was Plaintiff's immediate supervisor and rating official; Rhonda Jackson was her second-level supervisor; and Doug Elznic was Acting Deputy Director of OAS and her pay pool manager. *See* Ex. A at 1; Ex. D at 1; Ex. E at 1; Ex. F at 1; Ex. G at 1.

5.    Mr. Fanning acted as Director of OAS from July 5, 2006, to March 26, 2007, and officially occupied that position on March 27, 2007.  *See* Ex. D at 1.  As the Director for OAS, Mr. Fanning was Plaintiff's fourth-level supervisor.  *See id.*

6.    In 2006, shortly after Mr. Fanning became Acting Director of OAS, news reports identified the Agency as one of many federal agencies with missing laptop computers.  *See* Ex. A at 2; Ex. D at 1; Ex. E at 1; Ex. H; Ex. I.  Specifically, it was reported that over 1,000 Agency laptops were missing, lost, or stolen, with some of the computers containing personally identifiable information.  *See* Ex. D at 1-2; Ex. E at 1; Ex. H.

2

7.    In response to a Congressional inquiry, the entire IMD team, Plaintiff included, was tasked with accounting for the missing laptop computers, specifically being directed to perform a 100% inventory of laptops for the Office of the Secretary and the Agency and to provide Department Forms Reconciliation. *See* Ex. A at 2-3; Ex. D at 2; Ex. E at 1; Ex. J.  However, because IMD failed to complete these tasks on three (3) different occasions, the whole team was directed to work one weekend of call-back overtime. *See* Complaint at ¶ 9; Ex. A at 2-3; Ex. D at 2; Ex. G at 2; Ex. J; Ex. K.

8.    Plaintiff claimed that she could not work the overtime due to child care issues. *See* Ex. A at 3; Ex. D at 4; Ex. L.  Plaintiff has admitted that the Agency did not require her to work any overtime nor did it discipline her for failing to work the requisite hours. *See* Ex. A at 3.

9.    After the IMD team repeatedly failed to complete this urgent work, Mr. Fanning sought to recommend that the National Oceanic and Atmospheric Administration ("NOAA") become the Executive Agent for personal property management within the Agency and that all of IMD undergo a reduction-in-force ("RIF"). *See* Complaint at ¶ 9; Ex. D at 2-3; Ex. G at 3; Ex. M; Ex. N.  However, rather than proceeding with an RIF and in order to complete the inventories and reconciliation, Mr. Fanning created a four (4) person team called the "Tiger Team," consisting of Jennifer Jessup (Caucasian female), Jeanette Darden (African American female), Jeri Coleman (African American male), and Gina Basurto-Bass (African American female) and then reassigned IMD's property

3

management duties to that team. *See* Ex. A at 2; Ex. D at 3; Ex. E at 2; Ex. G at 2; Ex. O. The Tiger Team reported directly to Ms. Jackson. *See* Ex. E at 3.

10. As Director for Administrative Services, Mr. Fanning established a baseline performance rating score of 80, which employees were required to meet in order to be considered for any accompanying compensation increase. However, such a score did not automatically entitle an employee to a compensation increase. An employee's supervisor had to request such an increase, and even then, the granting of any such request was discretionary. *See* Ex. C at ¶ 4.

11. Plaintiff received a fiscal-year 2005 performance rating of 81 and a pay increase of $1,782.00. *See* Complaint at ¶ 6; Ex. A at 2, 4; Ex. G at 2; Ex. P.

12. However, in Plaintiff's Second Quarterly Feedback for fiscal-year 2006, dated May 9, 2006, Mr. Williams addressed Plaintiff's attendance record, expressing his concern regarding instances of Plaintiff's tardiness, absences, and negative leave balances. *See* Ex. Q at 11. Furthermore, in Plaintiff's Third Quarterly Feedback for fiscal-year 2006, dated August 1, 2006, Mr. Williams acknowledged some improvement in Plaintiff's tardiness but reiterated his concern regarding her absences and negative leave balances. *See id.* at 13. Subsequently, on August 23, 2006, Plaintiff was placed on official leave restriction due to her continued attendance issues. *See* Ex. R.

13. In an October 20, 2006, email to Ms. Jackson, Mr. Williams proposed a performance rating of 59 for the Plaintiff. *See* Ex. S. Ms. Jackson and Mr. Elznic then agreed that Plaintiff would receive a performance rating of 61. *See* Ex. E at 3-4; Ex. F at 2.

14.     Plaintiff received a fiscal-year 2006 performance rating of 61 and was rated as

"eligible with performance deficiencies" because her tardiness and unscheduled

leave affected the accomplishment of the mission of OAS.  *See* Complaint at ¶ 12;

Ex. A at 4; Ex. Q at 14-15; Ex. T.

15.     As Acting Deputy Director of OAS and pay pool manager, Mr. Elznic was the

deciding official for any OAS employees appealing their fiscal-year 2006

performance ratings.  *See* Ex. F at 1.  On November 30, 2006, Plaintiff emailed

Mr. Elznic requesting that he reconsider her fiscal-year 2006 rating.  *See id*.

Although Mr. Elznic responded, instructing Plaintiff to provide specific

information within nine (9) days concerning why her rating should be altered,

Plaintiff failed to offer any support for such a change.  *See id*; Ex. U.  Because

Plaintiff failed to respond to Mr. Elznic's request for additional supporting

information, he was compelled to uphold the rating that had been submitted for

Plaintiff.  *See* Ex. F at 1; Ex. V.

16.     In May 2007, IMD (including Plaintiff), was reformed into the OAO, so that the

Full-Time Equivalents ("FTEs") and functions of the Information Technology

Branch from the Office of Management Support Services were combined with the

Executive Driver Services and FTEs from the Personal Property Management

Division ("PPMD").  *See* Ex. C at ¶ 8.

17.     Plaintiff was reassigned from the PPMD in OAO to the Office of Real Estate

Policy and Major Programs on May 13, 2007.  *See* Complaint at ¶ 12; Ex. C at ¶

9.

18.    From May 13, 2007, to July 1, 2007, Mr. Fanning directly supervised Plaintiff only because the supervisor position responsible for oversight of her job was vacant and in the process of being filled.  *See* Complaint at ¶ 12; Ex. C at ¶ 10.

19.    From January 7, 2008, to April 28, 2008, Plaintiff was voluntarily detailed to NOAA in order to gain hands-on experience and further training in the software utilized for GPS/GIS location of Agency facilities in cases of emergency.  *See* Complaint at ¶ 13; Ex. C at ¶ 11.

20.    Ms. Jessup was initially appointed as Property Management Officer for OS on September 25, 2006.  *See* Ex. W.  After the posting of a competitive vacancy announcement for the position of Chief of PPMD in OAO in July 2007, Ms. Jessup was selected for that position, effective October 11, 2007.  *See* Ex. C at ¶ 12.

Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR,
D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS,
D.C. Bar #434122
Assistant United States Attorney


_____/s/_____
WYNEVA JOHNSON,
D.C. Bar #278515
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., E-4106
Washington, D.C. 20530
(202) 514-7224


Of Counsel:
AIMEE R. FOX, Esq.
U.S. Department of Commerce
Office of General Counsel

7

# EXHIBIT A

Taprina Jackson                                             Case No.
        v.
United States Department of Commerce                        06-51-00195

I, Taprina Jackson, ZA-301-III, Program Management Specialist, Information Management Division, Office of Administrative Services, Office of the Secretary, United States Department of Commerce, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to pursue my complaint of discrimination against the United States Department of Commerce.

For the record I am an African American female.

      I believe I was discriminated against on the basis of my race and sex when management in the Office of Administrative Services began harassing me and thus creating a hostile work environment. The harassment included being given tasks and deadlines which were unreasonable to meet; having my duties reassigned to a co-worker; threatened with being RIFed because I was unable to meet unreasonable deadlines and if I refused to work callback overtime; and receiving a low performance rating of 61 on my FY06 performance rating.

      I have been in my current position about two years. My immediate supervisor is Zackery Williams, Chief, Personal Property Management Division. My main duty and responsibility was to provide comprehensive operational and administrative personal property management and policy oversight for the Department of Commerce through the Office of the Secretary. To accomplish my mission I had the responsibility of analyzing and advising on changes in policies and resources that affect program objectives; develop

Page 1 of 5 pages

Exhibit  *A*  p. *1*

Affiant's Initials _____

strategies in line with organization's mission; and submit recommendations for improvement of personal property management.

My performance rating during my first year in the Division (FY05) was excellent. I received an overall rating score of 81 and received a $1,782 pay increase.

In 2006 there was a major shake-up in the management structure within Office of Administrative Services. Mr. Fred Fanning became Acting Director of OAS. At some point during the year Mr. Fanning created the tiger team which is made up of three employees within the Division of Information Management. The three employees were Jennifer Jessup (white), Jeanette Darden (black), and Jeri Coleman (black), all of whom are pretty new to the Division. Without making a formal announcement Mr. Fanning began taking away my duties as a Property Management Officer and assigned them to members of the tiger team, Jennifer Jessup. The Tiger team has been performing my property management duties since September 2006. Mr. Fanning has not given me any new duties to replace my property management responsibilities, nor has he told me why my duties were taken away from me.

The problems around personal property management services surfaced toward the end of FY06 (August/September). There was a congressional request for agencies to provide information about the number of missing laptop computers. An article in The Washington Post stated that of the 14 agencies that have responded to the congressional request for information on missing laptops, the Department of Commerce was far and away the worst.

This article seemed to trigger a reaction on Mr. Fanning's part. He held Mr. Williams and me primarily responsible for determining what happened to the missing

laptops. As previously stated, Mr. Fanning took away my personal property management duties and gave them to the tiger team. He did something very similar to Mr. Williams.

Mr. Fanning then began making unreasonable demands and giving us unreasonable time frames in which to complete them. For example, Mr. Fanning wanted the employees in the Personal Property Management Division to work overtime over a three day period (Friday, Saturday, Sunday) in order to complete an inventory of the laptop computers missing within the Department of Commerce. We were notified that we would work until 9:00 p.m. on Friday and on Saturday and Sunday from 8:30 a.m.-3:00 p.m. or until completion of the inventory. In fact, I was threatened with a reduction in force for not meeting the established deadline for completion of the laptop inventory.

Mr. Fanning wanted us to do a complete inventory of all laptop computers at the Department of Commerce. He wanted us to access the system and determine how many laptops were missing and do a physical inventory. The reason this was an impossible task was because in order to do an inventory the property custodians for each agency needed to be available. Also, Mr. Fanning had a co-worker remove my rights to the property system (Sunflower), so I could not even access the system to run reports, queries, or perform data entry. He did not notify me or my supervisor that he was revoking my Sunflower privileges.

I subsequently notified management that I was unable to work overtime due to child care issues. While nothing happened to me for refusing to work the overtime, I nevertheless do not like to be threatened with loss of my job if I do not meet unreasonable deadlines or work overtime.

Exhibit _A_ p. _3_    Affiant's Initials _____

The fact of the matter is over the course of the previous two years the Personal Property Management Division identified several deficiencies within the Department of Commerce where property was concerned. Management constantly put Property Management issues on the back burner. Any ideas and issues dealing with Property Management went unaddressed. Management chose their priorities and Personal Property Management was not one of them. Then all of a sudden after the laptop issue came to the forefront, Property Management became a crisis issue in which the Information Management Division was threatened with a RIF if immediate action was not taken and if we refused to work the weekend overtime. A lot of the deficiencies which we were dealing with had been previously identified by me in 2005 and/or other deficiencies could have been identified if management took the job of Property Management more seriously.

Finally, I believe I was discriminated against regarding my performance rating for FY06 which I did not receive until January 2007. My performance rating dropped 20 points from what it was the previous year, 81 in FY05 to 61 for FY06. I was told by Mr. Williams my rating official that Mr. Fanning instructed him to lower my rating from what he had intended to give me. As a result of the lower rating, I did not receive a performance ~~artist~~ award.

I believe my rating for FY06 should have been roughly the same as for FY05. Most of my duties and responsibilities involved providing policy oversight for the Department's Personal Property Management Program and providing good customer service. My job duties had not changed and I continued to perform them at a high level. I was also involved in a property system merge which was very visual to the federal

Exhibit __A__ p. __4__

Affiant's Initials _____

community and the Department of Commerce. This project was completed successfully and on time. To my knowledge there were no complaints and concerns about my work or work ethic in any of my performance elements. Mr. Williams did not inform me during the course of the year that he was dissatisfied with my work performance. Had he done so I would have taken steps to correct any deficiencies. I sincerely believe that Mr. Fanning had my performance rating lowered, threatened and harassed me with a RIF, imposed unreasonable deadlines, and created a hostile work environment for me because of my race and sex.

As corrective action, I in seeking the following:

1. Reassignment to another organization

2. I would like to have my leave reinstated that I was forced to use caused by work-related stress

3. I want my performance or for FY06 raised so that it is more reflective of my performance during the year

4. Performance bonus

5. Compensatory damages for the pain and suffering Mr. Fanning factions have caused

Affiant's Initials _J. S._

Exhibit _A_ p. _5_

I have read the above statement, consisting of 5 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
Signature

3/30/07
Date

_____
Investigator's Signature

# EXHIBIT B

# Position Description

AC# 511120060916                          **Preparation date:** 6/2/2006

**Validate:** NO

**Org:** OFFICE OF THE SECRETARY

**Div:** OFF ASST SEC FOR ADMIN

**Incumbent Name:** Jackson, Taprina

**Career Path:** ZA   **Series:** 0301   **Band** 3

**Title:** Program Management Specialist

**Function:**

   No specific function defined for this position.

**Principal Objective:**

   The incumbent will be responsible for providing comprehensive operational personal property management services for the Office of Secretary.

**Series Definition:**

   Performs or manages administrative work not classifiable in a more specific series. Requires analytical ability, judgment, discretion, and knowledge of a substantial body of administrative or program principles, concepts, policies, and objectives.

**General Duties and Responsibilities:**

   Exercises responsibility as an independent specialist for planning, coordinating, and performing a recognized administrative or management function, and for analyzing and advising on changes in policies and resources that affect program objectives, receiving supervisory direction on policies, objectives, and results, and consulting with the supervisor on priorities and unusual situations; or serves as principal administrative officer for a large and complex division or office.

**Knowledge, Skills, and Abilities:**

   Full-performance-level knowledge of the principles, practices, and procedures of a field of administration or management; comprehensive and detailed knowledge and understanding of a recognized organizational administrative or management function, including policies, precedents, and procedures; ability to apply this knowledge to achieve administrative or program objectives; ability to identify problems, propose solutions, and defend recommendations, and ability to write and communicate clear guidelines.

**Incumbent's Supervisory Responsibilities:**

   Employee does not meet supervisor titling criteria.

**Specialty Description:**

Exhibit _B_ p. _1_

050133 Property Management
Performs personal property management activities including ensuring the integrity of the data contained in the Personal Property Management System in compliance with the Chief Financial Officer Act.  Performs real property management activities by administering policies & procedures.  Requires knowledge of personal & real property management policies & procedures.

200110 Property Management
Accounts for all types of equipment, material, and property furnished to the Government; ensures accountability, inventory, utilization, and disposal of property; conducts inventories and utilization surveys; assists in resolving problems; oversees maintenance of an automated system of detailed quantitative property records. Requires a through knowledge of one or more elements or parts of a supply system, and supply methods, policies, or procedures.

**Position-Specific Key Phrases:**

Knowledge of personal property laws and regulations.

**Position Requirements:**

There are no special requirements for this position.

**Position Sensitivity:**

This is a Low Risk position.

EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAPRINA JACKSON, )<br><br>Plaintiff, )<br><br>v. )<br><br>CARLOS M. GUTIERREZ, Secretary )<br>U.S. Department of Commerce, *et al.* )<br><br>Defendants. )<br>_____ ) | Civil Action No.: 1:08-cv-01048 |

## DECLARATION OF FRED E. FANNING

I, Fred E. Fanning, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following are true and based on my personal knowledge:

1.    I am over the age of 18 and am fully competent to make this declaration.

2.    I am the Director for Administrative Services, Office of the Secretary, in the United States Department of Commerce ("Agency") and have been named as a Defendant in the above-captioned matter.

3.    My primary duties include the direction of over ten (10) nation-wide programs that include real and personal property oversight; environmental management and energy conservation; mail, printing and graphics coordination; travel and fleet management; and the supervision of all aspects of the Herbert C. Hoover Building located at 1401 Constitution Avenue, NW, Washington, D.C. 20230. Furthermore, specific to the above-captioned matter, I am responsible for oversight of the Office of Administrative Services ("OAS") and the Office of Administrative

Operations ("OAO"), in which Plaintiff Taprina Jackson ("Plaintiff") was employed during the period of time relevant to her Complaint.

4.      As Director for Administrative Services, I established a baseline performance rating score of 80, which employees had to meet in order to be considered for any accompanying compensation increase. However, such a score did not automatically entitle an employee to a compensation increase. An employee's supervisor had to request such an increase, and even then, the granting of any such request was discretionary.

5.      Through my position, I am familiar with Plaintiff's employment with the Agency, and the administrative Equal Employment Opportunity ("EEO") activities in which she has engaged concerning the facts alleged in the above-captioned matter.

6.      I have been asked to provide certain information concerning Plaintiff's employment with the Agency during the time period referenced in her Complaint.

7.      Plaintiff was employed by the Agency with OAS as a Program Management Specialist, ZA-301-III, in the Information Management Division ("IMD") from March 20, 2005, to May 13, 2007.

8.      In May 2007, IMD (including Plaintiff), was reformed in the OAO, so that the Full-Time Equivalents ("FTEs") and functions of the Information Technology Branch from the Office of Management Support Services were combined with the Executive Driver Services and FTEs from the Personal Property Management Division ("PPMD").

9.  Plaintiff was reassigned from the PPMD in OAO to the Office of Real Estate Policy and Major Programs on May 13, 2007.

10. From May 13, 2007, to July 1, 2007, I directly supervised Plaintiff only because the supervisor position responsible for oversight of her job was vacant and in the process of being filled.

11. From January 7, 2008, to April 28, 2008, Plaintiff was voluntarily detailed to the National Oceanic and Atmospheric Administration in order to gain hands-on experience and further training in the software utilized for GPS/GIS location of Agency facilities in cases of emergency.

12. Jennifer Jessup was initially appointed as Property Management Officer for the Office of the Secretary on September 25, 2006.  After the posting of a competitive vacancy announcement for the position of Chief of PPMD in OAO in July 2007, Ms. Jessup was selected for that position, effective October 11, 2007.

Further declarant sayeth not.


Fred E. Fanning                              August 15, 2008
Director for Administrative Services         Date
Office of the Secretary
United States Department of Commerce


3

EXHIBIT D

Taprina Jackson                                    Case No.
                        v.
United States Department of Commerce               06-51-00195

I, Fred Fanning, SES, Director for Administrative Services, Office of the Secretary, United States Department of Commerce, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to answer the complaint of discrimination filed by Taprina Jackson.

For the record I am a Caucasian male.

I have been advised that I am the official alleged to be responsible for the action giving rise to this complaint and I understand the allegations by Ms. Jackson.

I have occupied my current position since March 27, 2007; however, I was acting in the position from July 5, 2006 through March 26, 2007. As the Director for Administrative Services I am Ms. Jackson's fourth level supervisor. At no time have I discriminated against her on the basis of race or sex. I had absolutely no input into the performance rating given to her for FY06. Mr. Zackery Williams was Ms. Jackson's rating official, Rhonda Jackson was her higher level supervisor, and Doug Elznic, Acting Deputy Director, OAS, was the pay pool manager. At no time did I tell Mr. Williams, Ms Jackson, or Mr. Elznic what rating score to give to Ms. Jackson. As for the other three issues complained about by Ms. Jackson, none of the examples she gave as harassment were situations directed at her. The following is my response to Ms. Jackson's complaint of discrimination.

Shortly after becoming Acting Director of OAS news reports identified the Department of Commerce as being one of many federal agencies that had a number of missing laptop computers. In fact, the Department was listed as having over 1,000

Page 1 of 4 pages            Exhibit_ D  p. /            Affiant's Initials

missing, lost, or stolen laptop computers, some of which had personally identifiable information. Most of these computers had been issued to the Bureau of the Census. In response to a Congressional inquiry the Information Management Division (IMD), who was responsible in part for property management was tasked with the responsibility of accounting for the missing laptop computers. In addition, the staff of IMD which included Taprina Jackson was also asked to provide information on other property management issues.

All DOC Bureau's including the Office of the Secretary were directed to conduct a 100% physical inventory of all laptops and report certified results to me by close of business in August 30, 2006. About a week later the IMD was asked to provide the Department Forms Reconciliation to me by September 8, 2006. So in total the IMD was asked to perform three suspenses, a 100% laptop inventory for the Department, a 100% laptop inventory for the Office of the Secretary, and the Department Forms Reconciliation.

The fact is the IMD failed to meet the suspenses on all three occasions. I had warned the IMD staff in advance that if they did not make the suspense they would work late and if need be work into the weekend.

In failing to meet the suspense I told the IMD staff that it appeared to me that some of them did not take their job seriously, having been observed leaving work on time even after I told them they would work late and over time if necessary. I told the staff that they left me with no other choice than to recommend to Otto Wolff that he approve NOAA as the Executive Agent for personal property management and that all full-time

positions in IMD responsible for property management be cancelled and that a RIF be conducted.

Based on the fact that the IMD was unable to provide an accurate laptop accountability, not to mention their inability to meet the other suspenses, I made the decision to remove property management duties from them. I formulated a four member team, including three staff from IMD to straighten out the property management duties. The staff members of the IMD assigned to the four member team, the tiger team, included Jennifer Jessup (c white female), Jeanette Darden (black female), Jeri Coleman (black male), and Gina Basurto-Bass (black female).

Thus the issues Ms. Jackson is complaining about were not issues directed against her alone, but the entire IMD staff. The task I gave of providing a 100 percent laptop inventory for OS, a 100 percent laptop inventory for DOC, and the Department Forms Reconciliation were tasks I felt could be accomplished by the given deadlines. The fact is Ms. Jackson was not the only person given these assignments. The project went to the entire staff, male/female, and black/white. The same holds true for my desire to have the IMD staff work overtime to accomplish this mission. My threat of conducting a RIF was directed at the entire IMD staff, not just Ms. Jackson.

Regarding Ms. Jackson's contention that her duties were reassigned to another co-worker, since I am not really sure what her duties were I not sure how respond to this charge. If she is referring to property management duties, this is a true statement. I explained why I took away property management duties from the IMD staff, including Ms. Jackson. She was not singled out for differential treatment.

As for my insistence that the IMD staff work overtime to provide an accurate property accounting for the Office of the Secretary and the Department; Ms. Jackson was one of the staff I talked about earlier when I said that a number people did not take their job seriously and left work on time the day after being told that they would have to work late. I directed all employees of OAS to work the same evening and weekend nearly 96 people in all.

Ms. Jackson never worked late or over the weekend to accomplish the project. Ms. Jackson told management that she could not work overtime due to child care issues and was allowed to skip the overtime. Ms. Jackson was not forced to work overtime and certainly was not disciplined for refusing to work overtime.

In summary, at no time did I discriminate against Ms. Jackson based on her race or sex regarding any of the issues identified in her complaint. Regarding the issue of reprisal, I had no knowledge of her EEO complaint when her rating was issued.

I have read the above statement, consisting of 5 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
Signature

_____
April 6, 2007
Date

_____
Investigator's Signature

EXHIBIT E

| Taprina Jackson | Case No. |
|---|---|
| v. | |
| United States Department of Commerce | 06-51-00195 |

I, Rhonda Jackson, ZA-V, Associate Director, Office of Administrative Operations, Office of the Secretary, United States Department of Commerce, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to answer the complaint of discrimination filed by Taprina Jackson.

For the record I am an African-American female.

I have been advised that I am the official alleged to be responsible for the action giving rise to this complaint and I understand the allegations by Ms. Jackson.

I have been in my current position since August 2006. Prior to becoming Associate Director, OAO, I was a Special Assistant to the previous [Associate] Director of OAO, Lutricia Jackson. As Associate Director of OAO, I am Ms. Taprina Jackson's second level supervisor. I do not believe Ms. Jackson has been discriminated on the basis of race or sex regarding any aspect of her employment since I became Associate Director.

Regarding Ms. Jackson's allegation that she has been given tasks and deadlines which are unreasonable to meet; Ms. Jackson has not been singled out for differential treatment. Toward the end of FY06, problems began to surface around the issue of accountability for personal property at the Department of Commerce. Specifically, the Department of Commerce was identified in news reports as one of the federal agencies that had a number of missing laptop computers. It was reported that over 1000 laptop computers, mostly at the Bureau of the Census, were lost, stolen, or missing. As a result,

Page 1 of 5 pages

Affiant's Initials _RJ_

Exhibit _E_ p. _1_

the Information Management Division (IMD) was tasked with completing several tasks with respect to personal property. These tasks included: the Office of the Secretary 100-percent laptop inventory due on September 1, 2006;  a Department-wide 100-percent laptop inventory due September 8, 2006, and the Department Forms Reconciliation due September 8, 2006. These three tasks were due by close of business on those days.

Ms. Jackson was one of several employees in the Information Management Division assigned to this task. All employees in the Division, male and female, and of various ethnic groups were tasked with working these projects. Thus, Ms. Jackson was not singled out and given differential treatment. I too worked on these assignments as did other OAS management and staff personnel – to include the OAS Acting Director and Deputy Director.

Concerning Ms. Jackson's allegation that her duties were reassigned to another co-worker; I really cannot address this issue per se. The reason being, I am not exactly sure what her duties were during FY06. What did happen was, based on the Information Management Division's inability to account for and reconcile personal property in the Office of the Secretary, Mr. Fanning made the decision to assign personal property management duties to a team of five employees, identified as the Tiger Team. Thus, if Ms. Jackson is referring to personal property management duties, she is correct in that those duties were assigned to the Tiger Team. However, Ms. Jackson was not the only person impacted by this decision:  the property duties of several IMD employees were reassigned.

Ms. Jackson has been given duties for FY 07 which, I believe, are in line with her job title and grade. Ms. Jackson is expected to assist with Fleet Management duties, work

Affiant's Initials _PHJ_

on the Secretary's gift program, was trained as a Property Accountability Officer and performs other duties as assigned. The only thing that has changed in IMD, for the time being, is that property management duties are being done by the Tiger Team which reports directly to me.

Concerning the allegation that management insisted that she work callback overtime and threatened her with a RIF to encourage her to do so; I believe is unfounded. Mr. Fanning told everyone in IMD that they needed to meet the property accountability suspense dates. Everyone in the Division, not just Ms. Jackson, was told that they would be expected to work late Friday evening, Saturday and Sunday, if necessary, to complete the project. However, people were excused for religious or child care issues. As I recall, Ms. Jackson did not work overtime that weekend nor was she RIFed as a result.

Finally, regarding Ms. Jackson's FY06 rating; I never told Mr. Williams what score to give Ms. Jackson. I received an email from Mr. Williams dated October 20, 2006 in which he proposed the rating scores for his staff. Mr. Williams proposed a rating score of 59 for Ms. Jackson. I agreed with the proposed rating because I knew that, according to Mr. Williams, he had some performance issues with Ms. Jackson. Ms. Jackson worked directly for Mr. Williams, he knew more of her quality of work than I; therefore, I had no reason to challenge his proposed score.

Regarding Mr. William's contention that his proposed rating of 59 was a mistake and that he meant to score her 81, I do not recall ever having a conversation with him in which he indicated the score was a mistake and should have been 81. When looking at OAS scores as a whole, Mr. Elznic, Pay-pool manager remarked that the 59 seemed low

Affiant's Initials

Exhibit  E  p. 3

and suggested the score 61 for Ms. Jackson. I concurred with Mr. Elznic's decision to raise the score to 61.

In summary, the final rating score given to Ms. Jackson is very close to the rating proposed by Mr. Williams. I have no recollection of Mr. Williams telling me that his original score of 59 was a mistake and should be raised to 81. Mr. Williams will have to address why he rated Ms. Jackson at a level of 59. At the time Mr. Williams suggested Ms. Jackson's rating I had no knowledge of Ms. Jackson's EEO activity.

Affiant's Initials *RHJ*

Exhibit  E  p. 4

FROM :                          FAX NO. :2025016633          Apr. 20 2007 07:15PM  P6

I have read the above statement, consisting of 5 pages, and I declare under penalty of
perjury that it is true and complete to the best of my knowledge and belief. I understand
that the information I have given is not to be considered confidential and that it may be
shown to the interested parties.

<u>Rhonda A. Jackson</u>
Signature

<u>4/20/07</u>
Date

<u>Jay R. ___</u>
Investigator's Signature

**Exhibit** E p. 5

Page 5 of 5 pages

Affiant's Initials _____

# EXHIBIT F

Taprina Jackson                                      Case No.
      v.
United States Department of Commerce                 06-51-00195

*DHC*

I, Douglas Elznick, Acting Deputy Director, SES, Office of Administrative Services, Office of the Secretary, United States Department of Commerce, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to answer the complaint of discrimination filed by Taprina Jackson.

For the record I am a Caucasian male.


     As Acting Deputy director and Pay pool manager, I was the deciding official for any employee in the OAS who wanted to appeal their FY06 performance rating. Anybody who was dissatisfied was asked to supply me with any justification as to why their performance rating score should be raised. Everyone who provided a sound justification for raising their score did receive a higher performance score. I recall raising the scores for Zackery Williams, Director, Information Management Division, as well as for Wednesday Hughes, Office Automation Clerk, Joy Taylor, and Lalit Bajaj.

     Ms. Jackson e-mailed me on November 30, 2006 asking that I reconsider her rating for FY06. I in turn emailed Ms. Jackson instructing her to provide me with specific information as to why her rating should be changed. I gave Ms. Jackson 9 days to provide the information.

     Ms. Jackson never did provide me with any additional information to support a higher rating and as a result I was compelled to uphold the rating. Neither Ms. Jackson's race nor sex was a factor in my decision. At the time Ms. Jackson made the request I do

not believe I was aware of her EEO complaint activity. Regardless even if I had such knowledge, it would not have been a factor in my decision to uphold the rating.

Regarding Mr. Williams' contention that his proposed score of 59 for Ms. Jackson was an error and he wanted it to be 81, this is the first I ever heard of it. I was first notified by Rhonda Jackson that Mr. Williams proposed a score of 59 for Taprina Jackson. I do not recall any conversation where it was stated that Ms. Jackson's score was a mistake and it should be 81. When looking at the proposed score both Rhonda Jackson and I felt the score should be slightly raised to 61. Thus, the final score of 61 which I gave her was in fact higher than Mr. Williams' proposed score. Mr. Williams will have to address why he felt Ms. Jackson deserved a ~~81~~ 59, however at no time did I instruct Mr. Williams to lower Ms. Jackson's final rating score.

I have read the above statement, consisting of 3 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
Signature

9 April, 2007
_____
Date

_____
Investigator's Signature

Exhibit _F_ p. _3_

Affiant's Initials _DFE_

EXHIBIT G

Taprina Jackson                                          Case No.
                    v.
United States Department of Commerce                     06-51-00195

I, Zackary Williams, Chief, ZA-301-IV, Information management Division, Office of Administrative Services, Office of the Secretary, United States Department of Commerce, hereby solemnly swear or affirm:

I am submitting this affidavit in response to questions by Investigator J.F. Deasel, to answer the complaint of discrimination filed by Taprina Jackson.

For the record I an African American male.

        I have been in my current position of a little over two years. As Division Chief, I am Ms. Jackson's immediate supervisor. I believe Ms. Jackson as well as I have been discriminated against on the basis of our race by Mr. Fred Fanning. The former Director of OAS, Denise Wells hired me as the Team Leader for the Property and Fleet Branch. After a few months, I was assigned as the Division Chief of the Information and Management Division. I and other members of my Division including Ms. Jackson performed the duties of our job without any problems until Mr. Fanning became Acting Director of OAS in August 2006. From that point on myself and employees in my Division have been harassed and subjected to a hostile work environment by Mr. Fanning.

        As a ZA-III Program Management Specialist one of Ms. Jackson's primary duties was to support OAS in the management and oversight of personal property management programs. In addition, Ms. Jackson served as the Property Accountability Officer for the Office of the Secretary.

Page 1 of 4 pages                                Affiant's Initials _____

Exhibit  G  p. 1

I personally thought that Ms. Jackson performed these duties in a satisfactory manner. For FY 05 I gave Ms. Jackson a high-level rating which was 81 out of 100. But while there were obviously some problems with the Personal Property Management System, I had no major concerns about any aspect of her job.

Around the time Mr. Fanning became Acting Director of OAS an issue arose in front of Congress regarding missing laptop computers in various government agencies. The Department of Commerce was identified as one of the worst offenders. Specifically, the Census Bureau had a large number of missing computers. As a result, Mr. Fanning held the Information Management Division personally responsible for the missing laptop computers. Mr. Fanning decided to take three employees from my Division. Jennifer Jessup (white), Jeanette Darden (black), and Jeri Coleman (black), all of whom were rather new and formed what he referred to as the Tiger Team. Ms. Jessup the only white employee was in charge of the team. Mr. Fanning decided to assign the Personal Property Management function, which had been performed by my Division to the Tiger Team. Thus, Ms. Jackson is accurate in stating that some of their job duties were assigned to another employee, Ms. Jessup.

Mr. Fanning did order my Division to work overtime to complete the inventory of laptop computers within the department. Mr. Fanning wanted all employees to work on Friday evening until 9:00 p.m., from 8:30 a.m. to 9:00 p.m. on Saturday, and 8:30 a.m. until 3:00 p.m. on Sunday. I thought the task and the deadline was an unreasonable. There was no way a complete inventory could be completed during that timeframe. Thus, I would agree with Ms. Jackson's contention that both the task and the deadline were

Page 2 of 4 pages

Affiant's Initials ____

Exhibit  G  p. 2

unreasonable. It should be noted that Ms. Jackson did not work the overtime and nothing adversely happened to her.

At one point, Mr. Fanning did threaten to RIF my division. In an e-mail to my Division Mr. Fanning stated that on three occasions we failed to meet the deadlines for completing assignments. He stated that we failed to complete the OS 100% laptop inventory due September 11, 2006, the 100% department laptop inventory due on December 8, 2006, and the Department forms reconciliation due September 8, 2006. Mr. Fanning complained that several staff members left work on time Friday September 8, 2006 after he sent email telling us to work late on Friday in order to complete the inventory. The results of the inventory had been turned in. Mr. Fanning said that my staff did not take their job seriously and that he would recommend to Otto Wolff that NOAA would take over the Property Manager function and he would conduct a RIF in my Division.

Regarding Ms. Jackson's performance rating for FY06; I originally rated her at a higher level than the score she received. I originally rated a score of 79. I was directed by my Supervisor Rhonda Jackson and the pay pool manager in Acting Deputy Director of OAS, Doug Elznic, to lower the rating score for not only Ms. Jackson, but for Joy Taylor, Eston Lewis and Wednesday Hughes. I told Rhonda Jackson that I disagreed with the idea of lowering their rating but I did what I was told to do. I really do not know why their ratings were lowered. Ms. Jackson will have to address that issue.

Page 3 of 4 pages

Affiant's Initials _____

Exhibit _G_ p. _3_

I have read the above statement, consisting of 4 pages, and I declare under penalty of perjury that it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
Signature

_____
Date
Investigator's Signature

Affiant's Initials

Exhibit  G  p. 4

EXHIBIT H

Contact Us

# SafeBoot - Mobile Data Security

- Home
- Products
- Support
- Partners
- Events
- Press Room
- About Us

- 
  - Press Releases
    - 2007
    - 2006
    - 2005
  - Security Spotlight
- 

**Census Bureau loses hundreds of laptops**

...mber 21, 2006 - WASHINGTON (AP) -- The Commerce Department has lost 1,137 laptop computers since 2001, most of them assigned to the Census Bureau, officials said Thursday night.

The Census Bureau, the main collector of information about Americans, lost 672 computers. Of those, 246 contained some personal data, the department said in a statement. However, no personal information from any of the missing computers has been known to have been improperly used, the department said.

...ead whole article at http://www.cnn.com/2006/US/09/21/missing.laptops.ap/index.html

---

**About SafeBoot:**

...he SafeBoot suite of mobile data security solutions protects data, devices and networks against the risks associated with loss, ...eft, and unauthorized access, anytime and anywhere. SafeBoot is the vendor-of-choice for leading global organizations and ...ovides them with powerful encryption and strong access control technologies that seamlessly integrate with existing ...rprise systems. SafeBoot's centralized management capabilities provide organizations with operational efficiency and ...g the lowest possible total-cost-of-ownership. For more information, visit www.safeboot.com.

**Media Contact for SafeBoot International:**

Exhibit __H__ p. __1__

 

**National Threat Level** |     **Monday, March 12, 2007**

E LEVATED



Domestic
Security
In Florida

Search SecureFlorida

[_____] GO

**ALERT ARCHIVES**
**Best Practices**
**How To**
**Cyber Risks**
**E-Mail Practices**
**Personal Security**
**Network Practices**
**Business Continuity**
**Legal Issues**
**Definitions**
**Reporting Crime**
**Related Sites**
**About Us**
**Contact Us**
**FAQ**
**RSS Feed**




Empowered by
Accrisoft Freedom

## News

### U.S. Commerce Dept. has lost 1,137 laptops since '01

**Published Friday, September 22, 2006**

**As many as 249 of them contained some personal data.**

The U.S. Commerce Department reported that 1,137 laptops have been lost or stolen since 2001, with 249 of them containing some degree of personal data.

The department couldn't determine whose data may have been on the machines, of which 672 belonged to the U.S. Census Bureau. It isn't aware of any data having been used improperly, it said Thursday.

Commerce Secretary Carlos M. Gutierrez said the agency plans to strengthen accountability standards, encrypt data on all department laptops and implement two-factor authentication.

1,137 lost laptops (ComputerWorld)

———————

Learn SecureFlorida.org's tips for protecting your laptop.

Send this page to a friend

*My Copyright*

**MEMBERS LOG-IN**

E-MAIL
[_____]

PASSWORD
[_____]

login

Forgot Your
Password?

Not a member?
**REGISTER HERE**







**Windows updates**
**Mac updates**

**Membership**
◦ Why Join?
◦ How to Participate
◦ Privacy Policy

———————

## Survey

How often do you check

Exhibit _H_ p. _2_



BNA, Inc.

# Privacy & Security Law

### REPORT

Volume 5 Number 38
September 25, 2006
SSN 1538–3431

Page 1321

# News

## Data Breaches
## Commerce Reveals Its Lost Laptop Record;
## Davis Seeks Government Breach Notice Law

In a Sept. 21 briefing for Rep. Tom Davis (R-Va.), the Commerce Department revealed that 1,137 laptop computers have been lost, stolen or misplaced by the department since 2001, Davis said in a Sept. 22 press statement.

Commerce Secretary Carlos M. Guiterrez also reported during the briefing that the department cannot locate some 16 hand-held portable computers and 46 universal serial bus (USB) data memory storage devices, Davis said.

Davis, who is the chairman of the House Government Reform Committee, said that Guiterrez told him that 672 of the missing laptops belonged to the Census Bureau and that of those, 246 contained personally identifiable information of individuals.

Davis said the Commerce Department is continuing to investigate the matter and at this point it is not clear exactly how many computers have been lost and which contained personal information.

### House Government Reform Inquiry

Davis said the Commerce Department's briefing came in response to a July letter he and House Government Affairs Committee Ranking Minority Member Henry A. Waxman (D-Calif.) sent to all federal cabinet agencies, the Office of Personnel Management, and the Social Security Administration seeking information on data breaches that may have occurred (5 PVLR 987, 07/17/06 ).

The letter asked the agencies to give the committee "details about incidents involving the loss or compromise of any sensitive personal information held by the federal government or a contractor that has occurred in your Department since January 1, 2003."

The letter asked the agencies to provide the date of each incident, the information lost or compromised, and the number of persons affected. Agencies were also asked to briefly describe the circumstances surrounding incidents and to provide documentation on any remedial actions taken in the aftermath of any breach, including notification of individuals.

Davis, whose committee oversees the implementation of the Federal Information Security Management Act (FISMA), was prompted to seek the laptop information from federal agencies by the revelation earlier this year of a massive data breach incident at the Veterans Affairs Department.

On May 22, the VA reported that personal information on 26.5 million active and retired military personnel was stolen from the house of a VA employee who brought the data home without authorization (5 PVLR 755, 5/29/06). The data was later recovered and appeared uncompromised, the VA said (5 PVLR 933, 7/3/06 ). A VA Office of Inspector General report released July 11 found that managers failed to prioritize risks and cybersecurity personnel "acted with indifference and little sense of urgency."

Davis said the Government Reform Committee continues to receive responses to its letter from agencies. He said the committee will in the near future release a report of its overall findings.

Exhibit H p. 3

"We would not have learned of this unless we asked, and I'm surprised agencies don't have this information at hand. That shows we still have a long way to go on agency data security," Davis said.

### Call for Breach Notice Law

"Perhaps the most shocking thing here is that the public might not have ever known of these breaches, and their scope, if we hadn't specifically asked for the information," Davis said in the press statement. He noted that "there is no policy, procedure, or standard for notifying citizens when sensitive personal information held by a federal agency is compromised."

Davis said that he plans to immediately pursue legislation to require that federal agencies facing the loss of data notify "everyone potentially at risk."

Davis July 19 introduced the Federal Agency Data Breach Notification Act (H.R. 5838), which would amend FISMA to require the Office of Management and Budget to establish data breach policies, procedures, and standards to mandate that federal agencies give timely notice to individuals whose sensitive personal information is breached.

The breach notice requirements of the Davis measure were folded into the "Veterans Identity and Credit Security Act of 2006" (H.R. 5835), which was approved by the House Veterans Affairs Committee July 20 (5 PVLR 1017, 7/24/06 ).

Senate Democratic Leader Harry Reid (D-Nev.) in a Sept. 22 press statement accused the Bush administration of "incompetence" in protecting personal information held by the government.

Reid acknowledged the recent appointment of an assistant secretary for cyber security and telecommunications at the Homeland Security Department (*see related report in this issue* ). However, he emphasized that the position was filled only after a year-long vacancy and said "He has a lot of work ahead of him."

*By Donald G. Aplin*

Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1538-3431
Copyright © 2006, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form,
without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V

⇐ Back    Search All Issues    Contents

Exhibit _H_ p. _4_

 Net Where Technology Means Business 
PRINT

# Commerce Department counts 1,100 missing laptops

09 / 22 / 06  |

**More than 1,100 Department of Commerce laptop computers were lost, stolen or missing in the last five years, and some contained personal data from the U.S. Census Bureau, the department said.**

Of the 30,000 or so laptops in the department's inventory, 1,137 were missing, and of these, 249 contained personally identifiable information, according to a statement on Thursday.

The department said it was "not aware of any data being improperly accessed or used" and noted that access passwords, complex database software and encryption technology limit the potential for misuse of such information.

However, a separate review found 297 cases since 2003 in which sensitive personal information was lost or compromised, involving 217 laptops, 15 handheld devices, 46 USB flash drives and documents or other materials, the statement said.

In June, the Department of Defense revealed that personal information on about 2.2 million active-duty, National Guard and Reserve troops was stolen from a government employee's house.

That followed the theft of data on 26.5 million U.S. military veterans, according to the Department of Veterans Affairs.

ZDNet | Copyright © 2006 CNET Networks, Inc. All Rights Reserved


PRINT

Exhibit _H_ p. _5_

Technology News Daily

RECENT NEWS UPDATED DAILY

# TECHNEWS

## Census Bureau Reported 672 Missing Laptops

Submitted by Technology News... on Mon, 2006-09-25 21:40.

The Department of Commerce has informed the public that information from its recent Department-wide reviews of missing, lost or stolen laptops and potential breaches of personal identity data. The Department continues its review and is not aware of any data being improperly accessed or used. The information gathered from the reviews indicates that the Census Bureau had the disproportionate share of missing equipment and data. The reviews were in response to broad, government-wide Congressional and public inquiries.

Based on the review in response to the public inquiry, the Department determined that within its 15 operating units for the years 2001 to the present, out of over 30,000 laptops within the Department's inventory over that time period, 1,137 were either lost, stolen or missing. Of these laptops, 249 contained personally identifiable information (PII), although access passwords, complex database software, systemic safeguards and/or encryption technology significantly limit the potential for misuse of data on the laptops.

A separate review in response to a request for information from the House Committee on Government Reform Chairman Tom Davis (R-VA) regarding the loss or compromise of any sensitive personal information from 2003 to the present found that there were 297 instances. These included: 217 laptops; 15 handheld devices; 46 thumbdrives; and the rest involved documents or other materials.

Most of the missing laptops were assigned to the Census Bureau, which during the last five years has used over 20,000 laptops. Every year, thousands of Census field representatives fan out around the country to compile survey data, using laptops in their work. Much of the field workforce is comprised of temporary, hourly employees paid to gather data door-to-door. Given the unique nature of the Census workforce and method of data collection, the Bureau has long had technological and procedural mechanisms in place that limit any potential breach of information.

Regarding the unique nature of the Census laptops, the Bureau indicated that they contained the following:

* Technological Protections:
o every Census laptop from 2001 on requires a password to access;
o systemic safeguards ensure that once a survey is completed, the data is automatically stored on a laptop and cannot be retrieved or accessed in the field, even by the Census field Representative; and
o each laptop contains information on an estimated 20-30 households, and rarely more than 100; Field offices report that typical laptops would contain zero-to-two incomplete surveys.
* Procedural Protections:
o the survey data is contained in complex database formats requiring specialized applications to access;
o each laptop contains survey data that is regularly transmitted at the end of each day, and such data is fully removed from the laptops at the end of each survey period; and
o since 2001, the Census Bureau has been adding encryption technology on a rolling basis for extra protection, and today, all new laptops have encryption protection.

# Make Your Donation Today

Help Rebuild Lives & Communities in Hurricane Affected States.

Public Service Ads by Google

Advertise on this site

Agency Data Breaches, Davis Introduces Legislation
Two FTC Laptop Computers Stolen
Two Navy Laptops Missing
iPhones More ...ble than PDAs and Laptops
The $100 laptops
External Hard Drive Missing, VA

### Software

Software

› HD Photo
› Opera Widgets
› Project Darkstar, Open Source Plans
› OpenGL ES 2.0 Specification Finalized
› Open Source Eclipse-Based Developer Tools
› Software Platform for Intelligent Computing
› VMware ACE 2 Enterprise Edition Public Beta
› EclipseCon 2007
› BREW, $1 Billion From Sales
› BBC and IBM Create Strategic Alliance

### Internet

› Internet Control and Monitoring, China
› W3C, HTML Activity
› Health Information Online
› Video Download Service, Amazon and TiVo
› Opera Widgets
› Internet Neutrality Study
› Identity Theft Up 50%
› Internet Pyramid Scheme, Final Opportunity For

Exhibit

are here: About> News & Issues >U.S. Gov Info / Resources

# About: <u>U.S. Gov Info / Resources</u>

## No Signs of ID Theft in Missing Census Laptops

From <u>Robert Longley</u>,
Your Guide to <u>U.S. Gov Info / Resources</u>.
FREE Newsletter. <u>Sign Up Now!</u>
The Commerce Department reports that the <u>Census Bureau has found no evidence</u> of any citizen's personal data stored on their 249 missing laptop computers being "improperly accessed or used." The Census Bureau's laptops were among the <u>1,138 laptops reported lost</u>, stolen or missing from the Commerce Department's total inventory of more than 30,000 units.

missing Commerce Department laptops were reported as part of a congressionally mandated, government-wide review of missing computer equipment.

As a result of its review, the Commerce Department has stated it would implement <u>measures to control future loss</u> of laptops and personal data, including increased employee accountability and disciplinary action.

At an estimated cost of $2,000 each, the laptop computers lost or stolen from the Commerce Department alone represent a cost to taxpayers of more than $2.2 million.

Also See:
<u>Another 1,138 Government Laptop PCs Missing</u>
<u>GAO Warns Commerce Computers at Risk (2001)</u>

Tuesday September 26, 2006 | <u>comments (0)</u>

<u>Email to a Friend</u> | <u>Submit to Digg</u>

< <u>US Eases Ban on Liquids on Airliners</u>

<u>Main</u>

<u>IRS Draws Plans to Address the 'Tax Gap'</u> >

### DIY Computing Projects

<u>Install a DVD or CD Burner</u><u>Create a Family Tree in PowerPoint</u><u>Install Memory in a Mac</u><u>Create an iMovie Slideshow</u><u>Brighten Pictures in Photoshop</u>

### What's Hot

<u>About Daylight Saving Time</u><u>Repealing D.C.'s Gun Laws</u><u>U.S. v. Miller, 307 U.S. 174 (1939)</u><u>Gun Control Laws - What Gives Congress t...</u><u>Mint Stops Striking Golden Dollars</u>

Advertisement

Exhibit ___H___ p. _7_

# PROCESSOR

**MarketPlace News**                     🖨 <u>Click To Print</u>

*General Information*
*September 29, 2006 • Vol.28 Issue 39*
*Page(s) 3 in print issue*

# MarketPlace News

## ■ HP's Hurd Knew About Probe

HP CEO Mark Hurd acknowledged that he knew about key phases of the probe into the leak of private information regarding the HP Board of Directors, and he attended meetings where the investigation was discussed. Hurd also received an email with a report detailing the source of the leaks and the investigative techniques involved, including pretexting, according to HP Attorney Michael Holston. However, Hurd says he did not read the email report. In related news, HP Chairman and board member Patricia Dunn will resign effective immediately and be replaced by Hurd, rather than waiting for the January board meeting as originally planned.

## ■ Toshiba Recalling Notebook Batteries

On the heels of last month's notebook battery recalls, when Dell recalled 4.1 million and Apple recalled 1.8 million malfunctioning batteries made by Sony, Toshiba has now announced that it is recalling 340,000 Sony laptop batteries. While last month's recalls involved batteries that could overheat and cause fires, Toshiba says these faulty Lithium-Ion batteries may cause the notebook to run out of power, but there have not been any related accidents or injuries reported. The recalled batteries are for notebook battery packs Toshiba manufactured in March, April, and May and affect the Satellite and Dynabook models.

## ■ Slow Ad Sales For Yahoo!

Yahoo! announced it has sold far less advertising than expected in recent weeks, particularly in the automobile and financial industries. Yahoo! CEO Terry S. Semel says advertising continues to grow in those industries, but it's not growing as quickly as Yahoo! had hoped. Semel says the company will still meet its financial goals but that profit and revenue will be on the low end of the forecast range. Yahoo! expects third-quarter revenue to be between $1.1 billion and $1.2 billion and profits to be between $445 million and $505 million.

## ■ Vista Release Won't Impact '07 PC Sales

The upcoming release of Windows Vista won't dramatically impact PC sales during 2007, according to Gartner. The analyst firm expects overall PC sales to be up 10.5% this year compared to 2005. Gartner Research Director George Shiffler says part of the reason is that many consumers are considering purchasing consumer electronics, rather than PCs, this holiday shopping season. With Vista not scheduled for availability until January at the earliest, there's not a lot of reason to purchase a new PC now, Shiffler says. He says the Vista marketing campaign will attract some users to purchase new computers, but Gartner doesn't see enough interest to result in a mass movement.

## ■ AT&T Plans To Reclaim 2,000 Jobs

Following an agreement between the CWA (Communications Workers of America) union

Exhibit _H_ p. _8_

and AT&T, AT&T has announced plans to bring 2,000 jobs back in-house. The jobs, which are technical support positions in which employees will aid customers in installing DSL, had previously been outsourced. AT&T plans to add the positions to its payroll by the end of 2008. This move is the second in recent months in which AT&T is bringing jobs back in-house; AT&T and CWA recently agreed on contracts for AT&T to hire 800 employees to be home-installation techs for the company's new U-verse video service.

### ■ Motorola To Purchase Symbol

Motorola has announced plans to buy Symbol Technologies, a company specializing in wireless mobile devices, in a deal worth $3.9 billion and slated to be complete later this year or early next year. After the sale, Symbol will be considered a subsidiary of Motorola, and its line of business-related devices, such as handheld computers that have RFID capabilities or barcode scanners, will fit well with Motorola's lines of business devices. Before the acquisition announcement, rumors were circulating that Symbol was interested in finding a buyer. In 2004 the company came under fire when the Securities and Exchange Commission fined it $37 million after finding its accounting procedures were fraudulent.

### ■ Companies Protest Vista Bundling

Adobe Systems and Symantec have both voiced concerns over Microsoft's plans to bundle software with its new Vista operating system. Adobe has addressed EU regulators, saying that Microsoft should be prevented from including free software for reading and creating electronic documents. That free software would directly compete with software in Adobe's product line. Although Symantec has not addressed EU regulators, the company is sending two representatives to meet with journalists in Brussels, Belgium, regarding its concern about Vista and choices in security. Symantec fears that customers will be limited in their security choices, as well as the operability of its own products with Vista.

### ■ Cybersecurity Czar Named

The U.S. Department of Homeland Security has named Gregory Garcia as assistant secretary for cybersecurity and telecommunications. The announcement was made by Secretary of Homeland Security Michael Chertoff, who had announced plans in July 2005 to create the position. The department has received criticism from those who believe it is not ready to deal with an attack on the country's IT infrastructure. Garcia was previously vice president for information security policy and programs at the Information Technology Association of America.

### ■ Hardware Spending Down

Hardware spending is down 1.3% this year but should recover and could increase as much as 4.3% next year, according to GCR Custom Research. Overall IT spending is up 6.2% this year and is also expected to increase next year. GCR research shows that spending on PDAs/handhelds, enterprise mobile phones, and tablet PCs had double-digit growth this year, with similar expectations for next year. Spending on servers, however, is expected to drop as average selling prices fall and enterprises increasingly utilize virtualization technologies.

### ■ Vista's Security "Scary"

The CTO of Cisco Systems' Security Technology Group, Bob Gleichauf, says he has concerns that problems could arise from integrating Microsoft's new Vista operating system into a complex IT infrastructure. At the Gartner Security Summit held in London last week, Gleichauf said, "Parts of Vista scare me. Anything with that level of systems complexity will have new threats, as well as bringing new solutions. It's always a struggle in security, trying to build for what you don't know." Although the new OS may hold the answers to some security problems, Gleichauf says, it may also be the cause of others.

### ■ Commerce Department Lost Laptops

Exhibit __H__ p. __9__

Since 2001, 1,137 laptops have been lost or stolen from the U.S. Commerce Department, according to a department review that looked at 15 government agencies that use about 30,000 notebooks. Of the 1,137 missing, 249 are believed to hold personal, confidential information of some sort. 672 were lost or stolen from the Census Bureau, which says its census data-gathering laptops often hold personal information on fewer than 100 households. In addition, the Census Bureau also reported 15 handheld computers lost or stolen. Following this review, the Commerce Department's goals, according to Commerce Secretary Carlos M. Gutierrez, are to use encryption and two-factor authentication on all notebooks and to beef up accountability.

### ■ Novell Faces Possible Delisting

Novell received a default notice from Wells Fargo Bank on its $600 million business loan and a delisting notice from the Nasdaq. Both notices stem from the company's delayed filing of its quarterly earnings report. Because of an ongoing review of its past stock options, which could lead to accounting adjustments, Novell delayed filing its Form 10-Q. In order to remain listed on the stock exchange, companies must file periodic earnings reports with Nasdaq in a timely manner. Novell plans on appealing the delisting notice and requesting a hearing with a Nasdaq listing qualifications panel. Novell has 60 days to resolve the issue with Wells Fargo before any action is taken.

**View the chart that accompanies this article.**
(NOTE: These pages are PDF (Portable Document Format) files. You will need Adobe Acrobat to view these pages. **Download Adobe Acrobat Reader**)

Copyright © 2007 Sandhills Publishing Company U.S.A. All rights reserved.

Exhibit _H_ p. _10_

**PRIVACY TIMES/October 3, 2006**                                                         **Page 3**

"It is absolutely critical that there be a viable alternative to litigation," Platts said. Currently, if an agency denies a FOIA request, the petitioner "often has no option other than costly litigation in federal court," he said. The Administration Conference should be funded to fulfill that role, or lawmakers must find another entity to do the job, Platts said.

The amended House bill would require agencies to provide more details about time spent responding to FOIA requests, responsiveness to expedited review requests, and time spent on administrative appeals in annual reports. The bill directs the Office of Personnel Management, within a year, to submit a report to Congress examining: "whether changes to executive branch personnel policies could be made that would provide greater encouragement to all Federal employees to fulfill their duties under" the FOIA and Privacy Act."

The OPM report would also explore "enhancing the stature of officials administering" the Acts, and whether performance of compliance with the Acts should be included as a factor in personnel performance evaluations for any or all categories of Federal employees and officers. Finally, the study would examine whether an employment classification series for FOIA/Privacy Act officers should be established, and whether the highest level officials in particular agencies administering such sections should be paid at a rate of pay equal to or greater than a particular minimum rate. http://thomas.loc.gov/cgi-bin/query/D?c109:4:./temp/~c109fnqLYb::

## CENSUS LEADS RECENT FEDERAL
## LIST OF LAPTOP LOSERS

The Census Bureau's admission that it lost hundreds of laptop computers with personal information had prompted a key house lawmaker to demand more details about the problem and to hold oversight hearings in October.

U.S. Rep. Mike Turner (R-OH), chairman of a House subcommittee on federalism and the census, told the *Dayton Daily News* he wanted a full accounting and detailing of lost devices by Oct. 12.

The Census Bureau announced in September that since 2003, there were 297 instances of potentially compromised personal data. These included: 217 laptops; 15 handheld devices; 46 thumbdrives; and the rest involved documents or other materials. The acknowledgement came in response to queries by House Committee on Government Reform Chairman Tom Davis (R-VA) to 17 agencies, of which 10 thus far have responded.

The Commerce Dept., of which the Census is a component, stood out. Altogether, 1,137 laptops had been stolen, lost or otherwise vanished since 2001, mostly from the Census Bureau and the National Oceanic and Atmospheric Administration. Of these, 249 contained personally identifiable information, nearly all from the Census Bureau. All were password-protected, a low-level safeguard. Only 107 of the computers were fully encrypted. Some lost laptops contained such personal information as names, incomes and Social Security numbers.

Commerce Secretary Carlos Gutierrez insisted "the vulnerability for data misuse is low," adding that the census computers require passwords and much information was believed to be encrypted. "We know of no instances of personal information being improperly used," he said.

Exhibit _4_ p. _11_

Rep. Turner, however, said the Census Bureau has not investigated whether information has been compromised. "The Census Bureau needs to operate at a higher level of care," he said.

Gutierrez estimated that the disappearance of laptops from the Census Bureau could have compromised the personal information of about 6,200 households. The department was still trying to determine the extent of the problem, he said.

David Marin, staff director for the House Government Reform Committee, told the *Washington Post* that the failure of the remaining seven departments to respond to the queries could reflect their reluctance to reveal problems of similar magnitude.

## HP SCANDAL SHINES LIGHT ON CORPORATE 'PRETEXTING'

The unfolding Hewlett-Packard pretexting-investigation scandal is supporting the view that intrusive, controversial techniques may not be uncommon in corporate investigations.

Patricia R. Dunn, the disgraced HP Chairwoman who resigned because of the scandal, defended before Congress her decision to investigate boardroom leaks, restating her position that it was necessary to protect company trade secrets and confidential deliberations.

"I believe that these methods may be quite common, not just at Hewlett Packard, but at companies around the country," she said of corporate-sponsored investigations. "Every company of consequence has people who do detective-type work in order to ferret out the sources of nefarious activities." HP launched its effort to flush out who leaked boardroom secrets after a series of news stories appeared in early 2005, citing sources close to its board. Investigators' actions, which members of a House Energy and Commerce subcommittee compared to B-grade movie scripts, have spawned both State and Federal criminal probes.

The *Boston Globe* reported that some of nation's the largest banks were customers of a Florida firm shut down this year for pretexting, or lying, to get personal information such as phone records, the same practice that HP admitted to.

The Florida case, involving banks such as Wells Fargo and Citigroup, isn't the only one in which large companies have been connected to practices like pretexting, but it is one of the most significant examples . It came to light in February, when Florida Attorney General Charlie Crist sued a Tampa-area company called Global Information Group Inc., claiming it made thousands of calls impersonating customers of companies including Verizon Communications Inc., tricking them into providing private call records . Earlier this year the company's principals agreed to pay $250,000 to settle the case, and to cease any pretexting activities. The deceit included impersonating a customer or employee, the case states. Verizon alone got more than 5,100 calls over a month from one Tampa-area phone number, and several other phone companies got thousands of calls. Global Information didn't admit to wrongdoing, and its attorney did not return The Globe's messages for this article.

When Global Information also was invited this year to testify at hearings held by the House Energy and Commerce Committee. Global Information's president, Laurie Misner, declined to





Plan ahead with GTSI and Sun.
**Register for our March 29th Storage Consolidation seminar.**



HOME    MANAGEMENT    TECHNOLOGY    BUSINESS    POLICY    STATE/LOCAL    EVENTS    RESOURCE CENTER

SEARCH    ?  FCW and Industry [          ]    ?  Government [          ]

RESOURCE CENTER    FCW.COM STORY    Print | Email

White papers, case studies, vendor information, webinars

# Davis highlights problems of data leakers

## Commerce's 1,137 missing laptop PCs are symptomatic of lax policy enforcement

NEWS TOPICS

Business
CXOs
Columns
Columnists
Defense
E-Government
Enterprise Architecture
Funding
Homeland Security
Health IT
Integrators
IPv6
Network Infrastructure
Management
Procurement
Privacy
Policy
Program Management
Records Management
State and Local
Security
Smart Shoppers
Technology

BY **Wade-Hahn Chan**
Published on Oct. 9, 2006

The Commerce Department disclosed last month that it has lost more than 1,100 laptop PCs in the past five years, including 672 from the Census Bureau. Of the missing Census laptops, 246 contained personally identifiable information. Those lost laptops raise concerns about how well prepared the bureau will be to safeguard personal information on handheld computers during the 2010 census.

Census officials did not comment about the recently reported equipment and data losses beyond what Commerce officials said when Rep. Tom Davis (R-Va.) announced the losses in September. But lawmakers and Census officials clearly recognize the

**Related Links**

**Federal Agency Data Breach Notification Act of 2006**

**Security training no longer on the back burner** (Federal Computer Week, Oct. 2, 2006)

**Census director raises a red flag about the upcoming e-census** (Federal Computer Week, Sept. 14, 2006)
Find more related news in the **policy section.**

**FCW.com job search**

| Most Viewed | Most E-mailed |
| --- | --- |

Most viewed stories from the p

Agencies delaying move to N

GSA releases telework guide

Doan welcomes Waxman's c

Agencies must reform to me
challenges, GAO analyst say

Bill would put brakes on DTS

Most e-mailed stories from the

Agencies delaying move to N

EHR disconnect exacerbates

Privacy, funding doubts shu

Patient control of EHR data c
mixed reaction

Agencies must reform to me

Exhibit 4 - 12          3/12/2007



ework
Wireless

re Topics

SPECIAL REPORTS

FCW_COM DOWNLOAD

CURRENT PRINT ISSUE

SHOPPING

**Subscribe Now!**

**Table of Contents**
**FCW.com Download**



GOV HEALTH IT

Government Health IT

Medical
mishaps

**Catch up on the latest**
**news and read the**
**current issue.**

FCW BLOGS

risks of using handheld computers for
the upcoming decennial census.

Census officials are taking precautions
against personal data loss by designing
a data-collection system that minimizes
the time that handheld wireless PCs
store, said Warren Suss, president
of Suss Consulting. Census has made
strides to ensure that personal data
leakage won't happen during the 2010
census.

The bureau plans to keep most
personal data off the devices by
automatically transmitting encrypted
information via a secure private
network to a central database
immediately after census takers collect
it.

"That will minimize the risk in terms of
requiring extensive data to be
maintained on laptops in the field,"
Suss said. "We should be in better
shape for the next census than we are
now."

Commerce officials downplayed the potentially harmful consequences of the
recent equipment losses that Davis cited by saying that factors such as
password protection and, in some cases, encryption technology would limit
any potential misuse of data that was on the missing equipment.

"All of the equipment that was lost or stolen contained protections to prevent
a breach of personal information, and we are moving to institute better
management, accountability, inventory controls, 100 percent encryption and
improved training," said Commerce Secretary Carlos Gutierrez, in a recent
public statement.

However, Gutierrez's comments offered little reassurance to security experts
such as Ted Julian, vice president of business strategy at Application
Security. "If the beginning and the end of your strategy is securing laptops,
you're doing a great job at reacting to the news at hand, but you're arguably
missing a huge swath of the data security problem," he said.

Julian said agencies should only store sensitive personal data in a secure
central location where people cannot remotely access it. The more
decentralized the data, the more problems agencies will have with security,
he said.

Davis expressed his lack of confidence that the government could keep
sensitive personal information safe. "The American people deserve better
from their government," he said.

Suss, however, said information security problems will diminish as the
government adopts more network-centric policies for managing data. "The
long-term solution is going to have to rely on maintaining more information in
the network rather than on individual devices," Suss said. "It's an important
direction for the government to take, but it's going to take time."

**Hot Topics**
Find events presentations,
source documents and other
online resources on the
**Homeland Security Hot**
**Topic page.**

**Vendor Solutions**
Find white papers, vendor
presentations and other
technology solutions in the
Government IT Resource
Center. **Access now**
(registration required).

**Newsletters**
Subscribe to the **Security**
**newsletter** to receive all the
latest in news, features and
online resources.

challenges, GAO analyst say

**One-time registration** to Gov
Center.

**Focus on FISMA:**
Featured White Paper
**"9 Steps to FIMSA Complian**

Webcast
**Improve FISMA Scores**

**Featured Vendors:**
Ciena
MetaCarta

ADVERTISEMENT



BELA
www.belar



BELA
www.belar

Exhibit H p. 14

FCW.com News - Davis highlights problems of data leakers



Spice up your day with insight and observations about the IT community.

**VENDOR SOLUTIONS**

**Contract Guides:**

The Big Five Army
Contract Guide
COMMITS NexGen: 2006
PEO EIS 2006 Guidebook

ELSG Air Force Guide
DHS Eagle Contract
Guide

**ch Watch Reports:**

Networking Services
Business Process
Management
Teleworking
E-Authentication
Storage

**THINK Series:**

Assured Optical
Networks - Ciena
Search for the Enterprise
– BearingPoint
Program Feedback
Management - SPSS
Endpoint Security -
SecureWave
Storage Network
Extension - Ciena
Wireless Security-RIM

Transforming

Transforming the Future -
Qwest

Salute

entric

Smart Solutions:

Optical Networking -

### Davis wins House support for data breach notification

Rep. Tom Davis (R-Va.) drafted the Federal Agency Data Breach Notification Act in July to require agencies to quickly notify individuals when a data loss might have compromised their sensitive personal information. The measure authorizes federal chief information officers to enforce the law.

After learning about the Commerce Department's loss of 1,137 laptop PCs, Davis inserted his breach notification bill into the Veterans Identity and Credit Security Act of 2006. The breach notification bill would amend the Federal Information Security Management Act of 2002.

"If we're going to ask and — sometimes demand — information from the public, we owe them a better way of knowing when that information goes missing," Davis said in a recent speech on the House floor.

The bill Davis sponsored passed the House last month and moved to the Senate.



TAKE BACK CONTROL OF YOUR AGENCY'S SECURITY
GET A NO CHARGE SECURITY ASSESSMENT
▶▶▶ Click here to learn more

IBM

Get a free Subscription today!!

**Federal Computer Week**

RECEIVE 40 ISSUES
PRINT OR DIGITAL

| First Name | | State | SELECT ONE |
| Last Name | | Zip | |
| Title | | Email | |

SUBMIT

Exhibit H p. 15

'eds get a D plus for data security



Activate your FREE membership today | Log-in

Security

TechTarget Security Media

MAGAZINE    CONFERENCES    WEB SITES

HOME | NEWS | TOPICS | ITKNOWLEDGE EXCHANGE | TIPS | ASK THE EXPERTS | WEBCASTS | WHITE PAPERS | SECURITY IT DOWNLOADS | CAREERS

SEARCH this site and the web [        ]  SEARCH  ADVANCED SEARCH  |  SITE INDEX        Search Powered by

Stay secure with the world's most trusted source for unbiased security expertise. Get your free subscription to Information Security today!

Home > Information Security News > Feds get a D plus for data security

# Information Security News:

✉ EMAIL THIS   ⚙ LICENSING & REPRINTS

## Feds get a D plus for data security

By Bill Brenner, Senior News Writer
19 Oct 2006 | SearchSecurity.com



FEEDS: Security Wire Daily News

[RSS]  [+ Add to Google]

The U.S. Department of Veterans Affairs (VA) suffered months of bad headlines after computer equipment with sensitive data was stolen from the home of an agency employee last May, exposing millions of veterans and active duty personnel to possible identity fraud. But according to a new Congressional report, there's an epidemic of data security breaches across the federal government.

> You have CIOs and CISOs in government, but they don't necessarily have the authority to get things done.
> Paul Kurtz,
> executive director,
> Cybersecurity Industry
> Alliance

The House Committee on Government Reform gave the government a D-plus in its report (.pdf) after reviewing a long list of incidents in the various federal agencies.

In response to the report, the Cybersecurity Industry Alliance renewed its call for a federal data security law that forces government agencies to notify citizens when there's a data breach and gives government security officers greater authority to institute stronger controls.

"You have CIOs and CISOs in government, but they don't necessarily have the authority to get things done," said Paul Kurtz, executive director of the Cybersecurity Industry Alliance. "There needs to be a law that gives them greater ability to make something stick."

**The conclusions summarized**

ince the VA data breach, the report said, several other agencies have ... ledged security incidents, including the Social Security Administration, the . Revenue Service and the Department of Health and Human Services. ...icy responses to these data breaches varied considerably, the report said. For ...ample, some departments notified potentially affected individuals after a breach, ...hile others didn't.

Exhibit H p. 16

'eds get a D plus for data security

"...ite the volume of sensitive information held by agencies, there is no ...ement that the public be notified if their sensitive personal information is compromised," the report said.

Ov... the committee found:

*Data loss is a government-wide problem.* All 19 departments and agencies reported at least "one loss of personally identifiable information since January 2003."

*Agencies do not always know what has been lost.* In many cases, agencies don't know what information has been lost or how many individuals could be impacted, and agencies don't appear to be tracking all possible losses. For example, the Department of Justice reported that prior to the VA data breach, "the Department did not track the content of lost, stolen, or otherwise compromised devices."

*Physical security of data is essential.* Only a small number of the data breaches reported to the committee were caused by hackers breaking into computer systems online. The vast majority of data losses stemmed from physical thefts of portable computers, drives and disks, or unauthorized use of data by employees.

*Contractors are responsible for many of the reported breaches.* Federal agencies rely heavily on private-sector contractors for IT management services. Thus, many of the reported data breaches are the responsibility of contractors.

**A tale of two agencies**
The report offers a detailed look at individual agencies and the security breaches they reported to the committee. For example:

The Department of Agriculture confirmed eight security incidents since Jan. 1, 2003. On Feb. 24, 2005, for example, a system containing research data was ... romised by someone cracking a password or a user account and installing ...ng software.

The ...partment of Commerce confirmed 297 incidents since Jan. 1, 2003. In one example, 217 laptops housing sensitive personal information was lost, stolen or misplaced. The vast majority of these, 214, were Census computers. Another 46 incidents involved the loss of Census thumb drives containing sensitive personal information.

n another incident, the agency learned that a former employee had copied ensitive letters and a database of employee information. The documents contained medical information on 51 employees, including names, home addresses, description of issues, and employees' medical diagnoses and prognoses. The database included information about 883 cases involving current and former employees.

**ederal legislation a must**
he report said provisions in the Veterans Identity and Credit Security Act of 2006 ould give government CIOs greater authority to bolster security and force gencies to notify citizens when a data breach occurs. U.S. Rep. Tom Davis, a lepublican who represents Virginia's 11th Congressional district and is chairman of ie committee, authored the legislation. The House has passed it, but no action has een taken on the Senate side.

urtz said Davis' bill would force agencies to get serious about data security, but at any law must affect both the public and private sector.

he bill is a big step in the right direction and would force greater accountability in vernment agencies," he said. "But having it only affect government agencies ould be a half measure. Citizens need to know that their data is safe whether it's ... 'ands of the government or a retailer."
...r occurred while processing this directive]
.. - Digg This!  ⭐ Bookmark with Del.icio.us

SECURITY RELATED LINKS
  Ads by Google

**REFERENCE DESK** 

**Information Security Laws, Investigations and Ethics**

NEWS, TIPS & MORE
- Security researcher offers apology, plans to ... (ARTICLE)
- RFID privacy, security should start with ... (INTERVIEW)
- White House cybersecurity strategy running ... (OPINION)
- RSA Conference: Officials say DNS servers stood ... (ARTICLE)
➔ VIEW MORE

VENDOR CONTENT
- Steering Clear of Vendor Bribes (JOURNAL ARTICLE)



Start today with these white papers ➤    ca
                                         Transforming
                                         IT Management

SEE ALSO
- Related Topics:
  Information Security Laws, Investigations and Ethics
- Site Highlights:
  Free SOX Learning Guide
  Information Security mag

GET E-MAIL UPDATES
Submit your e-mail below to receive Security-related news, tech tips and more, delivered to your inbox.
☐ Security Management
E-mail: [Your E-mail Address]  [SUBMIT]
Not a member? We'll activate your FREE membership with your subscription.

Exhibit  H  p. 17



## IG flags Commerce security problems

**The department must improve its handling of sensitive data and revisit key systems previously certified as secure, according to the inspector general**

**BY Wade-Hahn Chan**
**Published on Dec. 19, 2006** Information security is the Commerce Department's no. 1 challenge in this fiscal year, according to its inspector general.

In its semiannual report to Congress for the six months ending Sept. 30, the IG cited the department's poor track record with regard to protecting the acy of personal data and its slow progress on certifying the security of its cal systems.

... privacy concerns stem from a late September study that found the department had lost 1,137 laptop computers and other mobile devices since 2001, 249 of which contained personally identifiable information (PII).

Under guidelines that the Office of Management and Budget issued, agencies must take several steps to protect personal data. To start, they should encrypt all sensitive data stored on mobile devices. They also must incorporate two kinds of authentication — such as passwords and fingerprints — to control remote access to systems with sensitive data. Finally, they should set up their systems to disconnect users who have been logged on for too long without any activity, and they should log all activity on those systems.

It was unclear whether Commerce had followed those guidelines, the IG reported.

"We found that in most cases bureaus could not demonstrate that the necessary steps have been taken to ensure that PII is adequately safeguarded," the report stated. "None of the system documentation reviewed indicated that PII was stored or processed, a step needed to determine the required safeguards."

The IG also criticized the department for the mixed results of its efforts to certify and accredit the security of important systems. Commerce officials appear to have made some progress, completing the process for 22 of its 28 systems by August 2006 — an increase from only five a year earlier.

In evaluating the certification and accreditation documentation, the IG found that only a third of the systems fully complied with the security standards that ational Institute of Standards and Technology set, and nine of the ining systems had serious deficiencies.

ADVERTISEMENT





Exhibit H p. 18

Laptop Losses and Phishing Fruit Salad

Tech Education

**Free White Paper: Address the Insider Threat**
Learn how to develop a comprehensive management system that virtually
eliminates the risk of an insider threat. Download the white paper today.

**Real-Time Enterprises for SMBs? Free Yankee Paper!**
Discover the real-time enterprise for mid-size businesses. See how it enables
operational efficiencies, dynamic customer relationships. Free report.

Syma

Three

Home | Bugtraq | Vulnerabilities | Mailing Lists | Jobs | Tools | Vista          Search:

PRINT   EMAIL   COMMENT                    (page 1 of 3 ) next

**News**
**Infocus**
⤤ Foundations
⤤ Microsoft
⤤ Unix
⤤ IDS
⤤ Incidents
⤤ Virus
⤤ Pen-Test
⤤ Firewalls
**Focus On: Vista**
**Columnists**
**Mailing Lists**
⤤ Newsletters
⤤ Bugtraq
⤤ Focus on IDS
⤤ Focus on Linux
⤤ cus on Microsoft
⤤ rensics
⤤ test
⤤ rity Basics
⤤ Vuln Dev
**Vulnerabilities**
**Jobs**
⤤ Job Opportunities
⤤ Resumes
⤤ Job Seekers
⤤ Employers
**Tools**
**ISS**
⤤ News
⤤ Vulns

# Laptop Losses and Phishing Fruit Salad

*Dr. Neal Krawetz*, 2007-02-15

Dr. Neal Krawetz takes a look at the numbers behind reports of
laptop thefts and phishing attacks, showing inconsistent metrics and
the difficulty in using numbers to determine the real level of threat.

Security is about evaluating risks. And who knows more about evaluating risks than insurance companies? For example, the automobile insurance industry invests in studies about driver safety, likelihood of an accident, estimated amount of damage, and the average cost of repair. This is how they measure risk.

In the computer field, risk is based on attributes such as ease of exploitation, required skillset to conduct the exploit, number of impacted systems, estimated loss, and amount of damage. It doesn't make sense to spend $10,000 on a high-end firewall to protect a $2,000 computer containing little intellectual property.

Whether it is car, medical, or liability coverage, insurance companies have very specific metrics. My insurance agent can quickly look up my chances of being in a serious auto accident based on my occupation, distance from work, number of miles driven per year, and type of car - and that's before adding in my driving history. Banks have similar metrics and in-depth understandings of their risks. However, few computer organizations have equivalent metrics. What are your odds of being attacked? What is the likelihood of a successful attack? What is the estimated loss from an attack? Many of the metrics we use today are based on half-truths and floating numbers - random statistics without context. When we hear that a laptop was stolen and that it contained thousands of pieces of personal information, should we be worried? What is the likelihood of the compromised information actually being used?

Just as fear, uncertainty, and doubt (FUD) can sway opinions about our security, these random statistics also influence our opinion about how safe we are on-line. But exactly how safe are we?

Hu

Hel
Hea
Provi
Aid to

Publi

## Playing with numbers

Exhibit  H  p. 19

In September 2006, the Washington Post reported that 1,137 government laptops had been stolen since 2001 from the Commerce Department. That's a big number... However, it is a number without context. How many laptops has the Commerce Department had since 2001?

The U.S. Commerce Department employs about 36,000 people. So if we assume that they all have laptops, then 1,137 lost laptops becomes 3% of their workforce. Now we have context - and it seems like a high number. The percent increases if we assume that only 10% of the people have laptops (30% lost), and decreases if we count replacement laptops. For example, few people use laptops longer than three years. Between dead batteries, damage from long-term use, and an inability to run the latest-and-greatest software, laptops get replaced. If we assume a replacement every three years, then every laptop at the Commerce Department would have been replaced twice, tripling the number of laptops that could be stolen. That initial assumption of a 3% loss rate suddenly drops to 1%, and the 30% assumption drops to 10%.

Now, 10% (and even 1%) sounds like a lot, and it accounts for a significant amount of lost personal information. However, I don't know anyone with a laptop who doesn't have some kind of personal or sensitive information on the hard drive. If a laptop is stolen, then personal or sensitive information **will be stolen**. The only real question is whether the information is useful to the thief. If the data is obscured or encrypted, then the answer is "maybe not." Remember: most laptops are believed to be stolen for the hardware and not the data.

Retailers, big companies, universities, and non-profit organizations expect "shrinkage" - they know that a percentage of merchandise and equipment will be lost, stolen, or broken. Knowing that every missing laptop contains something of importance, we can then start asking: Is "1%" an unexpected loss rate? Unfortunately, I cannot find any laptop-loss statistics for any big companies - we hear about individual laptop losses, but not the total percentage. However, I have worked for a couple of Fortune 500 companies and universities. Every few years (or every year, depending on the company), they do an inventory of equipment (PDF). The inventory is almost always followed by an obligatory email saying, "Does anyone know where the <equipment name> is? We're looking for the one with <tracking number>. We're also looking for <long list>."

Shrinkage. It always seems worse after a large round of layoffs. Some of the missing equipment can be physically big, like computers the size of Volvos - these are usually found. However, many items are small, such as laptops, cameras, projectors, and other portable devices. These small items rarely turn up. And remember: every missing computer contains some kind of sensitive information - the only question is whether the data is valuable to the thief. Yet, these data losses are rarely reported, even in publicly traded companies.

All of this loss adds to the amount of information potentially compromised. However, the general public does not know these numbers and cannot measure this risk.

By the way, according to law enforcement officers at JustStolen.net, one in ten laptops will be stolen. That is 10%, so the Commerce Department doesn't look that bad by comparison.

## Phishing for Numbers

The percentage of lost items is not the only number regularly taken out of context. For example, consider the question: how much email is spam? In 2005, values from respected experts ranged from 70% to 95%. There was no consensus among experts, but all of the numbers sounded "bad." Today, some companies no longer report the

Exhibit H p. 20

Laptop Losses and Phishing Fruit Salad

"percentage of spam" - they only report raw values (PDF). The only thing we really know is that it is a big number. But, we don't know what the number is (such as, 86%) or the accuracy range (a 5% margin of error?). We actually have better numbers and statistics for American Idol voting than spam volume. The same issue arises when we ask where the spam comes from. The general consensus is that today's botnets generate a majority of spam. However, we do not actually know how big the majority is.

This counting problem also shows up in reports on phishing. Every few months the Anti-Phishing Working Group (APWG) releases their Phishing Trends Report. For example, the APWG Sept-Oct 2006 report (PDF) shows an increase in phishing emails. In fact, their reports over the last few years have shown a nearly steady increase intermixed with a few sharp increases in volume.

The problem with the APWG numbers is that they don't match other sightings. For example, Usenet's "news.admin.net-abuse.sightings" (**NANAS**) is a high-volume newsgroup where people post their spam messages. NANAS receives thousands of postings per day - approximately 40,000 spam postings just for December 2006. The postings are sample spam emails submitted by people all over the world, and the samples appear to match the distribution of world-wide spam. If you don't have access to hundreds of honeypot accounts for collecting spam and want to do spam research, then NANAS is the next best thing.

Story continued on Page 2

Dr. Neal Krawetz operates Hacker Factor Solutions, providing computer security consulting, research and development. He is also the author of "Introduction to Network Security" (Charles River Media) and "Hacking Ubuntu" (Wiley).

 PRINT    EMAIL      ██        (page 1 of 3 ) next

## Comments

Mode: Threaded  GO

Expand all | Post comment

Laptop Losses and Phishing Fruit Salad 2007-02-16
Anonymous (2 replies)

   Re: Laptop Losses and Phishing Fruit Salad 2007-02-16
Anonymous

   Re: Laptop Losses and Phishing Fruit Salad 2007-02-19
Ben

Laptop Losses and Phishing Fruit Salad 2007-02-16
Anonymous

Laptop Losses and Phishing Fruit Salad 2007-02-16
mroonie

Laptop Losses and Phishing Fruit Salad 2007-02-17
Anonymous

Laptop Losses and Phishing Fruit Salad 2007-02-19
Anonymous

APWG Response: Laptop Losses and Phishing Fruit Salad 2007-02-21
APWG (2 replies)

   Re: APWG Response: Laptop Losses and Phishing Fruit Salad 2007-02-21
Neal Krawetz (1 replies)

      Re: Re: APWG Response: Laptop Losses and Phishing Fruit Salad 2007-02-22

Exhibit _H_ p. _21_

3/12/2007



# U.S. Commerce Dept. has lost 1,137 laptops since '01

Jeremy Kirk

**September 22, 2006** (IDG News Service) The U.S. Commerce Department reported that 1,137 laptops have been lost or stolen since 2001, with 249 of them containing some degree of personal data.

The department couldn't determine whose data may have been on the machines, of which 672 belonged to the U.S. Census Bureau. It isn't aware of any data having been used improperly, it said Thursday.

The findings are from a Commerce Department review covering 15 agencies that use a total of 30,000 laptops. It comes as businesses and governments try to tighten their control over mobile devices after several high-profile incidents concerning the loss of sensitive data.

The Census Bureau's laptops -- used for collecting census data in the field -- rarely contain data on more ?      100 households, and the data can't be       ssed by the surveyors, many of whom are temporary, hourly employees, the de     ment said.



However, the Census Bureau also lost 15 handheld computers used to gather survey data. As a result, the department is contacting 558 households. The risk of the data being misused is "extremely low," it said, since the data is encrypted and two passwords are required for access.

The National Oceanic and Atmospheric Administration, which falls under the Commerce Department, lost 325 laptops, three of which had personal data. One of the laptops was stolen after a fire at one of its buildings in Seattle. The machine contained addresses, birth dates and Social Security numbers for 146 employees, the department said.

Commerce Secretary Carlos M. Gutierrez said the agency plans to strengthen accountability standards, encrypt data on all department laptops and implement two-factor authentication.

The seriousness of the laptop losses depends entirely on whether the data on them was encrypted or not, said John Pescatore, an analyst at Stamford, Conn.-based Gartner Inc.

If they did have encryption on them, it changes the whole thing from a data loss to simply a hardware loss," Pescatore said. "So if you lost 1,000 laptops, you just had a $2 million loss" at $2,000 per laptop, Pescatore said. However, if the data was not encrypted, the potential costs could be much higher, he said.

Whenever you have a situation where you have a lot of temporary workers out in the field [as the Census     u does], carrying laptops, it is very important to encrypt sensitive data," he said.

..  government agencies have been stung by hardware losses in recent months. In May, a laptop and xternal hard drive stolen from the home of a U.S. Department of Veterans Affairs employee contained data n 26.5 million veterans and active-duty military personnel. The laptop was recovered, and two teenagers ere arrested in June.

Exhibit  H  p. 22

U.S. Commerce Dept. has lost 1,137 laptops since '01

Paller, director of research at the Bethesda, Md.-based SANS Institute expressed similar sentiments. "The bottom line is that the vast majority of the stolen laptops are simple theft and resale crimes," he said. But that in no way eliminates the "absolute requirement" to encrypt all sensitive data on these laptops to prevent against any chance of data theft or accidental compromise, he said.

Computerworld's *Jaikumar Vijayan* contributed to this report.

Exhibit H p. 23

EXHIBIT I

Wednesday D
Hughes/HCHB/Osnet          To  Taprina Jackson
09/26/2006 10:55 AM        cc
                           bcc
                           Subject  Fw: Washington Post Article

Wednesday Hughes
U.S. Department of Commerce
OS/OAS/OAO/IMD
(202) 482-7421, Room 2865

As a Valued Customer, we would like to know how we are doing. Please take a moment to complete our
Customer Survey by clicking on the link or cut and paste into your browser. Thanks!
http://www.osec.coc.gov/oas/imd/
---- Forwarded by Wednesday D Hughes/HCHB/Osnet on 09/26/2006 10:55 AM ----

Fred Fanning/HCHB/Osnet
09/25/2006 09:52 AM         To  Rhonda H. Jackson/HCHB/Osnet@osnet, Zackary
                                Williams/HCHB/Osnet@osnet, Joy
                                Taylor/HCHB/Osnet@osnet, Eston
                                Lewis/HCHB/Osnet@osnet, Jennifer
                                Jessup/HCHB/Osnet@osnet, Jeanette
                                Darden/HCHB/Osnet@osnet, Jeri
                                Coleman/HCHB/Osnet@osnet, Wednesday D
                                Hughes/HCHB/Osnet@Osnet
                            cc
                            Subject  Washington Post Article

Ladies and Gentlemen.

I am not sure if you read the Washington Post, but thought you might be interested in a short article on
page A19. In this article it states that of the 14 agencies that have responded to the congressional request
for information on missing laptops the Department of "Commerce looks far and away the worst."

Regards,
Fred Fanning
Acting Director, Office of Administrative Services
Department of Commerce
(202) 482-1200
Fax (202) 219-8890

Exhibit  I  p.  1

EXHIBIT J

Fred Fanning/HCHB/Osnet

09/07/2006 06:23 PM

To   Rhonda H. Jackson/HCHB/Osnet@osnet, Zackary
     Williams/HCHB/Osnet@osnet, Joy
     Taylor/HCHB/Osnet@osnet, Eston
     Lewis/HCHB/Osnet@osnet, Jennifer
     Jessup/HCHB/Osnet@osnet, Isha
     Carry/HCHB/Osnet@osnet, Taprina
     Jackson/HCHB/Osnet@osnet
cc   Douglas Elznic/HCHB/Osnet@osnet
bcc

Subject   Friday Suspense

History:           📑 This message has been forwarded.

Ladies and Gentlemen,

Tomorrow is our second major suspense.  We must turn in the numbers of the 100% inventory to Otto
Wolff by 5:00 pm.  We failed in our last mission to report OS inventory numbers.  I can not encourage you
strongly enough to get this one right.  Needless to say if we don't get it right, on-time, we will be working
this weekend (in the office) to get it right.  I know I don't want to work this weekend and I hope you don't
want to either.  Check and double check the data and make sure that it makes sense.  Question the
numbers and then find the answers.  If we can't get it right after that I suggest we all start looking for other
jobs.

Regards,
Fred Fanning
Acting Director, Office of Administrative Services
Department of Commerce
(202) 482-1200
Fax (202) 219-8890

Exhibit __J__ p. _1_

# EXHIBIT K



**Zackary**
**Williams/HCHB/Osnet**
09/22/2006 02:19 PM

To   Ed Flanagan/HCHB/Osnet@osnet, Eston
     Lewis/HCHB/Osnet@osnet, Gene
     Price/HCHB/Osnet@osnet, Isha Carry/HCHB/Osnet@osnet,
     Jeanette Darden/HCHB/Osnet@Osnet, Jennifer
     Jessup/HCHB/Osnet@osnet, Jeri
     Coleman/HCHB/Osnet@osnet, Joy
     Taylor/HCHB/Osnet@osnet, Lalit
     Bajaj/HCHB/Osnet@osnet, Neal
     Fletcher/HCHB/Osnet@Osnet, Paul
     McGolrick/HCHB/Osnet@osnet, Taprina
     Jackson/HCHB/Osnet@osnet, Wednesday D
     Hughes/HCHB/Osnet@Osnet, William
     Scriber/HCHB/Osnet@osnet

cc

bcc

Subject   Sunflower Data correction and Inventory of OAS property

History:        ✍ This message has been replied to:

ALL
Per the Director of OAS, all personnel within the Information Management Division will
work until not later than (NLT)  9:00 p.m Friday evening, from 8:30 a.m to NLT 9:00 p.m
on Saturday and  Sunday from 8:30 a.m  to 3:00 p.m or until completion..  **This is a**
**mandatory work schedule.**

Personnel wishing to attend religious service must let me know what day and time you
will be attending on Friday evening, Saturday or Sunday and what time you will be in
the office.  The Director of OAO, (Rhonda Jackson) is the only person that can release
you from the work schedule

Please acknowledge receipt of this message.

If you are not going to work, please let me know in advance.


      Thank you
Zackary Williams
Office of Administrative Services
Office of Administrative Operations
Chief, Information Management Division
202/482-3607 Office  202/501-2505

Customer service is our #1 Priority

Exhibit  K   p. 1

EXHIBIT L



|  |  |  |
|---|---|---|
| **Taprina Jackson/HCHB/Osnet** 09/22/2006 06:11 PM | To | Zackery Williams/HCHB/Osnet@osnet, Joy Taylor/HCHB/Osnet@osnet, Rhonda H. Jackson/HCHB/Osnet@osnet, Fred Fanning/HCHB/Osnet@osnet, Douglas Elznic/HCHB/Osnet@osnet, Otto Wolff/HCHB/Osnet@osnet, Jeffery Keith Nulf/HCHB/Osnet@osnet |
|  | cc |  |
|  | bcc | Cynthia Hodges/HCHB/Osnet@Osnet, Andrea D. Bynum/HCHB/Osnet@osnet, Wednesday D Hughes/HCHB/Osnet@Osnet, Eston Lewis/HCHB/Osnet@osnet |
|  | Subject | Re: Sunflower Data correction and Inventory of OAS property 🗎 |

I can not work these hours due to personal and very private reasons. However, I would like to address the issue that for the last couple of weeks there has been a supposed need for staff to complete deadlines outside of normal working hours. I believe the organization and management should re-arrange duties and priorities so important tasks can be completed within normal working hours. Not only is and has management requested staff to work outside of normal working hours, they have neglected to give staff adequate time to re-arrange everyday life priorities to meet these demands. A employee should be given more notice than a couple hours before the day ends and really more notice than 24 hours when extra working hours are needed. It is unreasonable to expect staff to be able to put their lives on hold at the drop of a dime. Every individual's personal lives and situations are not the same and are not susceptible to last minute changes. Work is not our only and/or first priority. This does not mean that we do not want our jobs or take them seriously, this just means there are other needs in life that take precedence.

I do not believe that this organization is constantly not aware of deadlines and taskings until the last minute. Yet it seems there is always little to no time given to staff to complete taskings. Especially given the fact that this office is customer service oriented and our jobs require us to work with individuals outside of this office. It is one thing for an individual to have to complete a task given to them when nothing more than there efforts is needed to complete the task, but when a tasking is requiring an individual to obtain information from others adequate time is needed. If this information is not being given forthright than, management should step in and assist. I have been here 18 months and have personally witnessed management's lack of assistance with these types of problems thus making it difficult to even ask for their help. Perhaps when we are working on reviewing missions and strategic planning issues, we need to visit these real world issues currently affecting this organization.

Thanks to management, the moral in this office is very low and decreasing rapidly still. No one wants to say anything about it but I am. It is very difficult to put your best effort forward for an organization that gives you nothing but constant grief and harassment about your job security. Everyday there is confusion, confrontation, negativity festering in this office from unreasonable requests from management and management's lack of action when assistance is needed. I have forwarded this through the chain of command because the first thing management says is they were not aware that there were any issues. Now I am making everyone aware.

Thank You,


Taprina Jackson
Information Management Division
Personal Property
202-482-0888

Exhibit   L  p.  1

EXHIBIT M

**Fred Fanning/HCHB/Osnet**
09/08/2006 06:56 PM

To  Zackary Williams/HCHB/Osnet@osnet, Joy
    Taylor/HCHB/Osnet@osnet, Wednesday D
    Hughes/HCHB/Osnet@Osnet, Taprina
cc  Rhonda H. Jackson/HCHB/Osnet@osnet, Douglas
    Elznic/HCHB/Osnet@osnet

bcc

Subject  Personal Property Personnel

Ladies and Gentlemen,

You have failed to meet a suspense for the third time.  The three suspenses were OS 100% laptop inventory due September 1, 2006, Department 100% laptop inventory due September 8, 2006, and the Department Forms reconciliation due September 8, 2006.  Several of you left work on time Friday September 8, 2006 after I sent all of you an e-mail yesterday telling you if you did not make the suspense you would work late and all weekend if necessary. There are a number of you that don't take your jobs seriously and you have left me with no other choice than to recommend to Otto Wolff that he approve NOAA as the Executive Agent for Personal Property Management and that we cancel all the full-time equivalent positions within the property book section and conduct a RIF.  I can think of no other way to provide this Department with a quality Personal Property Division.

Regards,
Fred Fanning
Acting Director, Office of Administrative Services
Department of Commerce
(202) 482-1200
Fax (202) 219-8890

Exhibit __M__ p. __1__

EXHIBIT N

|  | | |
|---|---|---|
| **Fred Fanning/HCHB/Osnet** | **To** | JNulf@DOC.GOV |
| 09/08/2006 07:04 PM | **cc** | Douglas Elznic/HCHB/Osnet@osnet, Bill Fleming/HCHB/Osnet@osnet, Rhonda H. Jackson/HCHB/Osnet@osnet |
|  | **bcc** | |
|  | **Subject** | Failure of Property Section |

Sir,

The OAS property section has failed in every suspense given them. I can see no other long term solution than to have NOAA serve as the Executive Agent for Personal Property for the Department and eliminate the property office in OAS. It will be too difficult to try to build an organization with the inept personnel we have in that section. We need to get the property accountability correct and to keep it that way, and with the exception of one person the people currently in that section can not do it. Recommend we keep the fleet and drivers in OAO with the missions for the Secretaries office and the Metrochecks. I will develop a package for your and Otto's approval and will run it through OHRM and OGC. There will be five positions that we can eliminate and pass those savings on to NOAA to allow them to hire some personnel. I don't recommend we move the current people to NOAA.

Regards,
Fred Fanning
Acting Director, Office of Administrative Services
Department of Commerce
(202) 482-1200
Fax (202) 219-8890

# EXHIBIT O

| | | |
|---|---|---|
| **Douglas Elznic/HCHB/Osnet** | To | OAS-Drivers |
| 12/06/2006 02:21 PM | cc | Fred Fanning/HCHB/Osnet, Rhonda H. Jackson/HCHB/Osnet |
| | bcc | |
| | Subject | PMD Responsibilities |

Ladies and Gentlemen

The purpose of this email is to clarify any confusion as to which functions PMD will retain and perform on a daily basis apart from the Property Management Project Team,as discussed with the OAO Director . The PMD office, located in 2865, will continue to perform the following functions:

- Contracting Officer for Moving Services( to include all moving services functions and the excessing of property for all Bureaus within HCHB)
- Metro-check coordination/distribution
- Gift Fund
- Forms and paper warehouse
- Assistance with Fleet management
- Any other duties requested by the OAO Director

Doug

Douglas F. Elznic, P.E.
Department of Commerce
Office of the Secretary
Acting Deputy Director,  Office of Administrative Services
(202) 482-0227
delznic@doc.gov

Exhibit  O  p.  1

EXHIBIT P

# SECTION 2 - PERFORMANCE SUMMARY RATING

| Employee's Name | Rating Period |
|---|---|
| Taprina Jackson | 1 October 2004 - 30 September 2005 |

| Organization |
|---|
| OS/OAS/OAO/Information Management Division |

## ITEM 1. Scoring

1. List each performance element and its weight.
2. Assign a score to each element. Enter "Unsatisfactory" if element performance does not warrant a score.
3. Complete total score by summing element scores. Total score can range from 40 to 100. If one or more elements are rated "Unsatisfactory," there is no total score and the overall rating is "Unsatisfactory."

| | Performance Element | Weight | Score |
|---|---|---|---|
| 1. | Satisfy Customer/Stakeholders | 40 | 32 |
| 2. | Provide Policy/Oversight and Program Management for OAS | 35 | 30 |
| 3. | Organizational Effectiveness | 25 | 19 |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | | TOTAL SCORE | 81 |

## ITEM 2. Rating and Payouts

[x] **Eligible** (All elements scored in the Eligible range)

[ ] **Unsatisfactory** (At least one element rated Unsatisfactory)

| Performance Pay Increase Percentage | 3.3 | Dollar Amount | $1782.00 | Bonus Amount | 0 |
|---|---|---|---|---|---|

| Name and Title of Rating Official | Signature | Date |
|---|---|---|
| ZACKARY R. WILLIAMS, Chief, Information Management Division | *Zackary R Williams* | 21 Oct 2005 |
| Name and Title of Higher Level Supervisor (if Appropriate) | Signature | Date |
| LUTRICIA C. JACKSON, Director, Office of Administrative Operations | *Lutricia Jackson* | 10-24-05 |
| Name and Title of Pay Pool Manager | Signature | Date |
| JAMES E. WOODS, Deputy Director, OAS | *James E Woods* | 10/25/05 |
| Name and Title of Reviewing Official | Signature | Date |
| | | |

| Employee's Signature (Signifies evaluation feedback meeting held) | Employee comments attached? | Date |
|---|---|---|
| | [ ] YES  [X] NO | 10/25/05 |

FORM CD-541 (4-98) LF

Exhibit P p. 108    WP v. 1.5 (10-7-98) AST

## ELEMENT POINT RANGES AND BENCHMARK PERFORMANCE STANDARDS TABLE

THIS SHEET MUST BE USED IN CONJUNCTION WITH THE PERFORMANCE PLAN. THE BENCHMARK PERFORMANCE STANDARDS ARE USED TO EVALUATE AND SCORE AGAINST THE ELEMENTS, OBJECTIVES, AND ACTIVITIES LISTED IN THE PLAN.

| ELEMENT POINT RANGES | BENCHMARK PERFORMANCE STANDARDS |
|---|---|



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | **UNSATISFACTORY:** Work not successfully completed; Failed to follow directions, guidance and procedures; Insufficient technical knowledge/skill; Work did not meet minimum specifications; Routine problems were not resolved satisfactorily; Written and oral communication poor and not understandable; Exhibited uncooperative/unresponsive behavior; Negative impact to organization; Work unacceptably late; Poor leadership skills; Provided no positive direction to staff; Unable to organize and prioritize work and/or wasted time; Ineffective in work with others. | | | |

| | ELEMENT #1 | ELEMENT #2 | ELEMENT #3 | ELEMENT #4 | ELEMENT #5 | ELEMENT #6 | TOTAL |
|---|---|---|---|---|---|---|---|
| WEIGHT | 40 | 35 | 25 | | | | = 100 |
| SCORE | 32 | 30 | 19 | | | | 81 |

Form CD-541 (8/03) LF

# Goal Review
## Taprina Jackson
## Year End Final 2005

Critical Element 1: Satisfy Customers/Stakeholders
 1. Contribute to improving overall OAS customer satisfaction.
 2. Contribute to improving component (i.e., Bureau, Program) customer satisfaction.
 3. Contribute to improving overall satisfaction, through individual works that have a significant impact on customers.

Your commitment to the Personal Property Program has been invaluable to meeting the OAO goals. As the DOC Property Management representative between the Bureaus and General Service Administration (GSA), You have been successful in coordinating and training DOC employees' on the Agency Asset Management System for the disposal of excess property. You stays abreast of the changes to Policy, Laws and Regulations and passes the information to the Bureaus and management through written communication and posting to the IMD property web page. Your assistance with preparing the Director of OAS and OAO for the COOP exercise was commendable. You provided copies of the property regulation, listing of the Department of Commerce property asset by Bureaus and the total value of the assets. The COOP information would allow for the reestablishment of the property accounting system in the event of an actual disaster. You facilitated the set up of Sunflower accounts for Departments within the Office of the Secretary and conducted training on the personal property management system (PPMS). You assisted with the coordination of merging the Office of the Secretary and NOAA versions of Sunflower to develop a Department of Commerce PPMS.

Suggestions/Strategies for improvement: 1st Quarter FY 06: Continue to study the Code of Federal Regulation and send out surveys on each non-repetitive customer contact.

Critical Element 2: Provide Policy/Oversight and Program Management for OAS
 1. Contribute to providing policy/oversight and program management for each specific program(s).
 2. Contribute, through individual output, to providing policy and oversight of OAO, OAS and Departmental programs.

You worked on updating the DOC Personal Property Policy and Procedure Manual with current regulatory information and including the Sunflower PPMS procedures to standardize the process of managing property within the DOC. You conducted the first DOC property managers' meeting to discuss property issue and the standardization of the property procedures. Your actions have fostered a spirit cooperation and cohesiveness within the Department of Commerce between the Property Managers. You compiled an updated sensitive items list of the items that would be use to standardize the inventory across the DOC. You verified the records of the Secretary's Gift program, the reporting of receipt of Gifts received by the Secretary and Deputy Secretary to GSA and ensuring that they are appraised. The value of the property aids in determining weather to report the receipt to Congress and manner in which the property can be disposed.

Exhibit P p. 43

<u>Critical Element 3:</u>  Organizational Effectiveness
1.  Comply with internal systems, processes, and procedures for accomplishing the goals of the work unit.
2.  Assure actions conform to the goals of the organization and associated programs.
3.  Coordinate actions/information with other staff members as appropriate.
4.  Attend staff meetings and participate in or contribute to inter-office projects.
5.  Inform supervisors, other staff, and management of problem areas in a timely and appropriate manner.
6.  Obtain feedback on priorities and activities and take appropriate action to support organizational and associated program goals.
7.  Share information and materials with supervisors, team members, and customers in a timely and effective manner.

You shared information through her meetings with the property managers that have informed the Bureaus on DOC requirements, policy changes, and action items.  These meeting were also used as a vehicle for the Bureaus to provide feedback on outstanding issues and receive clarification on personal property concerns.  You have provided information on the requirement to conduct a 100% Annual Inventory, on the Personal Property Management Manual, the plans to Shipping and Receiving section in the HCHB, Computers for Learning (CFL), and available Personal Property Management training.  Periodically attend Personal Property Meetings at National Oceanic and Atmospheric Administration and informed supervisors, other staff, and management of problem areas that were identified during the meetings.

Suggestions/Strategies for improvement: 1st Quarter FYO6: Apply for and attend property courses at USDA.


Employee's Signature


Supervisor Signature

EXHIBIT Q

Form CD—541U.S. DEPARTMENT OF COMMERCE
(4-96) LF

# DEMONSTRATION PROJECT • PERFORMANCE MANAGEMENT RECORD

## PERFORMANCE APPRAISAL AND POSITION REVIEW

| | |
|---|---|
| Employee's Name | Taprina Jackson |
| Position/Title | Program Management Specialist |
| Career Path/Series/Band | ZA-0301-III |
| Organization | OS, CFO/ASA, OAS, OAO, IMD, Property & Fleet    **Rating Period** 1 Oct 2005 - 30 Sep 2006 |

### RATING OFFICIAL'S CERTIFICATION

I Certify That:

[X] This plan is a complete and accurate statement of the performance elements, objectives, and major activities that will form the basis of the employee's performance appraisal.

[X] The performance plan and position description reflect similar objectives, duties and responsibilities.

| Name and Title of Rating Official | Signature | Date |
|---|---|---|
| ZACKARY R. WILLIAMS | *[signature]* | 11/21/05 |

### HIGHER LEVEL SUPERVISOR CONCURRENCE

*I agree with the certification of the position description and concur with the performance plan.*

| Name and Title of Higher Level Supervisor (if appropriate) | Signature | Date |
|---|---|---|
| Lutricia C. Jackson,,Director, Office of Administrative Operations | *[signature]* | 11-25-05 |

### PAY POOL MANAGER'S APPROVAL

*I agree with the certification of the position description and I approve the performance plan.*

| Name and Title of Pay Pool Manager | Signature | Date |
|---|---|---|
| JAMES E. WOODS, Deputy Director, OAS | *James C Woods* | 11/28/05 |

### REVIEWING OFFICIAL'S APPROVAL

*This review is appropriate when the pay pool manager is also the rating official.*

| Name and Title of Reviewing Official | Signature | Date |
|---|---|---|
| | | |

### EMPLOYEE ACKNOWLEDGMENT

*My signature acknowledges discussion of the position description and receipt of the performance plan, but does not necessarily signify agreement with either document.*

| Employee's Signature | Date |
|---|---|
| *[signature]* | 12/2/05 |

1 CD-541 (4-96) LF

WP v. 1.5 (10-7-98) AST

Exhibit ___Q___ p. __1__

03/16/2007 16:51 FAX 202 219 8890      OFC ADMIN SERVICES                    ☑020

Form CD-541A
(4-98) LF          U.S. DEPARTMENT OF COMMERCE

# ELEMENT POINT RANGES AND PERFORMANCE STANDARDS

This sheet must be used in conjunction with the performance plan. The benchmark performance standards are used to evaluate and score against the elements, objectives, and activities listed in the plan.

## ELEMENT POINT RANGES

| 60 | 55 | 50 | 45 | 40 | 35 | 30 | 25 | 20 | 15 | 10 | 5 |
|----|----|----|----|----|----|----|----|----|----|----|---|

### BENCHMARK PERFORMANCE STANDARDS

Element objectives were achieved with maximum impact, through exemplary work that demonstrated exceptional originality, versatility, and creativity. Activities and related tasks were carried out with utmost effectiveness and reliability, rarely leaving room for improvement. Products were of the highest quality. Problems were solved with dedicated perseverance, penetrating insight, meticulous attention to detail, and unprecedented success. Potential sources of conflict were anticipated and avoided, through creative alternatives. Cooperation and responsiveness were actively promoted wherever possible. Written and oral communications related to the performance of element activities maximized desired results, forged new cooperative relationships, and increased organizational prestige.

Element objectives were accomplished effectively and efficiently, with consistently good quality and quantity of work. Activities and related cost-effective results. Products were above-average in quality and reliability. Accepted procedures were carried out proficiently and constructively, and problems were dealt with skillfully and resourcefully. Cooperative efforts were positive and productive. Written and oral communications related to the performance of element activities were clear and convincing.

Element objectives, activities and related tasks were completed with adequate quality and quantity of work. Products were generally reliable and were delivered without unacceptable delays. Procedures were minimally correct and problems were dealt satisfactorily. Work methods demonstrated a reasonable degree of cooperation with others. Written and oral communication related to the performance of element activities were generally understandable.

**UNSATISFACTORY:** Element objectives and activities were not successfully completed, because of failures in quality, quantity, completeness, or timeliness of work. Products were deficient, because they were contrary to directions or guidelines; did not meet minimum specifications; were inconsistent with proper procedures; were significantly flawed or substandard in quality; demonstrated insufficient technical knowledge or skill; were incomplete; were unacceptably late; or lacked essential cooperative involvement and support. Problems that arose during the performance of element activities were not satisfactorily resolved. (No score given for unsatisfactory performance)

| | ELEMENT #1 | ELEMENT #2 | ELEMENT #3 | ELEMENT #4 | ELEMENT #5 | ELEMENT #6 | TOTAL |
|---|---|---|---|---|---|---|---|
| WEIGHT | | | | | | | = 100 |
| SCORE | | | | | | | 0.00 |

CD-541 (4-98) LF

WP v. 1.5 (10-7-98) AST

Exhibit Q p. 2

Version 2.0
11/21/2005 - 2:15 PM

# OAS Performance Elements

## Taprina Jackson, Program Management Specialist
### Information Management Division, Office of Administration Operations

**DOC PERFORMANCE GOAL 1:**
*Ensure Effective Resource stewardship in Support of the Commerce Department Programs*

| OAS GOALS | 1. Satisfy Customers/Stakeholders 2. Provide Policy/Oversight and Program Management for OAS and Departmental Programs 3. Organizational Effectiveness |
|---|---|

**Critical Elements:**

1. **Satisfy Customers/Stakeholders**                                    **[40%]**
   a. Contribute to improving overall OAS customer satisfaction.
   b. Contribute to improving component (I.E. Bureau, Program) customer satisfaction.
   c. Contribute to improving overall customer satisfaction, through individual works that have a significant impact on customers.

   **(1) Based on identified deficiencies and customer feedback, re-engineer business practices within IMD utilizing new technologies and best business practices techniques.**

2. **Provide Policy/Oversight and Program Management for OAS and**   **[35%]**
   **Departmental Programs**
   a. Contribute to providing policy/oversight and program management for each specific program(s).

   **(1) Provide policy and oversight for the Department of Commerce Personal Property Management Program and personal property related products.**

   b. Contribute, through <u>individual output</u>, to providing policy and oversight of OAS and Departmental Programs.

   **(1) Support Goal #1 – Publish the DOC Personal Property Management Manual NLT 1 October 2005. Draft manual is provided**

1

Exhibit __Q__ p. _3_

Version 2.0
11/21/2005 - 2:15 PM

to DOC Personal Property Managers for comments NLT 1 June 2005.

(2) Support Goal # 2 - Reviews DOC personal property related forms quarterly for relevance, accuracy, and compliance with policy. Review is also made to improve the business processes and streamline staffing. Staff coordination to modify a DOC form is initiated within 30-days prior of identification of a discrepancy to ensure that approval and publication coincides with policy manual updates.

(3) Support Goal #3 -Leads business process changes associated with the new Personal Property Management Manual and e-gov initiatives. Attends GSA meetings to assess impact and develop strategy for deploying procedural changes within DOC. Strategy and implementation plans are staffed with bureaus within 60-days prior to change. Comments are reviewed to modify implementation strategy and facilitate change.

(4) Support Goal #4 -Coordinates and develops training for bureau personal property personnel. Promotes and markets annual federal awards programs and certification within DOC.

(5) Support Goal #5 -Coordinates and performs one site visit with another Federal Agency each year to review their operations and share best practices. Develop a candidate list of issues that are relevant to DOC and learn of alternative solutions employed by other federal agencies. A trip report is submitted to the Chief, IMD within 15-days following the site visit.

3.  **Organizational Effectiveness**                                      **[25%]**
    *Non-Supervisors –*
    a.  Comply with internal systems, processes, and procedures for accomplishing the goals of the work unit.
    b.  Assure actions conform to the goals of the organization and associated programs.
    c.  Coordinate actions/information with other staff members as appropriate.
    d.  Attend staff meetings and participate in or contribute to inter-office projects.
    e.  Inform supervisors, other staff, and management of problem areas in a timely and appropriate manner.
    f.  Obtain feedback on priorities and activities and take appropriate action to support organizational and associated program goals.
    g.  Share information and materials with supervisors, team members, and customers in a timely and effective manner.
    h.  Ensure timely and accurate submission of all administrative action items.

Exhibit  Q  p.  4

Version 2.0
11/21/2005 - 2:15 PM

### Element & Activity Weights

| Critical Element | Element Weight | Activity Weight (a) | Activity Weight (b) | Activity Weight (c) |
|---|---|---|---|---|
| Satisfy Customers/Stakeholders | 40% | 30% | 30% | 40% |
| Provide Policy/Oversight and Program Mgmt | 35% | 50% | 50% | ---- |
| Organizational Effectiveness | 25% | 40% | 30% | 30% |

Evaluation Criteria 1:    Satisfy Customer/Stakeholders                [40%]

1a.    Contribute to improving overall customer satisfaction. **[30%]**

   *(Evaluation source: Annual OAS Customer Satisfaction Survey)*
   High:        Overall Satisfaction > 90%.
   Moderate:    Overall Satisfaction between 80%-90%.
   Low:         Overall Satisfaction < 80%.
   Unsuccessful: n/a

1b.    Contribute to improving component (I.E. Bureau, Program) customer satisfaction. **[30%]**

   *(Evaluation source: Quarterly Program Customer Satisfaction Surveys)*
   High:        Component satisfaction > 90%.
   Moderate:    Component satisfaction between 80%-90%.
   Low:         Component satisfaction < 80%.
   Unsuccessful: n/a

1c.    Contribute to improving overall customer satisfaction, through <u>individual works</u> that have a significant impact on customers. **[40%]**

   *(Evaluation source: Employee/Supervisor Documentation of Customer Feedback)*
   High:        Performs position functions in a manner that greatly promotes teamwork, thereby, promoting the OAS reputation and satisfying customers.
   Moderate:    Performs position functions in a manner that moderately promotes teamwork, thereby, promoting the OAS reputation and satisfying customers.
   Low:         Performs position functions in a manner that neither promotes nor distracts from teamwork. Behavior neither promotes nor distracts from the OAS reputation and customer satisfaction. customers.
   Unsuccessful: Performs position functions in a manner that does not support a positive team work environment and further distracts from the OAS reputation and alienates customers.

3                          Exhibit Q p. 5

Version 2.0
11/21/2005 - 2:15 PM

<u>Evaluation Criteria 2:</u>    **Provide Policy/Oversight and Program Management
for OAS and Departmental Programs       [35%]**

2a.    Contribute to providing Policy/Oversight and Program Management for OAS and
Departmental Programs.       **[50%]**

   *(Evaluation source: Quarterly Program Updates)*

   High:        Program is ahead of schedule, within and/or under budget, and on
                track to exceed output goals.
   Moderate:    Program is between 80% and 100% on schedule, 80 – 100% within
                budget, and on track to meet output goals.
   Low:         Program is less than 80% on schedule, less than 80% within
                budget, and may miss some output goals.
   Unsuccessful: n/a

2b.    Contribute, through <u>individual output</u>, to providing Policy/Oversight and Program
Management for your specific program(s).       **[50%]**

   **(Evaluation source: Midyear and EOY Accomplishments)**
   High:        Accomplish>100% of supervisor defined output goals.
   Moderate:    Accomplish between 80% and 100% of supervisor defined output
                goals.
   Low:         Accomplish at least 50%, but less than 80% of supervisor defined
                output goals.
   Unsuccessful: Accomplish<50% of supervisor defined output goals.

<u>Evaluation Criteria:</u>    **Organizational Effectiveness
[30%]**

3aa.   Employee:    Contribute new initiatives, which make OAS a more effective
                    Organization.  **[40%]**

   *(Evaluation source: Employee/Supervisor documentation)*
   High:        Develop and initiate at least 2 new business improvements that
                greatly enhance OAS effectiveness.
   Moderate:    Develop and initiate least 1 new business improvement
                that moderately enhances OAS effectiveness.
   Low:         Develop and communicate no new viable initiatives.
   Unsuccessful: n/a

3ab.   Employee:    Contribute to individual personal development.  **[30%]**

   *(Evaluation source: Individual Development Plan)*
   High:        Demonstrate initiative on >75% of IDP objectives.
   Moderate:    Demonstrate initiative on between 40%-75% of IDP objectives.
   Low:         Demonstrate initiative on <40% of IDP objectives.
   Unsuccessful: Demonstrate no skill development initiative.

4

Exhibit  Q  p. 6

Version 2.0
11/21/2005 - 2:15 PM

3ac.    Attend required number of safety awareness training sessions **[30%]**

*(Evaluation source: Training documentation and injury reports)*

| | |
|---|---|
| High: | >100% of training sessions completed and employee had zero preventable injuries during the year. |
| Moderate: | 80 – 100% of training sessions completed and employee had zero preventable injuries during the year. |
| Low: | Less than 80% of training sessions were completed and/or the employee had multiple preventable injuries during the year. |

5

FY 2006 Employee Performance 1st Quarterly Feedback
October 1, 2005 through December 31, 2005

Employee:    Taprina Jackson

**Critical Element 1:** Satisfy Customers/Stakeholders
1. Contribute to improving overall OAS customer satisfaction.
2. Contribute to improving component (i.e., Bureau, Program) customer satisfaction.
3. Contribute to improving overall satisfaction, through <u>individual works</u> that have a significant impact on customers.

As the DOC Property Manager representative between the Bureaus and GSA you have been successful in coordinating and training DOC employees' on the Agency Asset Management System for the disposal of excess property. You assisted with the processing mapping of the Sunflower Property Management System and worked with the IT section in getting the inventory scanners operational. You have gathered the data required to support the annual gift report on property received by the Secretary. You have identified possible training class for custodians and managers that will increase their knowledge in property accountability.

**Critical Element 2:** Provide Policy/Oversight and Program Management for OAS
1. Contribute to providing policy/oversight and program management for each specific program(s).
2. Contribute, through <u>individual output,</u> to providing policy and oversight of OAO, OAS and Departmental pro grams.

You have created an interest in formal training in Personal Property Management from within the Bureaus and coordinated the training that would foster cooperation and cohesiveness within the Department of Commerce between the Property Managers. You have provided technical assistance to CENSUS Bureau with developing policy on accounting for property purchased for decennial. You worked with protocol in maintaining the security of the gifts that are stored for the Secretary and Deputy Secretary.

**Critical Element 3:** Organizational Effectiveness
1. Comply with internal systems, processes, and procedures for accomplishing the goals of the work unit.
2. Assure actions conform to the goals of the organization and associated programs.
3. Coordinate actions/information with other staff members as appropriate.
4. Attend staff meetings and participate in or contribute to inter-office projects.
5. Inform supervisors, other staff, and management of problem areas in a timely and appropriate manner.
6. Obtain feedback on priorities and activities and take appropriate action to support organizational and associated program goals.
7. Share information and materials with supervisors, team members, and customers in a timely and effective manner.

Exhibit  Q  p.  8

You have shared information through your meetings with the property managers that have informed the Bureaus on DOC requirements, policy changes, and action items. These meetings were also used as a vehicle for the Bureaus to provide feedback on outstanding issues and/or questions they had concerning personal property. You have attended the meeting with NOAA on their property accountability. Shared information with team members and contractors on the process used by the Office of the Secretary to enter data in the PPMS. Informed your supervisor of the outcome of meeting you attended on behalf of the Department of Commerce. Coordinated all action with staff members.

| | |
|---|---|
| Employee's Signature       Date | Supervisor Signature       Date |

FY 2006 Employee Performance 2nd Quarterly Feedback
January 1, 2006 through march 31, 2006

Employee:   Taprina Jackson

**Critical Element 1:**  Satisfy Customers/Stakeholders
1. Contribute to improving overall OAS customer satisfaction.
2. Contribute to improving component (i.e., Bureau, Program) customer satisfaction.
3. Contribute to improving overall satisfaction, through <u>individual works</u> that have a significant impact on customers.

As the DOC Property Manager Representative between the Bureaus and GSA you have been successful in coordinating and training DOC employees' on the Agency Asset Management System for the disposal of excess property. You assisted with the processing mapping of the Sunflower Property Management System and worked with the IT section in getting the inventory scanners operational. You have gathered the data required to support the annual gift report on property received by the Secretary. You worked with the Annas contractors to develop a training package for the changes to the Personal Property Management System.

**Critical Element 2:**  Provide Policy/Oversight and Program Management for OAS
1. Contribute to providing policy/oversight and program management for each specific program(s).
2. Contribute, through <u>individual output,</u> to providing policy and oversight of OAO, OAS and Departmental programs.

You have worked on the PPMS for the consolidation of OS and NOAA's systems to create the DOC PPMS. You provided the contractors with valuable information in on property accountability that they me write programs too extract the data needed to populate the DOC PPMS. You have provided technical assistance to MBDA, EDA and BIS on the use of the Intermec scanner for inventory purpose. You worked with protocol in maintaining the security of the gifts that are stored for the Secretary and Deputy Secretary. You assumed the duties of the Property Accountable Officer (PAO) upon his retirement. You represented the Office at NOAA's monthly property meeting and maintain a file on the minutes of the meetings.

**Critical Element 3:**  Organizational Effectiveness
1. Comply with internal systems, processes, and procedures for accomplishing the goals of the work unit.
2. Assure actions conform to the goals of the organization and associated programs.
3. Coordinate actions/information with other staff members as appropriate.
4. Attend staff meetings and participate in or contribute to inter-office projects.
5. Inform supervisors, other staff, and management of problem areas in a timely and appropriate manner.
6. Obtain feedback on priorities and activities and take appropriate action to support organizational and associated program goals.
7. Share information and materials with supervisors, team members, and customers in a timely and effective manner.

You have shared information through your meetings with the property managers that have informed the Bureaus on DOC requirements, policy changes, and action items. These meeting were also used as a vehicle for the Bureaus to provide feedback on outstanding issues and/or questions they had concerning personal property. You do coordinate your actions with your team leader and supervisor. You are very productive worker when you are here.

There is an area that needs attention that has become a problem. You have been consistently late over the last quarter. On several occasion you did not call in until late to inform the office that you would not be coming to work. The DOC policy on annual leave is to request your leave at least three day in advance. You have called in and requested to be placed on annual leave. This is only done in cases of emergencies. If you call in on sick leave it must be within two hour of your duty time. We have a policy in the office that if you call in you must talk with your team lead or someone in the office. Your annual and sick leave are both in negative balances of 73 annual and 46.5 sick. If there is a problem that I can help you with that will allow you to make it to work on time please let me know. If the situation continues, other action may be necessary to ensure good order and discipline is maintained in the office. You can be place on leave restriction for abuse of the leave policy based on your current attendance record.

_____          _____          _____          _____
Employee's Signature                  Date                 Supervisor Signature                  Date

Exhibit ___Q___ p. ___11___

FY 2006 Employee Performance 3rd Quarterly Feedback
April 1, 2006 through June 30, 2006


**Employee:**    Taprina Jackson

**Critical Element 1:**  Satisfy Customers/Stakeholders
1. Contribute to improving overall OAS customer satisfaction.
2. Contribute to improving component (i.e., Bureau, Program) customer satisfaction.
3. Contribute to improving overall satisfaction, through individual works that have a significant impact on customers.

As the DOC Property Manager Representative between the Bureaus and GSA you have been successful in coordinating and training DOC employees' on the changes to the DOC Personal Property Management System. You assisted the IT Branch with Sunflower Property Management System and worked with getting the inventory scanners operational. You have gathered the data required to support the annual gift report on property received by the Secretary.

**Critical Element 2:**  Provide Policy/Oversight and Program Management for OAS
1. Contribute to providing policy/oversight and program management for each specific program(s).
2. Contribute, through individual output, to providing policy and oversight of OAO, OAS and Departmental programs.

You have worked on the PPMS for the consolidation of OS and NOAA's systems to create the DOC PPMS. You provided the contractors with valuable information in on property accountability which enable them to write programs too extract the data needed to populate the DOC PPMS. You have provided technical assistance to MBDA, EDA, OAS and BIS on the use of the Intermec scanner for inventory purpose. You worked with protocol in maintaining the security of the gifts that are stored for the Secretary and Deputy Secretary. You represented the Office at NOAA's monthly property meeting and maintain a file on the minutes of the meetings.

**Critical Element 3:**  Organizational Effectiveness
1. Comply with internal systems, processes, and procedures for accomplishing the goals of the work unit.
2. Assure actions conform to the goals of the organization and associated programs.
3. Coordinate actions/information with other staff members as appropriate.
4. Attend staff meetings and participate in or contribute to inter-office projects.
5. Inform supervisors, other staff, and management of problem areas in a timely and appropriate manner.
6. Obtain feedback on priorities and activities and take appropriate action to support organizational and associated program goals.
7. Share information and materials with supervisors, team members, and customers in a timely and effective manner.

You have shared information through your meetings with the property managers that have informed the Bureaus on DOC requirements, policy changes, and action items. These meeting were also used as a vehicle for the Bureaus to provide feedback on outstanding issues and/or questions they had concerning personal property. You do coordinate your actions with your team leader and supervisor. You are very productive worker when you are here.

Exhibit  Q   p.  8  12

During the last quarter it was identified that you were consistently late coming to work.   Your time has improved but you are still coming in late.  On several occasion you did not call in until late to inform the office that you would not be coming to work.  The DOC policy on annual leave is to request your leave at least three day in advance.  You are currently in a negative balance on both sick and annual leave. Your current leave balance is at a point that any annual leave that you take will be charged as leave without pay. You can be place on leave restriction for abuse of the leave policy based on your current attendance record.  If you have a problem that I or your Team Leader can assist you with please let us know.

| Employee's Signature | Date | Supervisor Signature | Date |

# SECTION 2 - PERFORMANCE SUMMARY RATING

| Employee's Name | Rating Period |
|---|---|
| Tapha Jackson | Oct 1, 2005 - Sept 30, 2006 |
| **Organization** | |
| OS/OAS/OAO/IMD | |

## ITEM 1.  Scoring

1.  List each performance element and its weight.
2.  Assign a score to each element.  Enter "Unsatisfactory" if element performance does not warrant a score.
3.  Complete total score by summing element scores.  Total score can range from 40 to 100.  If one or more elements are rated "Unsatisfactory," there is no total score and the overall rating is "Unsatisfactory."

| Performance Element | Weight | Score |
|---|---|---|
| 1. Satisfy Customers/Stakeholders | 40% | 25 |
| 2. Provide Policy/Oversight and Program Management | 35% | 21 |
| 3. Organizational Effectiveness | 25% | 15 |
| 4. | | |
| 5. | | |
| 6. | 100% | |
| | TOTAL SCORE | 61 |

## ITEM 2.  Rating and Payouts

[X]  **Eligible**  *(All elements scored in the Eligible range)*

[ ]  **Unsatisfactory**  *(At least one element rated Unsatisfactory)*

|  | [ ] 10 Years | [ ] 5 Years | |
|---|---|---|---|
| Performance Pay Increase Percentage ___0___ | Dollar Amount ___0___ | Bonus Amount ___0___ | |

| Name and Title of Rating Official | Signature | Date |
|---|---|---|
| Zachary R. Williams | *Zachary R. Williams* | 22 Nov 06 |
| Name and Title of Higher Level Supervisor *(If Appropriate)* | Signature | Date |
| Rhonda Jackson Director, OAO    *for* | *Robert D. Canny* | 11/22/2006 |
| Name and Title of Pay Pool Manager | Signature | Date |
| Doug Elznic, Acting Deputy Director, OAS | *Doug F. E.* | 22 NOV 06 |
| Name and Title of Reviewing Official | Signature | Date |

| Employee's Signature *(Signifies evaluation feedback meeting held)* | Employee comments attached? | Date |
|---|---|---|
| Refused to sign. | [ ] YES  [ ] NO | 22 Nov 06 |

FORM CD-541 (3-06)

WP v. 1.5 (10-7-98) AST

Exhibit __Q__ p. __14__

ITEM 5. **Rating Official's End-of-Year Appraisal** *(Includes consideration of attached employee accomplishments)*

☐    1.   Review indicates performance is **Eligible**.

☒    2.   Review indicates performance is **Eligible**; however, there are performance deficiencies, as stated below.

☐    3.   Review indicates performance is **deficient** and a performance improvement plan is needed. Deficiencies are stated below. *(If this block is checked, supervisor must contact the servicing HR office.)*

☐    4.   Review indicates that a PIP has not been successfully completed and performance is rated **Unsatisfactory**.

**Key Achievements, Strengths:** Be specific and relate these to performance elements. List areas where work was done well, and identify the strengths exhibited by the employee during the rating period.

Satisfy Customers/Stakeholders: Ms. Jackson facilitated the set up of Sunflower accounts for Departments within the Office of the Secretary and conducted training on the Personal Property Management System (PPMS). She assisted with the coordination of merging the Office of the Secretary and NOAA versions of Sunflower to develop a Department of Commerce PPMS. Her assistance with preparing the Director of OAS and OAO for the COOP exercise was commendable. She provided copies of the property regulation, listing of the Department of Commerce property assets by Bureaus and the total value of the assets.

Provide Policy/Oversight: Ms. Jackson has worked on updating the DOC Personal Property Policy and Procedure Manual with current regulatory information to include the Sunflower PPMS procedures to standardize the process of managing property within the DOC. Ms. Jackson compiled and updated sensitive items list of the items that would be standard across the DOC. She verified the records of the Secretary's Gift program, the reporting of receipt of Gifts received by the Secretary and Deputy Secretary to GSA and ensured that they were appraised.

Organizational Effectiveness: Ms. Jackson shared information through her meetings with the property managers that informed the Bureaus of DOC requirements, policy changes, and action items. These meetings were also used as a vehicle for the Bureaus to provide feedback on outstanding issues and receive clarification on personal property concerns. She has provided information on the requirement to conduct a 100% Annual Inventory, on the Personal Property Management Manual, Computers for Learning (CFL), and available Personal Property Management training.

**Deficiencies, Areas of Concern:** *(Must be filled in if box 2 or box 3 above is checked):* Be specific and relate these to individual performance elements. Note deficiencies or areas where performance has declined during the rating period.

Ms. Jackson's tardiness and unscheduled leave have affected the mission accomplishment.

**Suggestions/Strategies for Improvement:** List areas in which the employee might enhance performance. Comments can also identify suggestions for career growth and development.

Show up to work on time and schedule your none emergency leave in advance.

FORM CD-541 (3-06)

EXHIBIT   Q   PAGE /5     WP v. 1.5 (10-7-98) AST

EXHIBIT R

DATE:  August 23, 2006

MEMORANDUM FOR:     Taprina Jackson
                    Program Management Specialist
                    Information Management Division
                    Office of Administrative Operations
                    Office of Administrative Services

FROM:               *Zackary Williams*
                    Chief, Information Management Division
                    Office of Administrative Operations
                    Office of Administrative Services

SUBJECT:            Letter of Requirement – Leave Restrictions

This is to inform you that your attendance record is unsatisfactory and has reached the
point where your value to the Office of Administrative Services and the Department of
Commerce is seriously impaired.  In recent months, you have been tardy almost every
day.  In addition, from January 9, 2006 through August 8, 2006, you used 154 hours of
annual leave and 41 hours of leave without pay.  Most of these hours were not scheduled
in advance.

I have discussed my concern over your tardiness and use of leave on a number of
occasions, including April 7, May 9, and August 1, 2006, in an attempt to assist you in
improving your attendance.  However, despite the counseling, your attendance problems
have continued.  While your leave balance have improved in the past six pay periods, you
have been late in arriving at work on many occasions, frequently arriving an hour and a
half or two hours late and sometimes even later.  This has seriously impaired the work of
this office.

Consequently, you will be required to conform to the conditions and restrictions that
appear below, effective upon your receipt of this notice.  I hope these requirements will
assist you in improving your attendance.

1. Hours of Work.  Your hours of work will be 9:00 A.M. to 5:30 P.M., Monday through
Friday, unless you request another fixed schedule.  You are required to send me an e-mail
message when you arrive at work, stating that you have arrived, and an e-mail message
before you depart for the day.

2. Requests for Use of Annual Leave.  You must obtain approval for use of annual leave
from me or, in my absence, from the Director of the Office of Administrative Operations.

    a).  In non-emergency situations, you must have absences approved at least 2 work
day in advance.

Exhibit  R   p. 1

b) I expect you will rarely need to make emergency requests for annual leave (i.e., ones made on the day of absence rather than in advance). However, in those instances when you need emergency leave, you must report your absence to me or, in my absence, the Director of the Office of Administrative Operations no later than 2 hours after your scheduled starting time. You should make the request yourself but it may be made by another person if it is not possible for you to do so. Requests may not be made by leaving voice mail messages unless both I and the Director of the Office of Administrative Operations are not available to talk with you in person. Immediately upon your return to work, you must thoroughly justify your absence in writing to me. You will be carried in an absent without leave (AWOL) status until you furnish the required documentation to me and I approve the absence.

3. <u>Tardiness</u>. If you arrive at work after your established starting time, you will be charged as being AWOL in 1-hour increments unless you have been given approval by me for late arrival.

4. <u>Requests for Leave Without Pay (LWOP)</u>. You will be granted LWOP only if you request it in advance (except in verified cases of emergency) <u>and</u> either you are entitled to it or management exercises its discretion and approves it. If you do not request LWOP in advance, you will be carried in an AWOL status until verification has been made that an emergency did exist.

5. <u>Requests for Advances of Annual Leave and/or Advances of Sick Leave</u>. You will not be advanced annual or sick leave except in cases of extreme emergency.

**Monitoring and Review**

You are expressly cautioned that your attendance, as well as your adherence to the leave restrictions enumerated in this letter, will be closely monitored. If you accrue AWOL charges and/or do not comply with the conditions and restrictions set forth above, management may initiate disciplinary action against you.

Your attendance record will be reviewed at 2-month intervals to determine if the conditions and restrictions set forth above should continue. It is my sincere wish that you take the necessary steps to correct your unsatisfactory attendance record. I will consider removing the conditions and restrictions if you have abided by them, that your attendance record has improved, and that there is sufficient reason to believe your attendance problems will not recur.

Please see me if you have any questions about this letter or management's expectations regarding your attendance record.

**Availability of Confidential Counseling Services**

If you have personal problems that may have contributed to or caused your misconduct, assistance is available from the Department's Employee Assistance Program (EAP). This

Exhibit R p. 2

is a confidential counseling program in which you may voluntarily participate. Initial counseling sessions are conducted during duty hours and are at no cost to you. You will need to request permission to leave the work site to meet with a counselor. If you wish the appointment itself to be confidential, you must request leave. If you are interested in availing yourself of this service, you may contact an EAP Counselor on (202) 482-1569.

**Acknowledgement of Receipt of Letter**

You are requested to acknowledge receipt of this memorandum. By doing so, you will not forfeit any of the rights mentioned in this memorandum nor necessarily indicate agreement with its contents. Your refusal to acknowledge receipt does not affect the validity of this action.

I acknowledge receipt of the original of this document.

_____          _8/23/06_
Signature                                 Date

Exhibit  R  p. 3

EXHIBIT S

| | |
|---|---|
| Subj: | **Fw: Draft performance summary rating** |
| Date: | 2/26/2007 11:49:29 A.M. Eastern Standard Time |
| From: | rhjackson@doc.gov |
| To: | JFDeasel@aol.com |
| CC: | rhjackson@doc.gov |

This is the only email I received from Zack of his proposed ratings for his staff.

—— Forwarded by Rhonda H. Jackson/HCHB/Osnet on 02/26/2007 11:47 AM ——

Zackary Williams/HCHB/Osnet

10/20/2006 03:48 PM

To    Rhonda H. Jackson/HCHB/Osnet

cc

Subject   Draft performance summary rating

Rhonda

```
L  ████████████       89*
S  ███████████        77*
K  ████████████       74*
   Taprina Jackson    59
S  ██████████         84
6  ████████████       74
C  █████████          70
G  ██████████         74
F  ███████████        82**
H  ████████           77
```

*——New hire for less than 120 days or
**——Promoted during the rating period.

Zackary Williams
Office of Administrative Services
Office of Administrative Operations
Chief, Information Management Division
202/482-3607 Office  202/501-2505

Customer service is our #1 Priority

Exhibit S

EXHIBIT T

03/16/2007 11:26 FAX 202 219 8890    OFC ADMIN SERVICES    ☒002

| Name: | **TAPRINA JACKSON** | | | Pay Period: | **19 : Sep 18, 2005 to Oct 1, 2005** |
|---|---|---|---|---|---|
| Time Card Type: | **Regular** | | | Leave Year: | **2005** |
| Status: | **Certified** | | | | |

| Time In Pay: 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days in Pay: 10 |
|---|---|---|---|

| Transaction | Pfx | Sfx | Account | Sep 18 S | Sep 19 M | Sep 20 T | Sep 21 W | Sep 22 T | Sep 23 F | Sep 24 S | Wk 1 | Sep 25 S | Sep 26 M | Sep 27 T | Sep 28 W | Sep 29 T | Sep 30 F | Oct 1 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | | | | | | | | | | 8:30 | 8 | 8 | 8 | | 29:30 | 29:30 |
| | | | Work Time Total | | | | | | | | | | | 8:30 | 8 | 8 | 8 | | 29:30 | 29:30 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Annual Leave | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | | | | | | 8 | 48 |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | | 2:30 | | | | | 2:30 | 2:30 |
| | | | Leave and Other Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 2:30 | | | | | 10:30 | 50:30 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Oct 03 2005 10:00 PM | Built | |
|---|---|---|
| Sep 30 2005 10:13 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 20:00 | 8:00 | 28:00 | 48:00 | -22:00 |
| Sick | 24:30 | 4:00 | 28:30 | 2:30 | 26:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | -- | | | |
| Maximum Available Sick | | -- | | | |
| Use or Lose Leave | | -- | | | |

Exhibit ___I___ p. 1

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hrpp |

Exhibit ⊤ p. 2

03/16/2007 11:27 FAX 202 219 8890     OFC ADMIN SERVICES     @004

| | | |
|---|---|---|
| Name: | TAPRINA JACKSON | Pay Period: 20 : Oct 2, 2005 to Oct 15, 2005 |
| Time Card Type: | Regular | Leave Year: 2005 |
| Status: | Certified | |

Time in Pay: 80:00    Other Time: 0:00    Dollar Transactions: $0.00    Days in Pay: 10

| Transaction | Pfx | Sfx | Account | Oct 2 S | 3 M | 4 T | 5 W | 6 T | 7 F | 8 S | Wk 1 | Oct 9 S | 10 M | 11 T | 12 W | 13 T | 14 F | 15 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| Time In | | | | | | | | | | | | | | | | | | | | |
| Time Out | | | | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | 8 | 8 | 8 | 3:30 | | | | 27:30 | | | 4 | 6 | 8 | | | 17 | 44:30 |
| Work Time Total | | | | 8 | 8 | 8 | 3:30 | | | | 27:30 | | | 4 | 6 | 8 | | | 17 | 44:30 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| Absence Start | | | | | | | | | | | | | | | | | | | | |
| Absence End | | | | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | | | | | | | | 8 | | | | | | 8 | 8 |
| Sick Leave | | | (NFC Stored Account) | | | | | 4:30 | 8 | | 12:30 | | | 4 | 3 | | 8 | | 15 | 27:30 |
| Leave and Other Time Total | | | | | | | | 4:30 | 8 | | 12:30 | | 8 | 4 | 3 | | 8 | | 23 | 35:30 |
| Daily Total | | | | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

### Status History

| | | |
|---|---|---|
| Oct 17 2005 10:00 PM | Built | |
| Oct 16 2005 03:57 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Timekeeper Validated | |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -22:00 | 6:00 | -16:00 | -- | -16:00 |
| Sick | 26:00 | 4:00 | 30:00 | 27:30 | 2:30 |
| Other | | | | 8:00 | |

| Leave Year Projection | |
|---|---|
| Maximum Available Annual | -- |
| Maximum Available Sick | -- |
| Use or Lose Leave | -- |

Exhibit T p. 3

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour off Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 60 |
| Retain Data | History Exception Pr |
| Account Data Code | Store Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit __I__ p. 4

03/1 8/2007 11:27 FAX 202 219 8890    OFC ADMIN SERVICES    @006

| Name: | TAPRINA JACKSON | Pay Period: | 21 : Oct 16, 2005 to Oct 29, 2005 |
|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | 2005 |
| Status: | Certified | | |

Time In Pay: 80:00    Other Time: 0:00    Dollar Transactions: $0.00    Days In Pay: 10

| Transaction | Pfx | Sfx | Account | 16 S | 17 M | 18 T | 19 W | 20 T | 21 F | 22 S | Wk 1 | 23 S | 24 M | 25 T | 26 W | 27 T | 28 F | 29 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | | 8 | 8 | 8 | 8 | | 32 | | 8 | 8 | 8 | | 8 | | 32 | 64 |
| | | | Work Time Total | | | 8 | 8 | 8 | 8 | | 32 | | 8 | 8 | 8 | | 8 | | 32 | 64 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Sick Leave | | | (NFC Stored Account) | | 8 | | | | | | 8 | | | | | 8 | | | 8 | 16 |
| | | | Leave and Other Time Total | | 8 | | | | | | 8 | | | | | 8 | | | 8 | 16 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Oct 31 2005 10:00 PM | Built | |
|---|---|---|
| Oct 29 2005 08:08 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -16:00 | 6:00 | -10:00 | — | -10:00 |
| Sick | 2:30 | 4:00 | 6:30 | 16:00 | -9:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | — | | |
| Maximum Available Sick | | | — | | |
| Use or Lose Leave | | | — | | |

Exhibit T p. 5

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit __I__ p. __6__

| Name: | **TAPRINA JACKSON** | Pay Period: | **22 : Oct 30, 2005 to Nov 12, 2005** |
|---|---|---|---|
| Time Card Type: | Regular | Leave Year: | **2005** |
| Status: | Certified | | |

Time In Pay: **80:00**      Other Time: 0:00      Dollar Transactions: $0.00      Days In Pay: 10

|  |  |  |  | Oct | | Nov | | | | | | Nov | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Pfx | Sfx | Account | 30 | 31 | 1 | 2 | 3 | 4 | 5 | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | |
|  |  |  |  | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | | | 32 | 72 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | | | 32 | 72 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | | | | | | | | | | | 8 | | 8 | 8 |
| | | | Leave and Other Time Total | | | | | | | | | | | | | 8 | | 8 | 8 |
| | | | **Daily Total** | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | | |
|---|---|---|---|
| Nov 14 2005 10:00 PM | Built | | |
| Nov 10 2005 03:21 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Timekeeper Validated | | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -10:00 | 6:00 | -4:00 | -- | -4:00 |
| Sick | -9:30 | 4:00 | -5:30 | -- | -5:30 |
| Other | | | | 8:00 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit ___I___ p. 7

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hripp |

Exhibit  T  p. 8

| Name: | **TAPRINA JACKSON** | Pay Period: | **23 : Nov 13, 2005 to Nov 26, 2005** |
|---|---|---|---|
| Time Card Type: | Correction | Leave Year: | **2005** |
| Status: | Certified | | |

| Time In Pay: | 68:45 | Other Time: 11:15 | | Dollar Transactions: $0.00 | | Days In Pay: 9 |

| Transaction | Pfx | Sfx | Account | Nov 13 S | Nov 14 M | Nov 15 T | Nov 16 W | Nov 17 T | Nov 18 F | Nov 19 S | Wk 1 | Nov 20 S | Nov 21 M | Nov 22 T | Nov 23 W | Nov 24 T | Nov 25 F | Nov 26 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | ✓ | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | | | 32 | | | | | | | | | 32 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | | | 32 | | | | | | | | | 32 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | | | | | | | | | | | 8 | | | 8 | 8 |
| Annual Leave | | | (NFC Stored Account) | | | | | 8 | | 8 | | 8 | 8 | 4:45 | | | | 20:45 | 28:45 |
| LWOP | | | (NFC Stored Account) | | | | | | | | | | | 3:15 | | 8 | | 11:15 | 11:15 |
| | | | Leave and Other Time Total | | | | | 8 | | 8 | | 8 | 8 | 8 | 8 | 8 | | 40 | 48 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

A/L 4.45 hrs, 4:00 Sk. hrs transferred, advanced A/L 22 hrs max 2005.

| **Status History** | | | |
|---|---|---|---|
| Dec 12 2005 10:00 PM | Built | | |
| Dec 07 2005 07:02 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Timekeeper Validated | | |
| | Correction Record | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 0:45 | 8:00 | 6:45 | 28:45 | -22:00 |
| Sick | -1:30 | 4:00 | 2:30 | -- | 2:30 |
| LWOP | -- | | | 11:15 | 11:15 |
| Other | | | | 8:00 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit  I  p.  9

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | CS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | None |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 960125000000 |
| Services Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit T p. 10

| | | |
|---|---|---|
| Name: | **TAPRINA JACKSON** | Pay Period:  **24:  Nov 27, 2005 to Dec 10, 2005** |
| Time  Card Type: | Correction | Leave Year:  **2005** |
| Status: | Certified | |

| Time  In Pay: **74:00** | Other Time: **6:00** | Dollar Transactions: **$0.00** | Days in Pay: **10** |
|---|---|---|---|

| Transaction | Pfx | Sfx | Account | Nov | | | | Dec | | | | Dec | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 27 | 28 | 29 | 30 | 1 | 2 | 3 | | 4 | 5 | 6 | 7 | 8 | 9 | 10 | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | | | 32 | 72 |
| | | | Work Time Total | | 8 | 5 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | | | 32 | 72 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | | | | | | | | | | | | 2 | | 2 | 2 |
| LWOP | | | (NFC Stored Account) | | | | | | | | | | | | | | 6 | | 6 | 6 |
| | | | Leave and Other Time Total | | | | | | | | | | | | | | 8 | | 8 | 8 |
| | | | **Daily Total** | | 8 | 8 | 5 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | | |
|---|---|---|---|
| Jan 23 2006 10:00 PM | Built | | |
| Jan 20 2006 07:48 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Timekeeper Validated | | |
| | Correction Record | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -22:00 | 6:00 | -16:00 | -- | -16:00 |
| Sick | 2:30 | 4:00 | 6:30 | -- | 6:30 |
| LWOP | 11:15 | | | 6:00 | 17:15 |
| Other | | | | 2:00 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

23 of 80

Exhibit  I   p.  1)

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | None |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 990125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 8 hr/pp |

Exhibit __I__ p. __12__

| Name: | **TAPRINA JACKSON** | | | | Pay Period | 25 : Dec 11, 2005 to Dec 24, 2005 |
| Time Card Type: | **Regular** | | | | Leave Year: | **2005** |
| Status: | **Certified** | | | | | |

| Time In Pay: | **80:00** | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| | | | | Dec | | | | | | Dec | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 11 | 12 | 13 | 14 | 15 | 16 | 17 | | 18 | 19 | 20 | 21 | 22 | 23 | 24 | | |
| Transaction | Pfx | Sfx | Account | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | 8 | 8 | 8 | 8 | 8 | | | 40 | 8 | 8 | | 8 | 8 | | | 32 | 72 |
| | | | Work Time Total | 8 | 8 | 8 | 8 | 8 | | | 40 | 8 | 8 | | 8 | 8 | | | 32 | 72 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | | | 8 | | | | 8 | 8 |
| | | | Leave and Other Time Total | | | | | | | | | | | | 8 | | | | 8 | 8 |
| | | | **Daily Total** | 8 | 8 | 8 | 8 | 8 | | | 40 | 8 | 8 | | 8 | 8 | | | 40 | 80 |

| Remarks To Payroll |
|---|
| |
| |

| Status History | | | |
|---|---|---|---|
| Dec 27 2005 12:00 PM | Built | | |
| Dec 22 2005 12:53 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Timekeeper Validated | | |
| | New Record Created | | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -16:00 | 10:00 | -6:00 | -- | -6:00 |
| Sick | 6:30 | 4:00 | 10:30 | 8:00 | 2:30 |
| LWOP | 17:15 | | | -- | 17:15 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit T p. 13

03/16/2007 11:31 FAX 202 219 8890          OFC ADMIN SERVICES                    ☑015

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hrpp |

Exhibit _T_  p._14_

03/16/2007 11:31 FAX 202 219 8890      OFC ADMIN SERVICES      ☑016

| Name: | TAPRINA JACKSON | | | | | | Pay Period: | 26 : Dec 25, 2005 to Jan 7, 2006 |
|---|---|---|---|---|---|---|---|---|
| Time Card Type: | Correction | | | | | | Leave Year: | 2005 |
| Status: | Certified | | | | | | | |

| Time In Pay: 64:00 | | Other Time: 16:00 | | | Dollar Transactions: $0.00 | | | | Days In Pay: 8 | |

| | | | | Dec | | | | | | | | Jan | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Pfx | Sfx | Account | 25 | 26 | 27 | 28 | 29 | 30 | 31 | Wk 1 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | Wk 2 | Total |
| | | | | S | M | T | W | T | F | S | | S | M | T | W | T | F | S | | |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | | | | | 16 | | 8 | 8 | 8 | 8 | | | 32 | 48 |
| | | | Work Time Total | | 8 | 8 | | | | | 16 | | 8 | 8 | 8 | 8 | | | 32 | 48 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | | | | | | | | 8 | | | | | 8 | 8 |
| LWOP | | | (NFC Stored Account) | | | | 8 | 8 | | 16 | | | | | | | | | 16 |
| Sick Leave | | | (NFC Stored Account) | | | 8 | | | | 8 | | | | | | | | | 8 |
| | | | Leave and Other Time Total | | | 8 | 8 | 8 | | 24 | | 8 | | | | | 8 | 32 |
| | | | Daily Total | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Jan 23 2006 10:00 PM | Built | |
|---|---|---|
| Jan 20 2006 07:47 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Timekeeper Validated | |
| | Correction Record | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -8:00 | 8:00 | -- | -- | -- |
| Sick | 2:30 | 4:00 | 6:30 | 8:00 | -1:30 |
| LWOP | 17:15 | | | 16:00 | 33:15 |
| Other | | | | 8:00 | |

| **Leave Year Projection** | |
|---|---|
| Maximum Available Annual | -- |
| Maximum Available Sick | -- |
| Use or Lose Leave | -- |

Exhibit I p. 15

03/16/2007 11:32 FAX 202 219 8890          OFC ADMIN SERVICES                    ☒017

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM - 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | None |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit __T__ p. __16__

03/16/2007 11:32 FAX 202 219 8890          OFC ADMIN SERVICES                    ☒018

| Name: | **TAPRINA JACKSON** | | Pay Period: | **01 : Jan 8, 2006 to Jan 21, 2006** |
| Time Card Type: | **Regular** | | Leave Year: | **2006** |
| Status: | **Certified** | | | |

| Time in Pay: | **80:00** | Other Time: 0:00 | | Dollar Transactions: $0.00 | | Days in Pay: **10** |

| Transaction | Pfx | Sfx | Account | Jan 8 S | 9 M | 10 T | 11 W | 12 T | 13 F | 14 S | Wk 1 | Jan 15 S | 16 M | 17 T | 18 W | 19 T | 20 F | 21 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| Time In | | | | | | | | | | | | | | | | | | | | |
| Time Out | | | | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | | | | | | | | 40 |
| Work Time Total | | | | | 8 | 8 | 8 | 8 | 8 | | 40 | | | | | | | | | 40 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| Absence Start | | | | | | | | | | | | | | | | | | | | |
| Absence End | | | | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | | | | | | | 8 | | | | | | 8 | 8 | |
| Annual Leave | | | (NFC Stored Account) | | | | | | | | | | 8 | 8 | 8 | 8 | | 32 | 32 | |
| Leave and Other Time Total | | | | | | | | | | | | 8 | 8 | 8 | 8 | 8 | | 40 | 40 | |
| **Daily Total** | | | | | 8 | 8 | 8 | 8 | 8 | | 40 | 8 | 8 | 8 | 8 | 8 | | 40 | 80 | |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | |
|---|---|---|
| Jan 23 2006 10:00 PM | Built | |
| Jan 20 2006 10:38 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Timekeeper Validated | |
| | New Record Created | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -- | 8:00 | 8:00 | 32:00 | -28:00 |
| Sick | -1:30 | 4:00 | 2:30 | -- | 2:30 |
| Other | | | | 8:00 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit I p. 17

03/16/2007 11:32 FAX 202 219 8890        OFC ADMIN SERVICES                        @019

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | O6 |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 960125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit I p. 18

03/16/2007 11:33 FAX 202 219 8890          OFC ADMIN SERVICES                    @020

| Name: | **TAPRINA JACKSON** | Pay Period: | **02 : Jan 22, 2006 to Feb 4, 2006** |
|---|---|---|---|
| Time Card Type: | **Regular** | Leave Year: | **2006** |
| Status: | **Certified** | | |

| Time in Pay: | **80:00** | Other Time: 0:00 | Dollar Transactions: $0.00 | Days in Pay: 10 |
|---|---|---|---|---|

|  |  |  |  | Jan | | | | | | | | Jan | | | Feb | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Ptx | Stx | Account | 22 | 23 | 24 | 25 | 26 | 27 | 28 | | 29 | 30 | 31 | 1 | 2 | 3 | 4 | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | | | | | | | | | 8 | 8 | 8 | 8 | 4 | | 36 | 36 |
| | | | Work Time Total | | | | | | | | | | 8 | 8 | 8 | 8 | 4 | | 36 | 36 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Annual Leave | | | (NFC Stored Account) | 8 | 8 | 8 | 8 | 8 | | 40 | | | | | | 4 | | 4 | 44 |
| | | | Leave and Other Time Total | 8 | 8 | 8 | 8 | 8 | | 40 | | | | | | 4 | | 4 | 44 |
| | | | Daily Total | 8 | 8 | 8 | 8 | 8 | | 40 | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |

| **Status History** | | | |
|---|---|---|---|
| Feb 06 2006 10:00 PM | Built | | |
| Feb 06 2006 12:24 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -26:00 | 8:00 | -20:00 | 44:00 | -64:00 |
| Sick | 2:30 | 4:00 | 6:30 | -- | 6:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit  I  p. 19

03/16/2007 11:33 FAX 202 219 8890          OFC ADMIN SERVICES                    ☑021

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | B80125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 8 hr/pp |

Exhibit _I_ p. _20_

| Name: | **TAPRINA JACKSON** | | | Pay Period: | 03 : Feb 5, 2006 to Feb 18, 2006 |
| Time Card Type: | **Regular** | | | Leave Year: | **2006** |
| Status: | **Certified** | | | | |

| Time In Pay: | 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| Transaction | Ptx | Sfx | Account | Feb 5 S | 6 M | 7 T | 8 W | 9 T | 10 F | 11 S | Wk 1 | Feb 12 S | 13 M | 14 T | 15 W | 16 T | 17 F | 18 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| Time In | | | | | | | | | | | | | | | | | | | | |
| Time Out | | | | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | | | | 24 | | 8 | | | | | | 8 | 32 |
| Work Time Total | | | | | 8 | 8 | 8 | | | | 24 | | 8 | | | | | | 8 | 32 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| Absence Start | | | | | | | | | | | | | | | | | | | | |
| Absence End | | | | | | | | | | | | | | | | | | | | |
| Family Friendly Sick Lv | 62 | | (NFC Stored Account) | | | | | 8 | 8 | | 16 | | | | | | | | | 16 |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | | 8 | 8 | 8 | 8 | | 32 | 32 |
| Leave and Other Time Total | | | | | | | | 8 | 8 | | 16 | | | 8 | 8 | 8 | 8 | | 32 | 48 |
| **Daily Total** | | | | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Feb 21 2006 10:00 PM | Built | |
| Feb 17 2006 11:35 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Timekeeper Validated | |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -54:00 | 6:00 | -58:00 | -- | -58:00 |
| Sick | 6:30 | 4:00 | 10:30 | 48:00 | -37:30 |
| Family Friendly Sick | -- | | | 16:00 | 16:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit __I__ p. 21

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980126000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 8 hr/pp |

Exhibit __T__ p. 22

03/16 /2007 11:34 FAX 202 219 8890　　　OFC ADMIN SERVICES　　　　　　　☒024

| Name: | TAPRINA JACKSON | | Pay Period: | 04 : Feb 19, 2006 to Mar 4, 2006 |
|---|---|---|---|---|
| Time Card Type: | Regular | | Leave Year: | 2006 |
| Status: | Certified | | | |

| Time in Pay: 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days in Pay: 10 |
|---|---|---|---|

| Transaction | Pfx | Sfx | Account | Feb | | | | | | | Feb | | | Mar | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 26 | 27 | 28 | 1 | 2 | 3 | 4 | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | | | 32 | | 8 | 8 | 8 | 5 | 4 | | | 33 | 65 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | | | 32 | | 8 | 8 | 8 | 5 | 4 | | | 33 | 65 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | 8 | | | | | | 8 | | | | | | | | | 8 |
| Annual Leave | | | (NFC Stored Account) | | | | | | | | | | | | | 3 | | | | 3 | 3 |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | | | | | 4 | | | 4 | 4 |
| | | | Leave and Other Time Total | | 8 | | | | | | 8 | | | | | 3 | 4 | | | 7 | 15 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |

| **Status History** | | | |
|---|---|---|---|
| Mar 06 2006 10:00 PM | Built | | |
| Mar 06 2006 10:58 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -55:00 | 6:00 | -52:00 | 3:00 | -55:00 |
| Sick | -37:30 | 4:00 | -33:30 | 4:00 | -37:30 |
| Other | | | | 8:00 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit ___ p. 23

03/16/2007 11:35 FAX 202 219 8890      OFC ADMIN SERVICES                    ☒025

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 60 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit _I_ p. _24_

| Name: | **TAPRINA JACKSON** | | Pay Period: | 05 : Mar 5, 2006 to Mar 18, 2006 |
|---|---|---|---|---|
| Time Card Type: | **Regular** | | Leave Year: | **2006** |
| Status: | **Certified** | | | |

| Time In Pay: 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |
|---|---|---|---|

| Transaction | Pfx | Sfx | Account | Mar 5 S | 6 M | 7 T | 8 W | 9 T | 10 F | 11 S | Wk 1 | Mar 12 S | 13 M | 14 T | 15 W | 16 T | 17 F | 18 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 38 | 78 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 38 | 78 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | 2 | | | | | | 2 | 2 |
| | | | Leave and Other Time Total | | | | | | | | | | 2 | | | | | | 2 | 2 |
| | | | **Daily Total** | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| Remarks To Payroll |
|---|
| |

| Status History | | | |
|---|---|---|---|
| Mar 20 2006 10:00 PM | Built | | |
| Mar 17 2006 02:11 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -55:00 | 6:00 | -49:00 | -- | -49:00 |
| Sick | -37:30 | 4:00 | -33:30 | 2:00 | -35:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | -- | | | |
| Maximum Available Sick | | -- | | | |
| Use or Lose Leave | | -- | | | |

Exhibit __I__ p. 25

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit ___ p. ___ 26

03/16/2007 11:36 FAX 202 219 8890        OFC ADMIN SERVICES                    Ø028

| Name : | TAPRINA JACKSON | Pay Period: | 06 : Mar 19, 2006 to Apr 1, 2006 |
| Time Card Type: | Regular | Leave Year: | 2006 |
| Status : | Certified | | |

| Time in Pay: | 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| | | | | Mar | | | | | | | Mar | | | Apr | | | | |
| Transaction | Pfx | Sfx | Account | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | 26 | 27 | 28 | 29 | 30 | 31 | 1 | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | | 8 | | 29 | 69 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | | 8 | | 29 | 69 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | | | | 3 | 8 | | 11 | 11 |
| | | | Leave and Other Time Total | | | | | | | | | | | | | 3 | 8 | | 11 | 11 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
| |

| **Status History** | | | |
| Apr 03 2006 10:00 PM | Built | | |
| Mar 31 2006 04:41 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
| Annual | -49:00 | 6:00 | -43:00 | -- | -43:00 |
| Sick | -35:30 | 4:00 | -31:30 | 11:00 | -42:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit __T__ p. 27

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit T  p. 28

| Name: | TAPRINA JACKSON | | | | | | | | Pay Period: 07 : Apr 2, 2006 to Apr 15, 2006 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Card Type: | Regular | | | | | | | | Leave Year: 2006 | | | | | | | | |
| Status: | Certified | | | | | | | | | | | | | | | | |

| Time in Pay: 80:00 | | | | Other Time: 0:00 | | | | Dollar Transactions: $0.00 | | | | | Days in Pay: 10 | | | | |

| | | | | | Apr | | | | | | | Apr | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Pfx | Sfx | Account | 2 | 3 | 4 | 5 | 6 | 7 | 8 | | 9 | 10 | 11 | 12 | 13 | 14 | 15 | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| Time In | | | | | | | | | | | | | | | | | | | | |
| Time Out | | | | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | | | 8 | 8 | 8 | | 24 | | 8 | 8 | 8 | 8 | 8 | | 40 | 64 |
| | | | Work Time Total | | | | 8 | 8 | 8 | | 24 | | 8 | 8 | 8 | 8 | 8 | | 40 | 64 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| Absence Start | | | | | | | | | | | | | | | | | | | | |
| Absence End | | | | | | | | | | | | | | | | | | | | |
| Sick Leave | | | (NFC Stored Account) | | 8 | 8 | | | | | 16 | | | | | | | | | 16 |
| | | | Leave and Other Time Total | | 8 | 8 | | | | | 16 | | | | | | | | | 16 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |

| **Status History** | | |
|---|---|---|
| Apr 17 2006 10:00 PM | Built | |
| Apr 17 2006 12:11 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -43:00 | 6:00 | -37:00 | -- | -37:00 |
| Sick | -42:30 | 4:00 | -38:30 | 16:00 | -54:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit T p. 29

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 960125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit I p. 30

03/16/2007 11:38 FAX 202 219 8890          OFC ADMIN SERVICES                    ☑032

| Name: | **TAPRINA JACKSON** | Pay Period: | 08 : Apr 16, 2006 to Apr 29, 2006 |
| Time Card Type: | Regular | Leave Year: | 2006 |
| Status: | Certified | | |

| Time In Pay: | 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| Transaction | Pfx | Sfx | Account | 16 | 17 | 18 | 19 | 20 | 21 | 22 | | 23 | 24 | 25 | 26 | 27 | 28 | 29 | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | | | | | 16 | 56 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | | | | | 16 | 56 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Annual Leave | | | (NFC Stored Account) | | | | | | | | | | | 8 | 8 | 8 | | 24 | 24 |
| | | | Leave and Other Time Total | | | | | | | | | | | 8 | 8 | 8 | | 24 | 24 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| Remarks To Payroll |
|---|
| |

| Status History | | | |
|---|---|---|---|
| May 01 2006 10:00 PM | Built | | |
| Apr 29 2006 12:48 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Timekeeper Validated | | |
| | New Record Created | | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -37:00 | 6:00 | -31:00 | 24:00 | -55:00 |
| Sick | -54:30 | 4:00 | -50:30 | -- | -50:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | ~ | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | ~ | | |

Exhibit I - p. 31

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Time-keeper | 50 |
| Retain Date | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000090 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit ___T___ p. 32

03/15/2007 11:39 FAX 202 219 8890          OFC ADMIN SERVICES                    ☒034

| Name: | **TAPRINA JACKSON** | | | | | | | | Pay Period: | **09 : Apr 30, 2006 to May 13, 2006** | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Card Type: | **Regular** | | | | | | | | Leave Year: | **2006** | | | | | | |
| Status: | **Certified** | | | | | | | | | | | | | | | |

| Time In Pay: **80:00** | | | | Other Time: **0:00** | | | | | Dollar Transactions: **$0.00** | | | | Days In Pay: **10** | | | |

| Transaction | Pfx | Sfx | Account | Apr | | | | May | | | | May | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 30 | 1 | 2 | 3 | 4 | 5 | 6 | | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | | | | | | | | | 8 | 8 | 8 | 4 | 8 | | | 36 | 36 |
| | | | Work Time Total | | | | | | | | | | 8 | 8 | 8 | 4 | 8 | | | 36 | 36 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | | |
| Annual Leave | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | | | | 4 | | | | 4 | 44 |
| | | | Leave and Other Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | | | | 4 | | | | 4 | 44 |
| | | | **Daily Total** | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | |
|---|---|---|
| May 15 2006 10:00 PM | Built | |
| May 15 2006 03:39 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -55:00 | 6:00 | -49:00 | 44:00 | -93:00 |
| Sick | -50:30 | 4:00 | -46:30 | -- | -46:30 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | | -- | |
| Maximum Available Sick | | | | -- | |
| Use or Lose Leave | | | | -- | |

Exhibit  I  p. 33

03/16/2007 11:39 FAX 202 219 8890          OFC ADMIN SERVICES                    ⌀035

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 80 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 960125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit ___I___ p._34_

03/1 6/2007 11:40 FAX 202 219 8890        OFC ADMIN SERVICES                    ☑ 036

| Name: | **TAPRINA JACKSON** | Pay Period: | 10 : May 14, 2006 to May 27, 2006 |
|---|---|---|---|
| Time Card Type: | Correction | Leave Year: | 2006 |
| Status: | Certified | | |

| Time In Pay: | 63:00 | Other Time: 17:00 | Dollar Transactions: $0.00 | Days In Pay: 8 |
|---|---|---|---|---|

| | | | | May | | | | | | | | | May | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Pfx | Sfx | Account | 14 | 15 | 16 | 17 | 18 | 19 | 20 | | 21 | 22 | 23 | 24 | 25 | 26 | 27 | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | 5:30 | 8 | | | 8 | | | 21:30 | | 8 | 8 | 8 | | 5:30 | | 29:30 | 51 |
| | | | Work Time Total | 5:30 | 8 | | | 8 | | | 21:30 | | 8 | 8 | 8 | | 8:30 | | 29:30 | 51 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Annual Leave | | | (NFC Stored Account) | | | | 7 | | | | 7 | | | | | | | | | 7 |
| LWOP | | | (NFC Stored Account) | | | | 1 | 8 | | | 9 | | | | 8 | | 8 | | 8 | 17 |
| Sick Leave | | | (NFC Stored Account) | 2:30 | | | | | | | 2:30 | | | | | 2:30 | | 2:30 | 5 |
| | | | Leave and Other Time Total | 2:30 | | | 8 | 8 | | | 18:30 | | | | 8 | 2:30 | | 10:30 | 29 |
| | | | Daily Total | 8 | 8 | | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Jun 12 2006 10:00 PM | Built | |
|---|---|---|
| Jun 09 2006 03:47 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Timekeeper Validated | |
| | Correction Record | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -93:00 | 6:00 | -87:00 | 7:00 | -94:00 |
| Sick | -46:30 | 4:00 | -42:30 | 5:00 | -47:30 |
| LWOP | -- | | | 17:00 | 17:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | | -- | |
| Maximum Available Sick | | | | -- | |
| Use or Lose Leave | | | | -- | |

47 of 80

Exhibit _T_ p. _36_

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | None |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit  I  p. 36

03/16/2007 11:41 FAX 202 219 8890          OFC ADMIN SERVICES                    Ø038

| Name: | **TAPRINA JACKSON** | | | | Pay Period: | **11 : May 28, 2006 to Jun 10, 2006** |
|---|---|---|---|---|---|---|

| Time Card Type: | **Regular** |
|---|---|
| Status: | **Certified** |

Leave Year: **2006**

| Time in Pay: 72:00 | Other Time: 8:00 | Dollar Transactions: $0.00 | Days in Pay: 9 |
|---|---|---|---|

| Transaction | Pfx | Sfx | Account | May | | | | Jun | | | | | Jun | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 28 | 29 | 30 | 31 | 1 | 2 | 3 | Wk 1 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | Wk 2 | Total |
| | | | | S | M | T | W | T | F | S | | S | M | T | W | T | F | S | | |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | | | 32 | | 8 | 8 | 8 | 8 | | | | 32 | 64 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | | | 32 | | 8 | 8 | 8 | 8 | | | | 32 | 64 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | 8 | | | | | | | 8 | | | | | | | | | | 8 |
| LWOP | | | (NFC Stored Account) | | | | | | | | | | | | | 8 | | 8 | 8 |
| | | | Leave and Other Time Total | 8 | | | | | | | 8 | | | | | | | 8 | 8 | 16 |
| | | | Daily Total | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | | | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |

| **Status History** | | | |
|---|---|---|---|
| Jun 12 2006 10:00 PM | Built | | |
| Jun 09 2006 03:47 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Timekeeper Validated | | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -94:00 | 6:00 | -88:00 | -- | -88:00 |
| Sick | -47:30 | 4:00 | -43:30 | -- | -43:30 |
| LWOP | 17:00 | | | 8:00 | 25:00 |
| Other | | | | 8:00 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit _T_ p. 31

| T&A Profile | |
| --- | --- |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000060 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit I p. 38

03/16/2007 11:43 FAX 202 219 8890        OFC ADMIN SERVICES        @040

| Name: | TAPRINA JACKSON | | Pay Period: | 12 : Jun 11, 2006 to Jun 24, 2006 |
|---|---|---|---|---|
| Time Card Type: | Regular | | Leave Year: | 2006 |
| Status: | Certified | | | |

| Time in Pay: | 80:00 | Other Time: 0:00 | | Dollar Transactions: $0.00 | | Days In Pay: 10 |
|---|---|---|---|---|---|---|

| Transaction | Pfx | Sfx | Account | Jun 11 S | 12 M | 13 T | 14 W | 15 T | 16 F | 17 S | | 18 S | 19 M | 20 T | 21 W | 22 T | 23 F | 24 S | Wk 1 | | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | 8 | 8 | 8 | 8 | 8 | | | 40 | 8 | 8 | 8 | 8 | 8 | | | | 40 | | 80 |
| | | | Work Time Total | 8 | 8 | 8 | 8 | 8 | | | 40 | 8 | 8 | 8 | 8 | 8 | | | | 40 | | 80 |
| | | | **Daily Total** | 8 | 8 | 8 | 8 | 8 | | | 40 | 8 | 8 | 8 | 8 | 8 | | | | 40 | | 80 |

**Remarks To Payroll**

**Status History**

| Jun 28 2006 10:00 PM | Built | |
|---|---|---|
| Jun 23 2006 03:44 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -88:00 | 6:00 | -82:00 | -- | -82:00 |
| Sick | -43:30 | 4:00 | -39:30 | -- | -39:30 |
| LWOP | 25:00 | | | -- | 25:00 |

| Leave Year Projection | |
|---|---|
| Maximum Available Annual | -- |
| Maximum Available Sick | -- |
| Use or Lose Leave | -- |

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | CS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |

Exhibit _I_ p. 39

| Retain Data | History Exception Pr |
|---|---|
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit T p. 40

03/16/2007 11:44 FAX 202 219 8590          OFC ADMIN SERVICES                    @042

| Name: | **TAPRINA JACKSON** | Pay Period: | **13 : Jun 25, 2006 to Jul 8, 2006** |
| Time Card Type: | **Regular** | Leave Year: | **2006** |
| Status: | **Certified** | | |

| Time In Pay: | **80:00** | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |

| | | | Jun | | | | | | | | Jul | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 25 | 26 | 27 | 28 | 29 | 30 | 1 | | 2 | 3 | 4 | 5 | 6 | 7 | 8 | | |
| Transaction | Pfx | Sfx | Account | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | 2:30 | 8 | 8 | 8 | 8 | | | 34:30 | | 8 | | 8 | 8 | 8 | | 32 | 66:30 |
| | | | Work Time Total | 2:30 | 8 | 8 | 8 | 8 | | | 34:30 | | 8 | | 8 | 8 | 8 | | 32 | 66:30 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | 5:30 | | | | | | | 5:30 | | 8 | | | | | | 8 | 13:30 |
| | | | Leave and Other Time Total | 5:30 | | | | | | | 5:30 | | 8 | | | | | | 8 | 13:30 |
| | | | Daily Total | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |

| **Status History** | | | |
|---|---|---|---|
| Jul 10 2006 10:00 PM | Built | | |
| Jul 07 2006 02:52 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -82:00 | 6:00 | -76:00 | -- | -76:00 |
| Sick | -39:30 | 4:00 | -35:30 | -- | -35:30 |
| LWOP | 25:00 | | | -- | 25:00 |
| Other | | | | 13:30 | |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | | -- | |
| Maximum Available Sick | | | | -- | |
| Use or Lose Leave | | | | -- | |

53 of 80

Exhibit T p. 41

03/16/2007 11:44 FAX 202 219 8890          OFC ADMIN SERVICES                    ☒043

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 8 hr/pp |

Exhibit T p. 42

03/16/2007 11:45 FAX 202 219 8890        OFC ADMIN SERVICES        @044

| Name: | **TAPRINA JACKSON** | | Pay Period: | 14 : Jul 9, 2006 to Jul 22, 2006 |
| Time Card Type: | **Regular** | | Leave Year: | **2006** |
| Status: | **Certified** | | | |

| Time In Pay: **80:00** | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: **10** |

| | | | | Jul | | | | | | | | Jul | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Pfx | Sfx | Account | 9 | 10 | 11 | 12 | 13 | 14 | 15 | | 16 | 17 | 18 | 19 | 20 | 21 | 22 | | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |
| | | | **Daily Total** | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | | |
|---|---|---|---|
| Jul 24 2006 10:00 PM | Built | | |
| Jul 20 2006 09:13 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -76:00 | 6:00 | -70:00 | -- | -70:00 |
| Sick | -35:30 | 4:00 | -31:30 | -- | -31:30 |
| LWOP | 26:00 | | | -- | 26:00 |

| **Leave Year Projection** | |
|---|---|
| Maximum Available Annual | -- |
| Maximum Available Sick | -- |
| Use or Lose Leave | -- |

| **T&A Profile** | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |

Exhibit T p. 43

| Retain Data | History Exception Pr |
| --- | --- |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 850125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hripp |

Exhibit __I__ p. __44__

03/16/2007 11:46 FAX 202 219 8890          OFC ADMIN SERVICES                     ☑046

| Name: | **TAPRINA JACKSON** | | | | | | | | Pay Period: | **15 : Jul 23, 2006 to Aug 5, 2006** | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Time Card Type: | **Regular** | | | | | | | | Leave Year: | **2006** | | | | | | |
| Status: | **Certified** | | | | | | | | | | | | | | | |

| Time in Pay: | 80:00 | | Other Time: 0:00 | | | Dollar Transactions: $0.00 | | | Days in Pay: 10 |

| | | | | Jul | | | | | | | | Jul | | | Aug | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Transaction | Pfx | Sfx | Account | 23 | 24 | 25 | 26 | 27 | 28 | 29 | | 30 | 31 | 1 | 2 | 3 | 4 | 5 | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | | |
|---|---|---|---|
| Aug 07 2006 10:00 PM | Built | | |
| Aug 07 2006 11:47 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -70:00 | 6:00 | -64:00 | -- | -64:00 |
| Sick | -31:30 | 4:00 | -27:30 | -- | -27:30 |
| LWOP | 25:00 | | | -- | 25:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

| **T&A Profile** | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |

Exhibit _I_ p. 45

| Retain Date | History Exception Pr |
|---|---|
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit __I__ p. 46

03/16/2007 11:47 FAX 202 219 8890        OFC ADMIN SERVICES                    @048

| Name: | **TAPRINA JACKSON** | | Pay Period: | **16 : Aug 6, 2006 to Aug 19, 2006** |
| Time Card Type: | **Regular** | | Leave Year: | **2006** |
| Status: | **Certified** | | | |

| Time in Pay: | 80:00 | Other Time: 0:00 | Dollar Transactions: $0.00 | Days in Pay: 10 |

| Transaction | Pfx | Sfx | Account | Aug | | | | | | | Aug | | | | | | | |
| | | | | 6 | 7 | 8 | 9 | 10 | 11 | 12 | | 13 | 14 | 15 | 16 | 17 | 18 | 19 | |
| | | | | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | | 40 | 80 |
| | | | Work Time Total | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | | 40 | 80 |
| | | | Daily Total | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Aug 22 2006 10:00 PM | Built | | |
| Aug 22 2006 03:41 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | JACKSON, TAPRINA (TJACKSON) | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
| Annual | -64:30 | 6:00 | -58:00 | -- | -58:00 |
| Sick | -27:30 | 4:00 | -23:30 | -- | -23:30 |
| LWOP | 25:00 | | 25:00 | -- | 25:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

| T&A Profile | |
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |

Exhibit . I p. 41

03/16/2007 11:48 FAX 202 219 8890        OFC ADMIN SERVICES        ☒049

| Retain Data | History Exception Pr |
| --- | --- |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit I p. 48

| Name: | **TAPRINA JACKSON** | | | Pay Period: | 17 : Aug 20, 2006 to Sep 2, 2006 |
| Time Card Type: | Regular | | | Leave Year: | 2006 |
| Status: | Certified | | | | |

| Time in Pay: | 80:00 | Other Time: 0:00 | Dollar Transactions. $0.00 | Days in Pay: 10 |

| | | | Aug | | | | | | | | Aug | | | | Sep | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 20 | 21 | 22 | 23 | 24 | 25 | 26 | | 27 | 28 | 29 | 30 | 31 | 1 | 2 | | |
| Transaction | Ptx Bfx | Account | S | M | T | W | T | F | S | Wk 1 | S | M | T | W | T | F | S | Wk 2 | Total |
| **Work Time** | | | | | | | | | | | | | | | | | | | |
| | Time In | | | | | | | | | | | | | | | | | | |
| | Time Out | | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |
| | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |
| | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

| **Remarks To Payroll** |
|---|
| |
| |

| **Status History** | | | |
|---|---|---|---|
| Sep 05 2006 10:00 PM | Built | | |
| Sep 05 2006 11:55 AM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) | |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) | |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) | |
| | New Record Created | | |

| **Leave Data** | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -58:00 | 6:00 | -52:00 | -- | -52:00 |
| Sick | -23:30 | 4:00 | -19:30 | -- | -19:30 |
| LWOP | 25:00 | | | -- | 25:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | | -- | |
| Maximum Available Sick | | | | -- | |
| Use or Lose Leave | | | | -- | |

| **T&A Profile** | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 6:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |

Exhibit T p. 49

| Retair1 Data | History Exception Pr |
| --- | --- |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit ___I___ p. 5o

03/16/2007 11:48 FAX 202 219 8890          OFC ADMIN SERVICES          ☑052

| Name: | **TAPRINA JACKSON** | Pay Period: | 18 : Sep 3, 2006 to Sep 16, 2006 |
|---|---|---|---|
| Time Card Type: | **Regular** | Leave Year: | **2006** |
| Status: | **Certified** | | |

| Time In Pay: | **80:00** | Other Time: 0:00 | Dollar Transactions: $0.00 | Days In Pay: 10 |
|---|---|---|---|---|

| Transaction | Pfx | Sfx | Account | Sep 3 S | 4 M | 5 T | 6 W | 7 T | 8 F | 9 S | Wk 1 | Sep 10 S | 11 M | 12 T | 13 W | 14 T | 15 F | 16 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | | | 32 | | | 8 | 8 | | | | 16 | 48 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | | | 32 | | | 8 | 8 | | | | 16 | 48 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | 8 | | | | | | | 8 | | | | | | | | | 8 |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | 8 | | | 8 | 8 | | 24 | 24 |
| | | | Leave and Other Time Total | 8 | | | | | | | 8 | | 8 | | | 8 | 8 | | 24 | 32 |
| | | | Daily Total | 8 | 8 | 8 | 8 | 8 | | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Sep 19 2006 10:00 PM | Built | |
|---|---|---|
| Sep 19 2006 12:18 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -52:00 | 6:00 | -46:00 | -- | -46:00 |
| Sick | -19:30 | 4:00 | -15:30 | 24:00 | -39:30 |
| LWOP | 25:00 | | | -- | 25:00 |
| Other | | | | 8:00 | |

| Leave Year Projection | |
|---|---|
| Maximum Available Annual | -- |
| Maximum Available Sick | -- |
| Use or Lose Leave | -- |

Exhibit ___I p. 51___

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| New ContactPoint | Yes |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit _I_ p. _52_

03/16/2007 11:51 FAX 202 219 8890   OFC ADMIN SERVICES   ☒054

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Name: **TAPRINA JACKSON**

Time Card Type: **Regular**

Status: **Certified**

Pay Period: **19 : Sep 17, 2006 to Sep 30, 2006**

Leave Year: **2006**

Time In Pay: **80:00**   Other Time: 0:00   Dollar Transactions: $0.00   Days In Pay: 10

| Transaction | Pfx | Sfx | Account | Sep 17 S | Sep 18 M | Sep 19 T | Sep 20 W | Sep 21 T | Sep 22 F | Sep 23 S | Wk 1 | Sep 24 S | Sep 25 M | Sep 26 T | Sep 27 W | Sep 28 T | Sep 29 F | Sep 30 S | Wk 2 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Work Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Time In | | | | | | | | | | | | | | | | | |
| | | | Time Out | | | | | | | | | | | | | | | | | |
| Regular Base Pay | | | (NFC Stored Account) | | 8 | 8 | 8 | 8 | 8 | | 40 | | | 8 | | 8 | | | 16 | 56 |
| | | | Work Time Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | | 8 | | 8 | | | 16 | 56 |
| **Leave and Other Time** | | | | | | | | | | | | | | | | | | | | |
| | | | Absence Start | | | | | | | | | | | | | | | | | |
| | | | Absence End | | | | | | | | | | | | | | | | | |
| Sick Leave | | | (NFC Stored Account) | | | | | | | | | | 8 | | 8 | | 8 | | 24 | 24 |
| | | | Leave and Other Time Total | | | | | | | | | | 8 | | 8 | | 8 | | 24 | 24 |
| | | | Daily Total | | 8 | 8 | 8 | 8 | 8 | | 40 | | 8 | 8 | 8 | 8 | 8 | | 40 | 80 |

**Remarks To Payroll**

**Status History**

| Oct 02 2006 10:00 PM | Built | |
|---|---|---|
| Oct 02 2006 04:47 PM | Supervisor Certified | WILLIAMS, ZACKARY (ZWILLIAMS) |
| | Employee Validated | JACKSON, TAPRINA (TJACKSON) |
| | Employee Attested | JACKSON, TAPRINA (TJACKSON) |
| | New Record Created | |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | -46:00 | 6:00 | -40:00 | -- | -40:00 |
| Sick | -39:30 | 4:00 | -35:30 | 24:00 | -59:30 |
| LWOP | 25:00 | | | -- | 25:00 |
| **Leave Year Projection** | | | | | |
| Maximum Available Annual | | | -- | | |
| Maximum Available Sick | | | -- | | |
| Use or Lose Leave | | | -- | | |

Exhibit _T_ p. _53_

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F 8:00AM- 4:30PM |
| Alternative Schedule | Variable Workday |
| Agency | OS |
| State | DC |
| Town | 0010 |
| Unit | 14 |
| Timekeeper | 50 |
| Retain Data | History Exception Pr |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 980125000000 |
| Service Computation Date | Nov 04 2001 |
| Annual Leave Category | 6 hr/pp |

Exhibit _I_ p. 54

EXHIBIT U



Douglas Elznic/HCHB/Osnet          To  Taprina Jackson/HCHB/Osnet@osnet
12/06/2006 02:39 PM                 cc  Rhonda H. Jackson/HCHB/Osnet@osnet, Zackary
                                        Williams/HCHB/Osnet@osnet
                                    bcc Stephen Schmal/HCHB/Osnet
                                Subject  Re: Fw: Reconsideration of Performance Summary

Taprina

Having received your e-mail message of Nov. 30 requesting reconsideration of your performance rating, I note that you provide no reasons why your rating should be changed. So that I can properly assess whether your rating is appropriate, please provide me, not later than c.o.b. Dec. 15, specific information as to why you believe your rating should be changed.

Doug


Douglas F. Elznic, P.E.
Department of Commerce
Office of the Secretary
Acting Deputy Director,  Office of Administrative Services
(202) 482-0227
delznic@doc.gov
Taprina Jackson/HCHB/Osnet




          Taprina
          Jackson/HCHB/Osnet          To  Douglas Elznic/HCHB/Osnet@osnet
          11/30/2006 12:23 PM          cc  Rhonda H. Jackson/HCHB/Osnet@osnet, Zackary
                                           Williams/HCHB/Osnet@osnet
                                   Subject  Fw: Reconsideration of Performance Summary


I am requesting a reconsideration of my Performance Rating. I feel that the rating I was given is inaccurate and warrant's further review.


Thank You,


Taprina Jackson
Information Management Division
Personal Property
202-482-0888
----- Forwarded by Taprina Jackson/HCHB/Osnet on 11/30/2006 12:23 PM -----



          Rhonda H.
          Jackson/HCHB/Osnet          To  Taprina Jackson/HCHB/Osnet@osnet
          11/29/2006 10:06 AM          cc  Zackary Williams/HCHB/Osnet@osnet
                                   Subject  Re: Reconsideration of Performance Summary


Exhibit __U__ p. __l__

EXHIBIT V



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

DEC 20 '''

MEMORANDUM FOR     Taprina Jackson
                   Program Management Specialist
                   Property Management Division
                   Office of Administrative Operations
                   Office of Administrative Services

FROM:              Douglas Elznic
                   Acting Deputy Director
                   Office of Administrative Services

SUBJECT:           Grievance Decision

This is in response to your request, contained in the e-mail message you sent to me dated
November 30, 2006, that I reconsider your performance rating for FY 2006.

On December 6, I sent you an e-mail message in which I noted that you had provided no
reasons why your rating should be changed and asked that you provide me, not later than
the close of business on December 15, with specific information why you believe your
rating should be changed, so that I could properly assess whether your rating was
appropriate.

As you did not provide me, by the specified date, with specific information why you
believe your rating should be changed, I am compelled to uphold the rating.

If you are not satisfied with my decision, you have the right to submit a formal grievance,
within 10 calendar days of receipt of it, to Fred Fanning, Acting Director of OAS.

Exhibit ___V___ p. _)_____

EXHIBIT W



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

SEP 2 5 2006

MEMORANDUM FOR    Jennifer Jessup

FROM:    Fred Fanning,
Acting Director of the
Office of Administrative Services

SUBJECT:    Appointment Letter

Ms. Jennifer Jessup is appointed as the Property Management Officer for the Office of the Secretary.

**Effective Date:**  The appointment is effective from September 25, 2006 until properly relieved.

**Special Instruction:**

Ensure Property Custodians are trained and appointed for each office in the Office of the Secretary.

Ensure that Property Custodians sign for property for their individual office or section.

Oversee the conduct a 100% inventory of property in offices of the Office of the Secretary.

Oversee the conduct a reconciliation of that inventory.

Appoint property review boards and compile a record of proceedings.

Provide each office director with instructions on how to process the findings of the property review boards.


Cc:  Individual's File
Property Management File

Exhibit   W  p. 1

EXHIBIT X

8 (February 1999)                                                                                    OMB Approval No. 0690-0015

# Complaint of Employment Discrimination
## Against the U.S. Department of Commerce

COMPLAINT NUMBER: 06-51-00195        Filing Date:

## INFORMATION ABOUT YOU

Name: Taprina Jackson

Social Security Number: ███████

Address: 6103 Belwood St.

Home Phone: ███████

City/State: District Heights MD   Zip Code: 20747

Work Phone: (202) 482-0888

## INFORMATION ABOUT YOUR REPRESENTATIVE

Representative's Name:

NOTE: You do not have to have a representative.

Address:

Phone (    )

Fax (    )

City/State:        Zip Code:

Is your representative an attorney? ☐ Yes ☐ No

## INFORMATION ABOUT THE COMPLAINT

In which bureau did the alleged discrimination take place? Office of Secretary/Admin, Office of Services

Did you work for the Department of Commerce at the time? ☒ Yes ☐ No  If yes, what was your position (title/series/grade), office, and bureau? Management Specialist ZA II, OAS, IMD, Office of Secretary

Describe the action(s) or policy(ies) you believe was (were) discriminatory. Be specific and include dates. If you need more space, attach an extra page(s). I have been threatened and harrassed w/Ritti. I have been asked to work outside of duty hours w/ no explanation and insufficient time to accomodate. My duties have been reassigned to another co-worker. I have been given tasks and deadlines that are unreasonable to meet.

What do you believe was (were) the reason(s) for the alleged discrimination? Check the appropriate box(es) and write in specific details. For example: If it was because of your race, what is your race? If it was because of your age, what is your date of birth?

☒ Race                  ☐ National Origin
☐ Color                 ☐ Age
☐ Religion              ☐ Disability
☒ Sex                   ☒ Retaliation

What remedy(ies) do you seek for the alleged discrimination? If you need more space, attach an extra page(s). I would like to be reassigned. I would like to have leave re-instated from medical issues caused from work related stress I would like to be financially compensated for pain and suffering and Performance

Did you discuss this(ese) issue(s) with an EEO Counselor? ☒ Yes ☐ No  Counselor's name? Cindy Hodges

Did you file a grievance under a negotiated grievance procedure? ☐ Yes ☒ No Filing date(s)?

Did you file a Merit Systems Protection Board (MSPB) appeal? ☐ Yes ☒ No Filing date(s)?   Exhibit X  p. 1

11/16/06

# THE U.S. DEPARTMENT OF COMMERCE
# EQUAL EMPLOYMENT OPPORTUNITY (EEO) COMPLAINT PROCESS

The federal sector Equal Employment Opportunity (EEO) complaint process is a legal process in which federal employees and applicants can raise complaints of employment discrimination because of race, color, sex, national origin, religion, age (40 or over), disability, or retaliation for opposing such discrimination or participating in the EEO complaint process. The EEO Complaint process has three parts: **EEO counseling (the informal process)**; the **formal complaint process**; and the **appeal process.** Regulations at 29 C.F.R. Part 1614 govern the Federal EEO complaint process. At the Department of Commerce, allegations of sexual orientation discrimination may be raised in EEO counseling, even though they cannot be accepted in the formal complaint process. The EEO Counselor can provide you with information about appropriate forums for raising formal claims involving sexual orientation discrimination.

## EEO COUNSELING: THE INFORMAL PROCESS

Bureau EEO Offices administer the informal EEO counseling process. If you believe that you have been discriminated against in your work or in the hiring process, you may contact an EEO Counselor. The Counselor will look into the facts of the situation and try to resolve your concerns with bureau management through mutual agreement. **You *must* complete EEO Counseling before filing a formal complaint. To preserve your right to file a formal EEO complaint, you must contact an EEO counselor within 45 calendar days of the alleged discrimination or the date you became aware of it.** You may ask your EEO Counselor not to reveal your name during counseling.

## THE FORMAL COMPLAINT PROCESS

The Department's Office of Civil Rights (OCR) administers the formal complaint process. **You must file your formal complaint within 15 calendar days of receiving the Notice of Right to File from an EEO Counselor.** OCR will send you written notice if your complaint is accepted for investigation. If OCR dismisses your complaint or part of your complaint, the Department will issue a Final Agency Decision explaining the reasons. Some reasons that complaints are dismissed are: untimely counseling or filing, failure to see an EEO Counselor, and failure to state a claim under a law enforced through the EEO process.

The Department must conduct a thorough investigation of accepted issues within 180 calendar days of the date the complaint was filed unless you agree to an extension. OCR will send you a copy of the Report of Investigation (ROI), along with a notice of your rights. After receiving your ROI, you may request (a) a hearing before an Administrative Judge (AJ) who works for the Equal Employment Opportunity Commission (EEOC), an independent Federal agency; or (b) a Final Agency Decision (FAD) by the Director of OCR without a hearing. You may also request a hearing anytime after 180 days from the date you filed your complaint if you have not received a notice of your right to request a hearing. If you do not make a choice, OCR will issue the FAD without a hearing. If you choose a hearing, the AJ will issue a decision, which the Department may accept, modify, or reject.

## THE APPEAL PROCESS

The EEOC administers the appeal process. You may appeal the FAD, including a decision dismissing issues in your complaint, to the EEOC within 30 calendar days of receiving the decision. If you have an attorney, the 30 calendar days will be calculated from the date your attorney receives the decision. You may ask the EEOC to reconsider its decision on your appeal within 30 days of receiving the decision or within 20 calendar days of receiving the Department's timely request for reconsideration.

## RIGHT TO FILE A CIVIL ACTION

In most cases, you must file an EEO complaint before you go to court. Exceptions are Equal Pay Act and age discrimination claims. If you use the EEO Complaint process, you do not have to complete the process before you file a civil action (law suit) in U.S. District Court. If OCR does not issue the FAD within 180 calendar days from the date you filed your complaint, you can file a law suit. You also have other opportunities to file a law suit:

* within 90 calendar days of receiving the FAD or an EEOC decision on appeal; or
* after 180 days from the date you file an appeal with the EEOC if the EEOC has not issued a decision.

> **MIXED CASES** If the issue(s) you raise can be appealed to the Merit Systems Protection Board (MSPB), you have a mixed case. You may choose to file an appeal with the MSPB or file an EEO complaint. You cannot do both. Processing of mixed case complaints is different from other complaints. Your EEO Counselor will provide information about the mixed case process. If you file a mixed case complaint, OCR will also give you a detailed written notice of your rights.

The law suit is not an appeal of DOC's decision or an EEOC decision. It is a new review of the evidence in your case.

READ THE FOLLOWING STATEMENT CAREFULLY BEFORE YOU SUBMIT THIS FORM

## PRIVACY ACT STATEMENT



1. FORM NUMBER/TITLE/DATE: DOC Form CD-498, Complaint of Employment Discrimination Against the U.S. Department of Commerce, September 1998.

2. AUTHORITY: 42 U.S.C. Section 2000e-16(b) and (c); 29 C.F.R. Part 1614; 29 U.S.C. Sections 204(f) and 206(d); 29 U.S.C. Section 633(a); 29 U.S.C. Section 791; Reorganization Plan No. 1 of 1978; 43 FR 19807 (May 9, 1978); Executive Order No. 12106; 44 FR 1053 (January 3, 1979).

3. PRINCIPAL PURPOSES: The purpose of this complaint form, whether recorded initially on the form or taken from a writing of the complainant, is to record the filing of a formal written complaint of employment discrimination against the Department of Commerce on the grounds of race, color, religion, sex, national origin, age, disability, or retaliation for protected EEO activity and to determine whether the complaint was timely filed, whether there is a factual basis for investigation of the complaint, and whether the allegations in the complaint are within the scope of 29 C.F.R. Part 1614.

4. ROUTINE USES: The information provided on Form CD-498 may be used:

   a. To disclose pertinent information to the appropriate federal, state, or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, where the disclosing agency becomes aware of an indication of a violation or potential violation of civil or criminal law or regulation.

   b. To disclose information to another federal agency, to a court, or to a party in litigation before a court or in an administrative proceeding being conducted by a federal agency when the government is a party to the judicial or administrative hearing.

   c. To provide information to a congressional office from the record of an individual in response to an inquiry from that congressional office made at the request of that individual.

   d. To disclose to an authorized appeal grievance examiner, formal complaints examiner, administrative judge, equal employment opportunity investigator, arbitrator or other duly authorized official engaged in investigation or settlement of a grievance, complaint or appeal filed by an employee.

   e. To disclose, in response to a request for discovery or for appearance of a witness, information that is relevant to the subject matter involved in a pending judicial or administrative proceeding.

5. EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION: Formal complaints of employment discrimination must be in writing, signed by the complainant or the complainant's attorney, and must identify the parties and action or policy challenged. Failure to comply may result in the Department of Commerce not accepting the complaint. It is not mandatory for this form to be used to provide the requested information.

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to:

Chief, Compliance Division
Office of Civil Rights
U.S. Department of Commerce
HCHB Room 7840
Washington, DC 20230

*An agency may not conduct or sponsor, and a person is not required to respond to, collection of information unless it displays a currently valid OMB control number.*

Exhibit   X   p.   3

DETACH AND KEEP THIS SHEET



Form CD-498 (February 1990) • OMB Approval No. 0690-0015

# OFFICE OF CIVIL RIGHTS
# U.S. DEPARTMENT OF COMMERCE
## COMPLAINT OF EMPLOYMENT DISCRIMINATION

YOU SHOULD USE THIS FORM ONLY IF:

▸ You work(ed) for or applied for employment with the Department of Commerce (DOC); AND

▸ You believe that DOC or a DOC bureau (for example, the Bureau of the Census, the Patent and Trademark Office, the National Institute of Standards and Technology, the Office of the Secretary, etc.) discriminated against you because of your race, color, sex, religion, national origin, age (40 years or older), or disability, or in retaliation for participating in the EEO complaint process or opposing unlawful discrimination; AND

▸ You received EEO Counseling on the issue(s) you raise in this complaint.

FILL IN THE SECTIONS CALLED "INFORMATION ABOUT YOU," "INFORMATION ABOUT YOUR REPRESENTATIVE," AND "INFORMATION ABOUT THE COMPLAINT." IF YOU NEED MORE SPACE, ATTACH AN EXTRA PAGE(S). Describe the alleged discriminatory action as clearly as possible and include dates. For example, if you are alleging that you were discriminated against when you were not selected for a position, state the title of the position, when you were notified (or otherwise learned) that you were not selected, the vacancy announcement number, and the reason(s) you believe you were not selected (race, color, sex, etc.).

YOU MUST SIGN AND DATE THE FORM. Your attorney, if you have one, may sign the form for you. A representative who is not an attorney cannot sign for you.

TO BE TIMELY, YOU MUST:

▸ Begin EEO Counseling within 45 calendar days of the effective date of the actions you challenge or the date you became aware of them; AND

▸ File your complaint within 15 calendar days of the date you received the Notice of Right to File a Complaint of Discrimination.

TO FILE YOUR EEO COMPLAINT, SEND OR HAND-DELIVER THIS FORM TO:

▸ The Director, Office of Civil Rights, U.S. Department of Commerce

 Mail or Hand-delivery:
HCHB Room 6010
Washington, D.C. 20230

 Fax:
202/482-5375 or
202/501-2937

OR

▸ The EEO Officer for the DOC bureau in which the alleged discrimination took place.

YOU MAY HAVE A REPRESENTATIVE OF YOUR CHOICE at all stages of the EEO complaint process. If you are represented by an attorney, your date of receipt for documents and decisions on your complaint will be the date that your attorney receives them. If you have a representative or change your representative, you must notify the Department's Office of Civil Rights at the address above.

FOR HELP IN COMPLETING THIS FORM, TO OBTAIN THIS FORM IN AN ALTERNATE FORMATS ( SUCH AS LARGE PRINT), OR FOR ANOTHER ACCOMMODATION TO ASSIST YOU IN USING THE EEO COMPLAINT PROCESS, contact your EEO Officer, EEO Counselor or the Department's Office of Civil Rights (202/482-4993 - Voice/TTY).

Exhibit X p. 4

EXHIBIT Y



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

JAN 3 0 2007

Ms. Taprina Jackson
6103 Belwood Street
District Heights, MD 20747

Dear Ms. Jackson:

This is in reference to Complaint Number 06-51-00195 filed by you on November 17, 2006 and your correspondence dated January 26, 2007, in which you requested amendment and objected to the scope of the claims accepted for investigation

As you were notified in the December 19, 2006 Letter of Acceptance for Investigation, at this time you do not have the right to appeal the dismissed basis or issue until final action is taken on the remainder of the complaint or consolidated complaints. However, the dismissed portion is reviewable by an EEOC administrative judge if a hearing is requested or by this office if no hearing is requested.

This complaint is hereby amended to read:

> Complainant, a Management Specialist, ZA-0301-III, with the Information Management Division, Office of Administrative Services, Office of the Secretary, alleges that due to her race (not provided) and sex (female) she has been subjected to harassment constituting a hostile work environment. She cites the following:

> 1. she has been given tasks and deadlines which are unreasonable to meet;

> 2. her duties have been reassigned to another co-worker;

> 3. management insists that she work "call-back overtime" even though she cannot do so, and has threatened her with reduction-in-force to encourage her to do so; and

> In retaliation for the instant EEO complaint:

> 4. she received a low performance rating score of 61 for FY 06.

**Exhibit** Y **p.** 1

<u>Dismissal</u>

On August 4, 2006, Complainant contacted the EEO Office regarding her claim that management failed to take corrective action when a co-worker entered her work area and threatened to harm her. When Complainant filed her complaint on November 17, 2006, she did not raise this claim. We dismiss this claim on the grounds that a complainant who receives counseling on a claim, but does not go forward with a formal complaint on that claim is deemed to have abandoned it from further EEO processing. See *Small v. U.S. Postal Service*, EEOC Request No. 05980289 (July 16, 1999) (*citing Robinson v. Peace Corps*, EEOC Request No. 05940170 (May 2, 1995)). See also *Lynch v. U.S. Postal Service*, EEOC Request No. 01A52319 (May 5, 2005); see also, *in pertinent part, Frankovitch v. U.S. Postal Service*, EEOC Request No. 01A40472 (March 10, 2004).

With respect to Claims 1 through 3 referenced above, Complainant alleged the basis of retaliation on her complaint form. However, Complainant did not allege retaliation for her present complaint, as she did for Claim 4. Section 704(a) of Title VII states, in pertinent part, that discrimination is forbidden against a current employee, an applicant for employment, or a former employee because he or she has (1) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII or (2) opposed any practice made an unlawful employment practice by Title VII. However, in this case this basis is appropriate for dismissal as there is no record in the Department's tracking system, EEO Track, of Complainant having previously engaged in activity protected under Title VII prior to the instant complaint. Further, Complainant does not allege that she opposed any practice made unlawful by Title VII. Therefore, with respect to Claims 1 through 3, this basis is dismissed for fails to state a claim pursuant to 29 C.F.R. § 1614.107(a)(1).

In her request to amend dated January 26, 2007, Complainant alleged that she received a low performance rating score of 61 for FY 06 in retaliation for her instant complaint and in retaliation for sending an e-mail to the Deputy Secretary of the Department of Commerce, which she says resulted in a Human Resources' formal inquiry. While we find that Complainant may allege that she was retaliated against for raising the instant complaint, we find that for the reasons articulated above, Complainant's claim that she was retaliated against for sending an e-mail to the Deputy Secretary of the Department of Commerce fails to state a claim, pursuant to 29 C.F.R. § 1614.107(a)(1).

Exhibit Y p. 2

<u>Your Rights and Responsibilities</u>

➢ Your rights and responsibilities remain the same as previously advised in the Notice of Acceptance for Investigation dated December 19, 2006, with the exception that the investigation of your complaint must be completed by July 25, 2007, which is 180 days from the date of your amendment, unless Complainant and the Department agree on an extension.  See 29 C.F.R. §§ 1614.108(e) and 1614.108(f).

Sincerely,

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights

Exhibit Y p. 3

## Certificate of Service

I attest that a copy of this Amended Notice of Acceptance has been sent to the parties list below:

**By Certified Mail:**

Ms. Taprina Jackson
6103 Belwood Street
District Heights, MD 20747

**Other:**

Bernadette M. Worthy
EEO Officer, OS

Investigative Team

Complaint File (Tab F)

OCR Office File

_____
Signature

JAN 3 0 2007
_____
Date

Exhibit Y p. 4

| Susan E<br>Thomas/HCHB/Osnet<br>01/26/2007 01:56 PM | To  Taprina Jackson/HCHB/Osnet@osnet |
| | cc  Bernadette M Worthy/HCHB/Osnet |
| | bcc |
| | Subject  Re: Acceptance Letter |

Ms. Jackson,

This is to acknowledge receipt of your request to amend complaint number 06-51-00195 and disagreement with the Department's partial acceptance of your claims for investigations.  We will process your request for amendment and disagreement as quickly as possible.

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights
Department of Commerce
(202) 482-4993
SThomas@doc.gov

Confidentiality Notice:  The information contained in this e-mail and any attachments may be legally privileged and confidential.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited.  If you receive this e-mail in error, please notify the sender and permanently delete this e-mail and any attachments immediately.  You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

Exhibit  Y  p.  5



Taprina
Jackson/HCHB/Osnet
01/26/2007 01:18 PM

To   Susan E Thomas/HCHB/Osnet@osnet, Bernadette M
       Worthy/HCHB/Osnet@osnet
cc   Cynthia Hodges/HCHB/Osnet@Osnet
bcc
Subject   Acceptance Letter

I received my acceptance letter for my EEO claim. Within the letter there were several paragraphs explaining the portion of my complaint which was dismissed. However, I feel this part of the complaint was erroneously dismissed. I have forwarded several e-mails and I have verbally communicated this issue with my EEO counselor, Cindy Hodges. This portion of my complaint is also written up in the first paragraph of my counselor's report submitted to your office by Cindy Hodges. Can you please look into this issue and correct if applicable. I would also like to submit an amendment to my file. I would like my claim to address my very low performance rating (61) I received for FY-06 which was unsatisfactory. My rating from FY-05 was 83 and I have since increased my level of duties and responsibilities in FY-06. I feel this low rating of 61 is based on retaliation from management because of my active claim with EEO and also Human Resource's formal inquiry initiated by the DOC deputy secretary from a e-mail I had forwarded to him which addressed these same issues. Any assistance you can offer me in handling this matter is greatly appreciated.

Thank You,

Taprina Jackson
Information Management Division
Personal Property
202-482-0888

Exhibit   Y  p.  6



**Taprina**
**Jackson/HCHB/Osnet**
04/25/2007 10:16 AM

To    Susan E Thomas/HCHB/Osnet@osnet
cc
bcc
Subject    Re: Request to Amend

Good Morning Ms. Thomas,

This e-mail is my written intent to amend my Complaint Number 06-51-00195.  It is my belief that the events identified in Ms. Worthy's e-mail are acts of retaliation.  I am also going to forward you a copy of the communication I had with Ms. Rhonda Jackson explaining the circumstances of the retaliation.

Thank You,

Taprina Jackson
Personal Property Management Division
Transportation Management
202-482-0888
Susan E Thomas/HCHB/Osnet

**Susan E**
**Thomas/HCHB/Osnet**
04/25/2007 08:23 AM

To    Taprina Jackson/HCHB/Osnet@osnet
cc    Bernadette M Worthy/HCHB/Osnet
Subject    Request to Amend

Good morning Ms. Jackson,

This is a follow-up to your communication with Ms. Worthy yesterday afternoon regarding amending Complaint Number 06-51-00195.  Please be advised that proof of execution of the amendment by the complainant is required either by the complainant's signature or electronic mail from the complainant. Telephonic requests to amend cannot be accepted, nor does Ms. Worthy's e-mail to me detailing your allegations constitute a valid request to amend.  As Sandra Zanelotti and Barbara Toy both explained to you yesterday morning, all requests to amend a complaint must be made in writing and sent to the attention of the Program Implementation Division.

If it is your intent to amend Complaint Number 06-51-00195, your request should be sent directly to me via e-mail as you previously did on January 26, 2007, or in writing to my attention at the following address:

Program Implementation Division
Office of Civil Rights
HCHB, Room 6012
Washington, DC 20230
Facsimile:  (202) 501-2937

If you have any questions, please contact me via e-mail or by telephone at (202) 482-4599.

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights

EXHIBIT  Y  PAGE  7

Department of Commerce
(202) 482-4599
SThomas@doc.gov

Confidentiality Notice: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited. If you receive this e-mail in error, please notify the sender and permanently delete this e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

EXHIBIT __Y__ PAGE __8__



**Taprina**
**Jackson/HCHB/Osnet**
04/25/2007 10:17 AM

To    Susan E Thomas/HCHB/Osnet@osnet

cc

bcc

Subject    Fw: Re-assignment

This is the e-mail explaining the circumstances of my amendment based on retaliation.

Thanks,

Taprina Jackson
Personal Property Management Division
Transportation Management
202-482-0888
—— Forwarded by Taprina Jackson/HCHB/Osnet on 04/25/2007 10:17 AM ——



**Taprina**
**Jackson/HCHB/Osnet**
04/24/2007 01:48 PM

To    Rhonda H. Jackson/HCHB/Osnet

cc    Joy Taylor/HCHB/Osnet@osnet, Zackary
Williams/HCHB/Osnet@osnet

Subject    Re-assignment

Good Afternoon Rhonda,

This is just to recap my understanding of the conversation we had yesterday afternoon.  I am being re-assigned from Personal Property Management Division to the Office of Real Estate Management effective Monday, April 30, 2007.  I will still be a Management Program Analyst band III.  I will no longer be doing Transportation Management but will instead be doing some other duties which have not been defined as of yet.  However, I am going to receive something in writing detailing what my position description will be including my new duties and responsibilities by the end of this week or early next week. Also, that the Division Chief and Associate Director positions are currently vacant and I will be reporting directly to Fred Fanning, who is the individual responsible for defining my job duties.

You also stated that, you were unsure as to who would be performing the duties of Transportation Management in my absence.

Also, we discussed how this re-assignment and my duties as Transportation Manager will affect my performance review.  You stated that even though, I have not been performing the duties as Property Accountability Officer (Doug Elznic sent forward an e-mail removing those responsibilities from me), I will not be penalized for not completing the Critical Element of Property Accountability Officer which is 20% of my performance metric.  You also stated , that my Transportation Management will be included in my performance evaluation even though it is not a part of my performance metric.  Zackary Williams is suppose to evaluate my performance up to this point and as of Monday, April 30, 2007, Fred Fanning will be evaluating my job performance until further notice.

Please confirm this is the conversation we had and correct any misconceptions I have stated in this e-mail.

Thank You,

EXHIBIT __Y__ PAGE __9__

Taprina Jackson
Personal Property Management Division
Transportation Management
202-482-0888

EXHIBIT $\underline{Y}$ PAGE $\underline{10}$



**Taprina Jackson/HCHB/Osnet**
05/14/2007 02:50 PM

To   Susan E Thomas/HCHB/Osnet@osnet

cc   Bernadette M Worthy/HCHB/Osnet@osnet

bcc

Subject   Request to Amend

History:          ⏎ This message has been replied to.

This e-mail is my written intent to amend my Complaint Number 06-51-00195.  It is my belief that I am being retaliated against for my involvement in this complaint.  I have been told that I have to have prior approval for sick leave, I have been told that I can not request sick leave but must use annual leave, I was told that I could combine my breaks with lunch period and then penalized for it, all by Fred Fanning.  All of this for 2.5 hours of sick leave.

I am also forwarding you a copy of the communication between myself and Mr. Fred Fanning.

Taprina Jackson
202-482-0888

EXHIBIT Y   PAGE 11



**Taprina**
**Jackson/HCHB/Osnet**
05/14/2007 02:51 PM

To    Susan E Thomas/HCHB/Osnet@osnet
cc    Bernadette M Worthy/HCHB/Osnet@osnet
bcc
Subject  Fw: Leave Request

Taprina Jackson
202-482-0888
—— Forwarded by Taprina Jackson/HCHB/Osnet on 05/14/2007 02:51 PM ——

**Fred Fanning/HCHB/Osnet**
05/11/2007 05:14 PM

To    Taprina Jackson/HCHB/Osnet@osnet
cc
Subject  Re: Leave Request

Taprina,

You are welcome.

This increase your balance of advanced sick leave above 40 hours. In the future please use annual leave until your balance of advanced sick leave is reduced. With your current total of advanced sick leave it will take you eleven pay periods to break even. That is a very long time.Thank you.

Regards,
Fred Fanning
Director for Administrative Services
Office of the Chief Financial Officer and Assistant Secretary for Administration
United States Department of Commerce
Telephone (202) 482-1200
Fax (202) 219-8890
Taprina Jackson/HCHB/Osnet



**Taprina**
**Jackson/HCHB/Osnet**
05/11/2007 05:08 PM

To    Fred Fanning/HCHB/Osnet@osnet
cc
Subject  Re: Leave Request

Thanks,

Taprina Jackson
202-482-0888
Fred Fanning/HCHB/Osnet

**Fred Fanning/HCHB/Osnet**
05/11/2007 05:08 PM

To    Taprina Jackson/HCHB/Osnet@osnet
cc

EXHIBIT  Y  PAGE  12

Subject  Re: Leave Request

Taprina,

I don't know who told you that, but combining your breaks with lunch is specifically prohibited under Commerce time and attendance rules.

Regards,
Fred Fanning
Director for Administrative Services
Office of the Chief Financial Officer and Assistant Secretary for Administration
United States Department of Commerce
Telephone (202) 482-1200
Fax (202) 219-8890
Taprina Jackson/HCHB/Osnet



**Taprina Jackson/HCHB/Osnet**
05/11/2007 05:06 PM

To  Fred Fanning/HCHB/Osnet@osnet
cc
Subject  Re: Leave Request

Sure,

However, I was told that we could take our two 15 minute breaks with our lunch, are we no longer allowed to do this.

Taprina Jackson
202-482-0888
Fred Fanning/HCHB/Osnet

**Fred Fanning/HCHB/Osnet**
05/11/2007 05:04 PM

To  Taprina Jackson/HCHB/Osnet@osnet
cc
Subject  Re: Leave Request

Taprina,

I looked at your work hours and you only have a half hour for lunch.  Please change your time card to reflect that.

Regards,
Fred Fanning
Director for Administrative Services
Office of the Chief Financial Officer and Assistant Secretary for Administration
United States Department of Commerce
Telephone (202) 482-1200

EXHIBIT  Y  PAGE  13

Fax (202) 219-8890
Taprina Jackson/HCHB/Osnet



**Taprina
Jackson/HCHB/Osnet**
05/11/2007 04:34 PM

To  Fred Fanning/HCHB/Osnet@osnet

cc

Subject  Re: Leave Request

Fred, I tried to notify you this morning after I had made my improptu appointment with the doctor.  I tried to call you and your phones were forwarded this morning so, I sent you e-mail to notify you of my plans to go to the doctor's.  I had not submitted a leave request for this appointment because it was last minute (this morning) and I didn't know how long it was going to take.  I will put in a leave request from 12:00 to 2:00 for sick leave.  I will not claim 11:00 to 12:00 because I'm allowing that time for lunch.  I will continue to try and put my leave in advance.  I also understand that my leave has to be approved.  However, when my health is concerned, I have to do what is best for me when it is convenient for my doctors.

Thanks,

Taprina Jackson
202-482-0888
Fred Fanning/HCHB/Osnet

**Fred Fanning/HCHB/Osnet**
05/11/2007 12:41 PM

To  Taprina Jackson/HCHB/Osnet@osnet

cc

Subject  Leave Request

Taprina,

I reviewed the leave requests after I received your e-mail and found that you had no request or approved leave was sought for your doctor's visit today.  How did you receive approval to go to be absent from work?

Regards,
Fred Fanning
Director for Administrative Services
Office of the Chief Financial Officer and Assistant Secretary for Administration
United States Department of Commerce
Telephone (202) 482-1200
Fax (202) 219-8890

EXHIBIT  Y   PAGE 14

|  |  |
|---|---|
| Susan E<br>Thomas/HCHB/Osnet<br>05/15/2007 12:24 PM | To Taprina Jackson/HCHB/Osnet@osnet<br>cc Bernadette M Worthy/HCHB/Osnet, Sandra L<br>Zanelotti/HCHB/Osnet, Barbara L Toy/HCHB/Osnet@Osnet<br>bcc<br>Subject Re: Request to Amend |

Good afternoon Ms. Jackson,

Sandra Zanelotti, Chief of EEO Investigations has advised me that the investigation of Complaint Number 06-51-00195 has been completed, and that the Report of Investigation is currently before her for sufficiency review.. Therefore, we cannot process your May 14, 2007 request to amend.  If you wish to pursue this claim, you must contact your servicing EEO Office within 15 calendar days of today to initiate EEO counseling.  Your servicing EEO Officer is Bonnie Worthy, and she can be reached at 202-482-8121 or by e-mail at Bernadette M Worthy/HCHB/Osnet.

Also, please be advised that upon completion of the sufficiency review and administrative processing, *i.e.*, tabbing, copying, *etc.*, of the Report of Investigation for Complaint Number 06-51-00195, we will provide you a copy of the Report of Investigation and a Notice of Post-Investigative Options.  Should you elect a hearing before an administrative judge appointed by the Equal Employment Opportunity Commission, you can file a motion to the assigned administrative judge to amend your complaint at hearing to include the issue(s) at counseling.  However, the decision to grant inclusion of additional claims for consideration at hearing is at the sole discretion of the assigned administrative judge.  Any election to proceed with a motion to amend in lieu of initiating the EEO process could result in those claims being dismissed at a future date should the administrative judge deny your motion to amend and you then initiate the EEO process.

If you have any questions, I may be reached by e-mail or at 202-482-4599.

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights
Department of Commerce
(202) 482-4599
SThomas@doc.gov

Confidentiality Notice:  The information contained in this e-mail and any attachments may be legally privileged and confidential.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail is strictly prohibited.  If you receive this e-mail in error, please notify the sender and permanently delete this e-mail and any attachments immediately.  You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

Ex. Y PAGE 15

| | | |
|---|---|---|
| Susan E<br>Thomas/HCHB/Osnet<br>05/15/2007 03:27 PM | To | Taprina Jackson/HCHB/Osnet@osnet |
| | cc | Bernadette M Worthy/HCHB/Osnet |
| | bcc | |
| | Subject | Re: Request to Amend |

Ms. Jackson,

You should also bring your reassignment to Bonnie's attention since we could not process this request to amend because the investigation had been completed at that time.  I will provide Bonnie with copies of all our e-mail correspondence since April 25th.

Thanks,
Susan
*********************************************************

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights
Department of Commerce
(202) 482-4599
SThomas@doc.gov

Confidentiality Notice:  The information contained in this e-mail  and any attachments may be legally privileged and confidential.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail  is strictly prohibited.  If you receive this e-mail in error, please notify the sender and permanently delete this e-mail and any attachments immediately.  You should not retain, copy or use this e-mail  or any attachment for any purpose, nor disclose all or any part of the contents to any other person.

EXHIBIT __Y__ PAGE _16_

EXHIBIT Z



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 2023D

January 4, 2007

AUTHORITY TO INVESTIGATE

Taprina Jackson has filed a complaint of discrimination against the Department of Commerce.

I empower Investigator Joseph Deasel of Susan Grimes Associates, Inc. to conduct this EEO investigation on behalf of the Department, as authorized by Department of Commerce Organization Order 20-10, as amended January 19, 2001. Upon presentation of this letter of authority and a photographic credential identifying the bearer as the same, you are required to cooperate with the investigation to furnish information, statements and/or affidavits without a pledge of confidence, and to provide access to files and records systems of the Department and its agencies to answer the complaint.

You are required to provide to the investigator the information requested by the 15th calendar day following your receipt of this letter and a written request for the information. Should you not provide the information by the 15th calendar day, the investigation will proceed to completion with or without your reply.

The information obtained by this investigation is protected by the Privacy Act of 1974 (P.L. 93-579), and it is collected for use in resolving the complaint of discrimination. The information will be incorporated into a report of investigation to be distributed to the Department of Commerce, Office of Civil Rights, the bureau Equal Employment Opportunity Officer, the complainant, and possibly to Federal appeal and court systems.

Sandra L Zanelotti
Sandra Zanelotti
Chief Investigator
Office of Civil Rights

Exhibit Z p. 1

EXHIBIT AA



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1801 L Street, N.W.
Suite 100
Washington, DC 20507
(202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0739
1-800-669-4000

| | |
|---|---|
| Taprina Jackson,<br>     Complainant,<br><br>          v.<br><br>Carlos Gutierrez, Secretary<br>Commerce Dept.,<br>     Agency. | ) EEOC No.  570-2007-00663X<br>) Agency No. 06-51-00195<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Date:   January 14, 2008 |

RECEIVED BY
2008 JAN 18 PM 2:20

AGC ADMIN

### <u>NOTICE OF INTENT TO ISSUE DECISION WITHOUT A HEARING</u>

After a review of the record, the Administrative Judge has determined that there may be no material facts in dispute, and that it may therefore be appropriate to issue summary judgment in favor of the Agency without holding a hearing. *See* 29 C.F.R. § 1614.109(g) (3).[a]

The claim(s) raised in the complaint(s) before the Administrative Judge is as follows:

**Whether Complainant was subjected to harassment/hostile work environment on the bases of her race (African-American) and sex (female) while employed as a Program Management Specialist, Z-301-III, with the Information Management Division, Office of Administration Services, Office of the Secretary, U.S. Dept. of Commerce.**

### Applicable Law

1.  Legal Standards for Granting a Decision without a Hearing

The EEOC's regulations on summary judgment are patterned after Rule 56 of the Federal Rules of Civil Procedure, which provides that a moving party is entitled to summary judgment if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).   Where the evidence is merely colorable or is not significantly probative, summary

---

[a]        The Agency filed a Motion to Compel Discovery on August 23, 2007, a supplement on September 7, 2007, and a Second Supplemental Motion to Compel Discovery and Request for Extension of Deadlines on November 28, 2007.   I will not issue an Order regarding these motions if summary judgment is granted in favor of the Agency.

judgment may be granted. *Anderson*, 477 U.S. at 249-50. Summary judgment is also appropriate where the party opposing summary judgment fails to establish a genuine issue of fact on an element essential to that party's case and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S.

2. Applicable Substantive Law

In a discrimination case, an employer can obtain summary judgment in one of two ways. It can demonstrate that the plaintiff's proffered evidence fails to establish a *prima facie* case, or in the alternative, the employer can present evidence that demonstrates a legitimate non-discriminatory reason about which the plaintiff does not create a factual dispute. *Mitchell v. Data General Corp.*, 12 F.3rd 1310, 1316 (4th Cir. 1995). Where the employer then comes forward with a legitimate explanation for its actions, the Complainant must produce specific, substantive evidence of pretext in order to avoid summary judgment.

Complainant alleges she was subjected to harassment. In deciding harassment cases, courts examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. The conduct in question must be subjectively perceived as abusive and "objectively unreasonable." *Harris v. Forklift Systems*, 114 S.Ct. 367 (1993).

In order to demonstrate a *prima facie* case of harassment based on race and/or sex, Complainant must demonstrate the following: 1) membership in the protected group; and 2) severe and/or pervasive conduct that would not have occurred except for membership in the protected class. *McKinney v. Dole*, 765 F.2d 1129 (D.C. Cir. 1985).

3. Content of the Parties' Responses

When opposing summary judgment, a party must respond with specific facts showing that there is a genuine dispute as to a material fact and that the other party is not entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250.

If a party opposes summary judgment, he/she may not rely on mere allegations, speculation, conclusory statements, or denials. The party should cite to specific evidence contained in the report of investigation which creates a factual dispute regarding a material issue in the case. If not already contained in the report of investigation, the party should also include any relevant documentary evidence or witness statements, interrogatory answers, admissions, or other supporting materials and provide a clear and specific statement of their relevance. Where information is compiled from agency records, provide a declaration from the person preparing the evidence as to the method used to prepare it.

**UNLESS THE PARTY DEMONSTRATES THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE, NO HEARING WILL BE HELD IN THIS MATTER. THEREFORE, IF THE PARTY PLANS TO CALL WITNESSES TO TESTIFY IN SUPPORT OF CLAIMS OR DEFENSES, THE PARTY SHOULD OBTAIN WRITTEN STATEMENTS FROM THEM, AND SUBMIT THESE STATEMENTS IN SUPPORT OF THE ARGUMENT AGAINST SUMMARY JUDGMENT.**

4. Time for Responses

If Complainant opposes summary judgment, she must file an Opposition no later than **January 23, 2008.**  Complainant must send a copy of her filing to the other party.

It is so ORDERED.

For the Commission:

Kurt C. Hodges
Administrative Judge
Telephone:  (202) 419-0710
Facsimile:  (202) 419-0701

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing Notice of Intent Order within five (5) calendar days after the date it was sent *via* First Class Mail.  I certify that on **January 14, 2008,** the foregoing Notice of Intent Order was sent *via* **first class mail:**

Taprina Jackson
6103 Belwood Street
District Heights, MD  20747

Lisa K. Schneiderman, Esq.
U.S. Dept. of Commerce
Office of the General Counsel
Employment & Labor Law Division, Room 5717
14th & Constitution Ave., NW
Washington, DC  20230

Kurt C. Hodges
Administrative Judge

3

EXHIBIT BB

( (

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
## Washington Field Office

1801 L. Street
Suite 100
Washington, DC  20507
(202) 419-0700
TTY (202) 419-0702
FAX (202 )419-0739
1-800-669-4000

| | |
|---|---|
| Taprina Jackson, | ) EEOC No.  570-2007-00663X |
| Complainant, | ) |
| v. | ) Agency No. 06-1-00195 |
| Carlos Gutierrez, Secretary | ) |
| Commerce Dept. | ) |
| Agency. | ) |
| | ) Date:  February 7, 2008 |

**DECISION**

## I.   Procedural History

Complainant filed a formal complaint of discrimination on or about November 17, 2006, alleging discrimination on the bases of her race (African-American), sex (female) and reprisal in violation of the Civil Rights Act of 1964, *as amended*, (hereinafter referred to as "Title VII").    On or about January 14, 2008, I issued a Notice of Intent to Issue a Decision without a Hearing *sua sponte* and ORDERED the Complainant to file an Opposition no later than January 23, 2008.   I received Complainant's Opposition on January 23, 2008.  After careful review of the Report of Investigation (ROI) and the exhibits and affidavits attached therein, I have determined that summary judgment is appropriate with respect to Complainant's claim because the record lacks evidence suggesting that the actions complained were the result of unlawful discrimination.1

---

1    *See Petty, Jr. v. Department of Defense*, EEOC Appeal No. 01A24206 (July 11, 2003) (holding that

1

## II.  Undisputed Facts

The following facts are undisputed:

1.  During the relevant time period, Complainant, an African-American female, was employed as a Program Management Specialist, ZA-III, in the Information Management Division ("IMD"), Office of Administrative Services ("OAS"), Office of the Secretary.   Complainant's first line supervisor was Mr. Zackary Williams, an African-American male.

2.  During 2006, Mr. Fred Fanning became Acting Director of OAS.  Mr. Fanning created the Tiger Team comprised of three employees, Ms. Jennifer Jessup, a White female, Ms. Jeanette Darden, a Black female and Ms. Jeri Coleman, a Black female.  All three employees worked in the Division of Information Management.  Mr. Fanning is a White male.

3.  Beginning September 2006, Mr. Fanning took away Complainant's personal property management duties and assigned them to the Tiger Team.  He also took away similar duties from Mr. Williams, a co-worker.

4.  Mr. Fanning had a co-worker remove Complainant's rights to the property system (Sunflower) preventing her from accessing the system to run reports, queries or perform data entry.

5.  During 2006, Mr. Fanning wanted employees in the Personal Property Management Division, including Complainant, to work overtime over a three day period in order to complete an inventory of missing laptop computers.  Complainant was threatened with a reduction-in-force for not meeting the established deadline for completing the task.  Complainant informed him she was unable to work overtime.  No adverse action was taken against Complainant for failing to work overtime.

6.  During January 2007, Mr. Williams gave Complainant a performance rating of 61 out of

---

summary judgment is appropriate where: 1) the investigative record has been adequately developed; 2) there are no genuine disputes of material fact to be resolved at a hearing; 3) a decision can be rendered without the AJ making findings of fact; and 4) the parties have been afforded ample opportunity to engage in and complete discovery.

The Agency filed various discovery motions, including, Motion to Compel, Motion to Compel Deposition Attendance and Request for Extension of Discovery Deadlines.   These motions are now MOOT in light of my decision to grant summary judgment.

a possible 100 points.   He gave her a performance rating of 81 and awarded her a $1,782.00 dollar pay increase the previous year.

**III.   Issue**

Whether Complainant was subjected to harassment/hostile work environment on the bases of her race, sex and in reprisal for engaging in statutorily protected activity? 2

**IV.   Applicable Law**

**1.   Summary Judgment**

The EEOC's regulations on summary judgment are patterned after Rule 56 of the Federal Rules of Civil Procedure, which provides that a moving party is entitled to summary judgment if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).   Where the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.   Summary judgment is also appropriate where the party opposing summary judgment fails to establish a genuine issue of fact on an element essential to that party's case and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In a discrimination case, an employer can obtain summary judgment in one of two ways.   It can demonstrate that the plaintiff's proffered evidence fails to establish a *prima facie* case, or in the alternative, the employer can present evidence that demonstrates a legitimate non-discriminatory reason about which the plaintiff does not create a factual dispute.   *Mitchell v. Data General Corp.*, 12 F.3rd 1310, 1316 (4th Cir. 1995).   Where the employer then comes forward with a legitimate explanation for its actions, the Complainant must produce specific, substantive evidence of pretext in order to avoid

---

2       On or about June 26, 2007, Supervisory Administrative Judge, Andrew Culbertson, issued an Acknowledgment and Order informing Complainant that her opportunity to have the dismissal of certain claims by the Agency reviewed by an Administrative Judge would be deemed waived if she failed to file an Opposition in writing within 20 calendar days.   Complainant failed to file an Opposition in accordance with Judge Culbertson's instructions thereby waiving her right to challenge the dismissal of her claims.

3

summary judgment.

### 2.  Substantive Law

In deciding harassment cases, courts examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. The conduct in question must be subjectively perceived as abusive and "objectively unreasonable." *Harris v. Forklift Systems*, 114 S.Ct. 367 (1993). *See also Jones v. Postmaster General*, EEOC Appeal No. 01940362 (1994) (holding that the analysis adopted in sexual harassment cases is applicable to harassment claims based on reprisal).

In order to demonstrate a *prima facie* case of harassment based on race or sex, Complainant must demonstrate: 1) membership in a protected group; and 2) severe or pervasive harassing conduct that would not have occurred except for membership in the protected class. *McKinney v. Dole*, 765 F.2d at 1129 (D.C. Cir. 1985)

In order to demonstrate a *prima facie* case of harassment based on reprisal, Complainant must demonstrate: 1) she engaged in a protected activity; 2) the agency was aware of the activity; 3) she was subsequently subjected to adverse action by the Agency; and 4) there is a causal connection between the protected activity and the adverse action. *See Hochstadt v. Worcester Foundation for Experimental Biology, Inc.*, 425 F.Supp. 318 (D. Mass.), aff'd, 545 F.2d 222 (1st Cir. 1976).

### V.  Analysis

Complainant alleges that she was subjected to harassment/hostile work environment on the bases of her race, sex and in reprisal for engaging in statutorily protected activity when the following incidents occurred: 1) she was given tasks and deadlines which were unreasonable to meet; 2) her duties were reassigned to another co-worker; 3) management insisted that she work "call-back" overtime and threatened her with a reduction-in-force to encourage her to do so; and 4) she was given a low performance rating score of 61 for Fiscal Year 2006.

4

Construing the factual allegations in a light most favorable to Complainant, I find that

Complainant has not demonstrated a *prima facie* case of harassment. Complainant alleges she was

assigned unreasonable tasks and deadlines. However, she only identified one incident where she was

required to complete an inventory of laptop computers over a three day period in support of her

allegation. (ROI, Tab 11) Complainant also alleges·that management insisted that she work overtime

and threatened her with a reduction-in-force to encourage her to do so. However, it is undisputed that

Complainant informed management that she was unable to comply with the request and no adverse action

was taken against her. I find that the aforementioned incidents do not constitute harassment because they

are not sufficiently severe or pervasive to constitute the type of "objectively unreasonable" behavior

required to trigger a violation of Title VII.

Complainant also alleges that Mr. Fanning reassigned several of her duties and that her

performance appraisal rating was lowered because she filed an EEO complaint. Mr. Fanning attested that

shortly after he became the Acting Director, news reports identified the Department of Commerce as

being one of many federal agencies that had over 1000 missing laptop computers. He also attested that

Complainant's work group, the IMD, was tasked with completing a 100% inventory of laptop computers

for the Agency, the Office of Secretary and the Department Forms Reconciliation. Mr. Fanning attested

that the IMD failed to meet all three suspense deadlines and he decided to remove all property

management duties from the IMD team members, including Complainant. I find that Mr. Fanning has

articulated a legitimate non-discriminatory explanation for the alleged harassment and Complainant has

not provided specific evidence which creates a triable issue regarding his explanation. I also find that the

alleged conduct does not represent the type of severe and/or pervasive behavior that constitutes

harassment. I also find that Complainant has not produced circumstantial evidence which creates an

inference that she was singled out for the alleged behavior because of her race, sex or in reprisal for

engaging in statutorily protected activity.

In regards to Complainant's performance appraisal, Mr. Williams attested that he originally gave

her a rating of 79, but was directed by his supervisor, Ms. Rhonda Jackson, and Mr. Doug Elznic, the

5

Acting Deputy Director of OAS, to lower the rating for Complainant and her co-workers, Ms. Joy Taylor, Mr. Eston Lewis and Ms. Wednesday Hughes.   Complainant has not provided specific evidence which creates a triable issue regarding Mr. Williams' assertion that at least three other employees had their performance rating scores lowered during Fiscal Year 2006.   I find that the aforementioned pretextual evidence Complainant relies upon does not create an inference of discrimination based upon race, sex or reprisal.   Accordingly, I find that this issue cannot survive summary judgment.

**VI.**     <u>**Conclusion**</u>

For the reasons set forth above, I find that it is appropriate to **GRANT** summary judgment in favor of the Agency with respect to the harassment claim.

**FOR THE COMMISSION:**

Kurt C. Hodges
Administrative Judge

6

## NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to C.F.R. §1614.109(b), 109(g) or 109(i). **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.** EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the hearing file and this decision. The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order. The complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. §1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached. A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has <u>not</u> issued its final order within forty (40) calendar days of its receipt of the hearing file and this decision, the complainant may file an appeal to the Commission directly from this decision. In this event, a copy of the Administrative Judge's decision should be attached to the appeal. The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848, Washington, D.C. 20036
> Fax No. (202)663-7022

Facsimile transmissions over 10 pages will not be accepted.

7

## COMPLIANCE WITH AN AGENCY FINAL ACTION

An Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency. See 29 C.F.R. §1614.504. If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the complainant in writing. If the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The complainant may file such an appeal within thirty (30) calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least thirty-five (35) calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

8

EXHIBIT CC



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

MAR  3 2008

| | |
|---|---|
| Taprina Jackson, | ) |
| Complainant | ) |
| | ) |
| v. | ) |
| | ) |
| Carlos M. Gutierrez, Secretary | ) |
| U.S. Department of Commerce | ) |

Complaint Number: 06-51-00195
EEOC Case Number: 570-2007-00663X

RECEIVED BY

2008 MAR 5 AM 11:41

AGC ADMIN

## NOTICE OF FINAL ORDER

This is the Department of Commerce's final action in Complaint Number 06-51-00195 filed by,

Taprina Jackson, a Management Program Specialist, ZA-301-III, Office of the Secretary, Office

of Administrative Services (Agency), U.S. Department of Commerce (Department).

### I.    Procedural History

Following completion of the investigation, Complainant exercised her post-investigative options

and requested a hearing before an Equal Employment Opportunity Commission (EEOC)

administrative judge (AJ). On January 14, 2008, EEOC AJ Kurt. C. Hodges issued a Notice of

Intent to Issue a Decision without a Hearing *sua sponte* and ordered Complainant to file an

Opposition no later than January 23, 2008, to which she responded. After determining that there

were no material facts in dispute, on February 7, 2008, Judge Hodges issued a decision without a

hearing, finding Complainant had not been subjected to discrimination or retaliation. The

decision was received in the Department's Office of Civil Rights for final action on February 12,

06-51-00195

2008. As the Department chooses to adopt the AJ's decision, this Final Order is being issued on or before March 24, 2008,[1] in compliance with Title 29 Code of Federal Regulations (C.F.R.) section (§) 1614.110(a).

## II.  Statement of Claims Presented for Hearing

Complainant alleges that due to her race (African American) and sex (female) she has been subjected to harassment constituting a hostile work environment.  She cites the following:

1. she has been given tasks and deadlines which were unreasonable to meet;

2. her duties were reassigned to another co-worker;

3. management insisted that she work "call-back overtime" even though she could not do so, and threatened her with reduction-in-force to encourage her to do so; and

In retaliation for the instant EEO complaint:

4. she received a low performance rating score of 61 for FY 06.

## III.  Final Decision/Action

After carefully reviewing the entire record in this complaint, we have decided to implement or adopt without modification the decision of the EEOC AJ as it is fully supported by the evidence and follows appropriate case law precedent.

---

[1] Since the 40th calendar day is Sunday, March 23, 2008, we will consider the next business day as the 40th calendar day.

IV.    **Attorney's Fees and/or Costs**

The record reflects that an attorney did not represent Complainant during the processing of her complaint and she is not a prevailing party. Therefore, she is not entitled to any attorney's fees or costs.

V.    **Right to Appeal or File a Civil Action**

If Complainant is not satisfied with the final action in this complaint, **one** of the two actions described below may be taken. Either action selected must be taken within the specified time frames.

**1. Appeal the Final Order to the Equal Employment Opportunity Commission by submitting the enclosed Notice of Appeal/Petition, EEOC Form 573, to the EEOC, Office of Federal Operations (OFO), using one of the following methods:**

> **By Mail:**
> Director, Office of Federal Operations
> Equal Employment Opportunity Commission
> P. O. Box 19848
> Washington, D.C. 20036

> **By Personal Delivery:**
> Director, Office of Federal Operations
> Equal Employment Opportunity Commission
> 1801 L Street, N.W.
> Room 5000
> Washington, D.C. 20507

**By Facsimile:**
Facsimile Telephone (202) 663-7022 or (FTS) 989-7022

**Time Frames:** If an attorney does not represent the Complainant, the appeal must be filed within **30 calendar days** of receipt of this final order. If an attorney represents the Complainant, then the appeal must be filed within **30 calendar days** of the date **the attorney** received the Final Decision. See 29 C.F.R. § 1614.402(a).

Also, a copy of any appeal submitted must be sent to the Department, at the address cited below, at the same time it is filed with the EEOC, OFO. Any statement or brief in support of an appeal must be submitted to the Director, OFO, within **30 calendar days** of filing the appeal, and a copy must be provided to the Department at the following address:

> The Office of Civil Rights, Room 6012
> U. S. Department of Commerce
> Washington, D.C. 20230

**2. File a civil action in Federal district court.**

If a civil action is filed, Complainant must name the appropriate Department or Agency head as the defendant and provide his or her official title. Failure to name the head of the Department or Agency and/or the official title may result in the dismissal of the case. The appropriate Department or Agency is the Department of Commerce. The head of the Department of Commerce is **Carlos M. Gutierrez,** who is the Secretary of Commerce.

**Time Frames:** A civil action must be filed within **90 calendar days** of the date of receipt of the final order if no appeal has been filed. See 29 C.F.R. § 1614.408(a). If an appeal is filed, a civil action may be filed within **90 calendar days** after receipt of the EEOC's final decision on the appeal, or after **180 days** from the date of filing an appeal if there has been no final decision by the Commission.

06-51-00195

**Right to Request Court Appointment of Counsel:** If Complainant decides to file a civil action, under Title VII or under the Rehabilitation Act, and does not have or cannot afford the services of an attorney, the Complainant may petition the court for appointment of an attorney. In such circumstances as the court may deem just, the court may appoint a lawyer to represent the Complainant and may authorize such services without payment of fees, costs, or other security. The grant or denial of the request for a court appointed attorney is within the sole discretion of the court. Filing a request for an attorney does not extend time limitations for filing a civil action. Both the request and the civil action **must be filed within 90 calendar days** of the date of receipt of the EEOC's decision.

## 3. Complaint Numbers:

The complaint numbers identified on the first page of this Final Order should be used on all official correspondence.

Susan E. Thomas
Chief, Program Implementation Division
Office of Civil Rights
Department of Commerce

MAR   3  2008

---

Date Issued

Enclosure

06-51-00195

## CERTIFICATE OF SERVICE

I attest that a copy of this Notice of Final Order has been sent to the parties below:

**By Certified Mail**:

Ms. Taprina Jackson
6103 Belwood Street
District Heights, MD  20747

**Other**:

Kurt C. Hodges, Administrative Judge
Equal Employment Opportunity Commission
Washington Field Office
1801 L Street, N.W., Suite 100
Washington, DC 20507

Office of General Counsel, E&LLD
        ATTN:  Lisa Schneiderman, Esquire

Bernadette M. Worthy
EEO Officer, ITA

Complaint File (Tab Mc)

OCR Chron File

_Bernadette Brown_
Signature

_3/3/08_
Date

# NOTICE OF APPEAL/PETITION
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 1984
Washington, DC 20036

| **Complainant Information: (Please Print or Type)** | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code): | |
| E-mail address (if any): | |

| **Attorney/Representative Information (if any):** | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

| **General Information:** | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | ____ Yes;  Date Received _____ (Remember to attach a copy)<br>____ No<br>____ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | ____ No<br>____ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | ____ No<br>____ Yes (Attach a copy of the civil action filed) |

**NOTICE:** Please <u>attach a copy of the final decision or order</u> from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC and with the agency <u>within 30 days</u> of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| Signature of complainant or complainant's representative: | |
|---|---|
| Date: | |

**EEOC Form 573 REV 1/01**

# EXHIBIT DD

December 12, 2006                           **Case Number: 06-51-00195**

| | |
|---|---|
| MEMORANDUM FOR | Bernadette M. Worthy<br>Equal Employment Opportunity Officer |
| FROM: | Cindy Hodges<br>EEO Counselor |
| SUBJECT: | Report of Counseling Activity |

| | |
|---|---|
| Name of Complainant: | **Taprina Jackson** |
| Home Address: | 6103 Belwood Street<br>District Heights, MD 20747 |
| Work Phone: | (W) (202)482-0888 |
| Current Title/Grade: | Management Specialist, ZA-0301-3 |
| Operating Unit: | OAS, Information Management Division |
| Office Location: | HCHB - Washington, D.C. |

08-04-2006     Date of Initial Contact
08-31-2006     Date Case Assigned to EEO Counselor
09-20-2006     Date of First Interview with Counselor
09-21-2006     Date Notice of Right to File Issued (Attach Copy)
11-02-2006     Date Complainant Received Notice of Right to File a Discrimination Complaint
12-12-2006     Date Complainant Issued Notice of R & R (Attach Copy)

**BASIS:**
Gender (Female)

**ISSUES:**
Terms and Condition of Employment

1.     **Ask Complainant to explain how s/he was discriminated against or was treated differently that other persons who are not of his/her class. In answering this question be sure to include:**

Taprina Jackson alleges that because of her gender (female), management failed to take corrective action when a co-worker enter her work area and threaten to harm her.

2.     **What corrective action does Complainant seek to resolve this matter?**

In our meeting it was mentioned to Ms. Jackson that I could speak to management in an attempt to resolve her workplace concerns and she declined the offer.

3.     **What steps did you take to obtain information on this allegation? Give the DATE, NAME and TITLE of each person interviewed. Give the DATE of each document request, and to whom made.**

A meeting was held on September 20, 2006, with Ms. Jackson. Her complaint was about another employee's misconduct in her office and that management allowed such acts to continue. Ms. Jackson also mentioned that management had insisted that she work overtime. A statement was issued to her describing what Call-Back Overtime was about (Attachment). Ms. Jackson also stated that she received emails from management stating how they could conduct a RIF within their office if the Call-Back Overtime was not taken seriously. Ms. Jackson stated that she could not do overtime and if she had known, she would not have taken the position.

**PART B: LIST OF ATTACHMENTS.**

| Att.# | Document Name or Description | Source |
|-------|------------------------------|--------|
| 1 | Notice of Right to File | Counselee |
| 2 | Rights and Responsibilities | Counselor |
| 3 | Call-Back Overtime | Counselee |

**Cindy Hodges**                                   **December 12, 2006**

Counselor's Signature                              Date

Exhibit DD p. 2

# EXHIBIT EE

03/2?/2007 08:52 FAX  2024821498          IT_BRANCH/OAO                    ☑002/004

*Williams*

## Performance Payout System
### Employee Bonus

<u>Rate and Score</u> | <u>Increase</u> | <u>Main Menu</u> | <u>Logout of PPS</u>

You may pick a different Path by making a selection here.
**Path:**    ZA ▓ 4 Employees

**Selected Path: ZA**

[ Save Changes ]

**Total: $0   Used: $0   Balance: $0**

| Name | Score | % Given | % Rec | Increase | New Salary | Bonus | Accounting | RACE | SEX | EEO |
|------|-------|---------|-------|----------|------------|-------|-----------|------|-----|-----|
| 1. �e████████ | 74 | 0 | 0 | 0 | 74,413 | 0 | | WHITE | MALE | NO |
| 2. ████████ | 68 | 0 | 0 | 0 | 84,818 | 0 | | BLACK | FEMALE | NO |
| 3. ████████ | 85 | 0 | 0 | 0 | 68,006 | 0 | | BLACK | MALE | NO |
| 4. JACKSON, TAPRINA | 61 | 0 | 0 | 0 | 57,700 | 0 | | BLACK | FEMALE | YES |

(A, B, A annotations at left margin rows 1–4)

[ Save Changes ]

Press "Ctrl-P" to Print
Press "Ctrl-C" to Copy Selected Text
Press "Ctrl-V" to Paste at Cursor

**OAS1 Administrator - Acting As: OAS-RO13 Rating Official**
**11-13-2006 10:13:33**

*Race Sex and EEO data added by
investigator from info provided
by Bonnie Wortly, EEO Officer*

ttps://ppsweb.ocs.doc.gov/pls/prod/launcher                    11/13/2006

Exhibit_ EE_ p._1_

03/29/2007 08:55 FAX  2024821498          IT_BRANCH/OAO                              ☒003/004

## Performance Payout System
### Employee Bonus

Rate and Score | Increase | Main Menu | Logout of PPS

You may pick a different Path by making a selection here.

**Path:**  ZS ▦ 1 Employee

**Selected Path: ZS**

[ Save Changes ]

   **Total: $0   Used: $0   Balance: $0**

| Name | Score | % Given | % Rec | Increase | New Salary | Bonus | Accounting | RACE | SEX | EEO |
|------|-------|---------|-------|----------|------------|-------|------------|------|-----|-----|
| 1. ██████████ | 76 | 0 | 0 | 0 | 29,781 | 0 | | BLACK | FEMALE | YES |

E ─

[ Save Changes ]

**Press "Ctrl-P" to Print**
**Press "Ctrl-C" to Copy Selected Text**
**Press "Ctrl-V" to Paste at Cursor**

OAS1 Administrator - Acting As: OAS-RO13 Rating Official
11-13-2006 10:12:25

ps://ppsweb.ocs.doc.gov/pls/prod/launcher                                    11/13/2006

Exhibit _EE_ p. _2_

## Performance Payout System
## Employee Bonus

Rate and Score | Increase | Main Menu | Logout of PPS

You may pick a different Path by making a selection here.
Path : ZP 📊 3 Employees

Selected Path: ZP

[ Save Changes ]

Total: $0    Used: $3,200    Balance: -$3,200

|   | Name | Score | % Given | % Rec | Increase | New Salary | Bonus | Accounting |
|---|------|-------|---------|-------|----------|-----------|-------|------------|
| 1. | ▓▓▓▓▓▓▓▓▓ | 87 | 4.5 | 4.5 | 2685 | 62,370 | 1600 | 698012300000000 |
| 2. | ▓▓▓▓▓▓▓▓▓ | 6 | 3.24 | 3.24 | 2234 | 71,200 | 1600 | 698012300000000 |
| 3. | ▓▓▓▓▓▓▓▓▓ | 69 | 0 | 0 | 0 | 93,005 | 0 | |

Handwritten annotations:

F — RACE SEX EEO
G — BLACK FEMALE NO
H — BLACK MALE NO
    ASIAN MALE YES

[ Save Changes ]

**Press "Ctrl-P" to Print**
**Press "Ctrl-C" to Copy Selected Text**
**Press "Ctrl-V" to Paste at Cursor**
OAS1 Administrator - Acting As: OAS-RO13 Rating Official
11-13-2006 10:12:08

https://ppsweb.ocs.doc.gov/pls/prod/launcher                          11/13/2006

Exhibit EE p. 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| TAPRINA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1048 (RBW) |
| | ) | |
| CARLOS M. GUTIERREZ, Secretary | ) | |
| U.S. Department of Commerce, et al. | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## ORDER

UPON CONSIDERATION of Defendants' Motion to Dismiss, or in the Alternative for

Summary Judgment, any Opposition thereto, and for good cause shown, it is this _____

day of _____, 2008 hereby:

ORDERED, that the said Motion should be and is granted; and it is

FURTHER ORDERED, that the above-captioned matter should be and is DISMISSED

WITH PREJUDICE and summary judgment entered for Defendants.


_____
UNITED STATES DISTRICT JUDGE


Copies to:

Counsel via ECF